**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **Students for Justice in Palestine, at the University of Houston**, | Case No. 1:24-cv-00523-RP |
| | |
| **Students for Justice in Palestine, at the University of Texas at Dallas,** | Hon. Judge Robert Pitman |
| | |
| **Democratic Socialists of America, and** | **AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF** |
| **Palestine Solidarity Committee, at the University of Texas at Austin** | |

> Plaintiffs,
>
> v.

**Greg Abbott**, in his official capacity only as the Governor of the State of Texas

**University of Houston,** and the **UH System Board of Regents**, and its members, **Tilman Fertitta, Alonzo Cantu, John A. McCall Jr., Beth Madison, Ricky Raven, Jack B. Moore, Tammy D. Murphy,** and **Gregory C. King** in their individual and official capacities as the members of the UH System Board of Regents;

**Rene Khator,** in her individual and official capacities as president of the University of Houston and chancellor of the UH System;

**University of Texas System Board of Regents**, and its members, **Kevin Eltife, Janiece Longoria, James C. Weaver, Christina Melton Crain, Jodie Lee Jiles, Kelcy L. Warren, Nolan Perez, Stuart W. Stedman, Robert P. Gauntt,** in their individual and official capacity as the members of the University of Texas System Board of Regents

**Jay Hartzell**, in his individual and official capacity as President of the University of Texas at Austin, and

**Taylor Eighmy**, in his individual and official capacity as President of the University of Texas at San Antonio

   Defendants.

## COMPLAINT

Plaintiffs **Students for Justice in Palestine at the University of Houston, Students for Justice in Palestine at the University of Texas at Dallas, the Palestine Solidarity Committee at the University of Texas,** and **Democratic Socialists of America**, by and through their undersigned counsel, CAIR LEGAL DEFENSE FUND, file this Complaint for damages, declaratory and injunctive relief against the defendants named above. The Complaint asserts that Governor Abbott's executive order, along with the campus-level efforts to comply with it, are obvious attempts to illegally suppress a viewpoint critical of one particular foreign country.

## INTRODUCTION

1.  On March 27, 2024, when Governor Gregg Abbott issued Executive Order GA 44, he aimed to extinguish from public campuses a viewpoint critical of Israel and supportive of Palestinians. In so doing, Governor Abbott acted illegally, contrary to the First Amendment, and the students and groups suing here seek the Court's intervention to remedy this grave violation.

2.  Since that executive order, Governor Abbott has revealed a boundless resolve to suppress students and others from expressing common and typical criticisms of one particular foreign country—Israel.

2

3. Governor Abbott has labeled as criminals and bigots students and others protesting against Israel's atrocities on college campuses. "These protestors belong in jail," Governor Abbott declared as he boasted about state troopers breaking up peaceful, normally permitted protests with violent arrests.

4. The First Amendment is a better guide for our public discussions than Governor Abbott's whims, and this lawsuit insists that all public officials adhere to their obligation to respect the free speech rights of the students we are teaching in our public schools.

## JURISDICTION AND VENUE

5. This is an action for damages and declaratory and injunctive relief arising under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action asserts violations of federal law.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the events that gave rise to this lawsuit occurred within the judicial district.

## PARTIES

8. University of Houston's Students for Justice in Palestine ("SJP-UH") is a recognized student group at the school. As a recognized student group, SJP-UH can reserve space, receive and raise funds on campus, and otherwise participate as other student groups do in student life at the University of Houston.

9. University of Texas at Dallas's Students for Justice in Palestine ("SJP-UTD") is a recognized student group at the school. As a recognized student group, SJP-UTD can

reserve space, receive and raise funds on campus, and otherwise participate as other student groups do in student life at the University of Texas at Dallas.

10. University of Texas at Austin's Palestine Solidarity Committee ("PSC-UT") is a recognized student group at the school. As a recognized student group, PSC-UT can reserve space, receive and raise funds on campus, and otherwise participate as other student groups do in student life at the University of Texas at Austin.

11. Democratic Socialists of America ("DSA") is a 501 (c)(4) non-profit organization incorporated in Washington D.C. DSA is a membership-based organization, with tens of thousands of members nationwide and more than 2,000 in Texas. DSA includes a youth and student section (Young Democratic Socialists of America, or YDSA) consisting of DSA-recognized campus chapters across the country, with YDSA chapters in Texas at the University of Texas at San Antonio, University of North Texas, University of Houston, Texas Tech University, Texas State University, and Texas A&M University.

12. Greg Abbott is the Governor of Texas, where he heads that state's executive branch In that role, Governor Abbott wields extensive authorities over higher education, and Executive Order GA 44 reflects those systemwide powers. Additionally, because public universities in Texas are located on state property, Governor Abbott has direct control over what occurs on public grounds of campuses in the state, which he recently exercised to violently disband student protests that were critical of Israel.

## FACTS

*Governor Abbott has wage a more than half decade long effort to suppress viewpoints critical of one particular foreign country*

13. In Texas, for decades now, federal courts have considered the grounds of public university campuses as public forums under the First Amendment.

14. But state law goes even further than the First Amendment. Texas law allows members of the public—whether students or not—to gather on public campuses for expressive purposes even without that school's preapproval.

15. Governor Abbott signed that law, Tex. Educ. Code § 51.9315, in 2019. It requires all Texas colleges to permit people to "assemble peaceably on the campuses of institutions of higher education for expressive activities, including to listen to or observe the expressive activities of others." This applied to "all persons," whether they are students or not.

16. When Abbott signed that law, he described it as reflecting his desire to ensure viewpoint neutrality on campuses and to protect the First Amendment.

17. When it comes to one particular foreign country, however, Abbott has been repeatedly willing to press his own viewpoints and abandon even the pretense of following the First Amendment.

18. He does so for the purpose of using the machinery of his government to insulate a foreign country from the criticism students and others in Texas and beyond are leveling against Israel.

19. In 2017, Governor Abbott signed House Bill 89 that required all state contractors, as a condition of signing an agreement with Texas, to pledge a kind of loyalty oath to Israel for that country's benefit and to the detriment of those who advocate for Palestinians and criticize Israel.

20. HB 89 required state contractors to abandon expressive boycotts of Israel before signing a state contract and even refrain from encouraging others to boycott Israel for the duration of the contract's life. The law made it impossible to contract with the state while participating in the Boycott, Divestment, and Sanctions movement that Plaintiffs and others support.

21. When Governor Abbott signed HB 89, he did so on Israel's Independence Day to commemorate it and publicly proclaimed that:

    a. the law's passage "signals Texas' strong support for Israel,"

    b. that "anti-Israel policies are anti-Texas policies,"

22. When Governor Abbott signed HB 89, he threatened those who, like Plaintiffs, advocate for Palestinians and criticize Israel, in the common and typical ways people advocate for and criticize things on campus—by calling for boycotts and economic pressure, by assembling and petitioning public officials, by inviting people to join such efforts. "[W]e will not tolerate such actions," Governor Abbott promised.

23. That law was permanently enjoined by a federal court, because it violated the First Amendment.

24. Days after a federal court permanently enjoined House Bill 89, Abbott signed another law that required a narrower group of state contractors—companies with 10 or more employees—to sign such oaths for that foreign country's benefit and to the detriment of those who advocate for Palestinians and criticize Israel. *See* Tex. Gov't Code 2270.001 *et. seq.*

25. That law is subject to a preliminary injunction entered against it, because it violated the First Amendment.

26. Governor Abbott has padded his extensive record of suppressing viewpoints critical of Israel just last month when, on April 23, 2024, Governor Abbott ordered 100 state troopers to clear protestors who had gathered on UT Austin's campus mere hours earlier, were not obstructing traffic or movement, and were simply gathered together for an expressive purpose. Governor Abbot did so again on April 29, 2024.

27. Likewise, on May 8, 2024, University of Houston police forcibly dispersed an encampment on campus that SJP-UH helped organize a few hours after it began, even though other student groups, including students who campus officials permitted to set up a days-long prayer tent, have gathered in tents and for days.

28. Abbott's use of overwhelming police force against peaceful protestors on campuses reflects Abbott's resolve to suppress a viewpoint about Israel and Palestine with which he disagrees.

29. This effort to shut down campus gatherings in April and May was based on a frenzied moral panic about a wave of student protests on campuses all over the world. Those protests have been critical of Israel, supportive of Palestinians, and Governor Abbott has made repeatedly clear he views persons and groups like Plaintiffs and their members as legitimate targets of suppression.

30. Governor Abbott ordered his campus crackdown on the basis of rumors that protestors intended to emulate students elsewhere rather than on the basis of their own conduct in Texas. But at the time of Abbott's order to remove the protestors, campus protestors had not been violating campus policies and had been assembled for only the normal and usual time involved with other similar kinds of expressive campus activities.

31. Together, these two viewpoint-conscious laws and the Spring 2024 campus crackdown show Abbott's more-than-half-decade-long battle against viewpoints that are sympathetic to Palestinians or critical of Israel.

*Governor Abbott issues an executive order that directs*
*public universities to label Plaintiffs' activism antisemitic and punish it*

32. Executive Order GA 44 is Governor Abbott's latest effort to suppress critical viewpoints about one particular foreign country.

33. The order is Governor Abbott's illegal instruction to campus officials to rid public universities in Texas of a viewpoint critical of Israel. Several campuses have already taken steps in furtherance of that order, including but not limited to the following:

   a. At UTSA, Defendant Eighmy—who is the chief executive at UTSA and, because of the salience of issues related to Israel and Palestine, directly oversees UTSA's response to GA 44—campus officials have adopted a phrase-specific rule. That rule was explained to YSDA members after one asked a campus official "what they can and can't say" under the order's terms. In a recording of that conversation, the campus official states explicitly that they are not allowed to say *from the river to the sea, Palestine will be free*, because that slogan "was written specifically in the order."

   b. On May 15, 2024, the UH System Board incorporated the entirety of the Texas Holocaust, Genocide, and Antisemitism Advisory Commission's internal-facing antisemitism definition. That definition incorporates by reference "examples of antisemitism" that are listed in the International Holocaust Remembrance Alliance's "Working Definition of Antisemitism"

that label as antisemitic the common and typical criticisms people make about foreign countries when those criticisms are made against Israel.

34. In the press release accompanying his GA 44, Abbott described it as a way of micromanaging the terms of the public debate by punishing students on one side of that debate even for the phrases they use at protests and on placards to criticize Israel and support Palestinians.

35. The order labels campus groups that are critical of Israel as "radical" and their peaceful activism "antisemitic."

36. The order names SJP and PSC specifically as "radical" and their peaceful activism "antisemitic."

37. The order acknowledges that Plaintiffs and other student groups use phrases such as "Students for Justice in Palestine" and "Palestine Solidarity Committee" to brand their efforts to organize as students on campus against what they view as Israel's genocide in Gaza. The order thus justifies targeting these groups because of their viewpoint.

38. The order also labels as "antisemitic" the common words and phrases used at protests and gatherings by Plaintiffs, students attending events they help organize, or by student groups with which Plaintiffs work. Those phrases include the decades-old political slogan "from the river to the sea, Palestine will be free" which is defined as per se antisemitism by the order, even though its literal and figurative meaning reflect an aspiration for peace and dignity for all people—Palestinians, Israelis, Arabs, Muslims, Jews, Christians, and everyone else.

39. By directing school officials to adopt the IHRA definition of antisemitism, Abbott further embeds viewpoint discrimination into his executive order.

40. The IHRA definition, once adopted, would transform normal and typical criticism of a foreign country into antisemitism when the foreign country criticized is Israel. For example:

    a.  The order's definition of antisemitism labels as bigoted claims that the "State of Israel is a racist endeavor," even though Israeli political leaders themselves often acknowledge that the country is operating an apartheid system that locks Palestinians into an inferior status. Thus, SJP's criticism of Israel as an apartheid state runs afoul of the order's definition.

    b.  The order's definition of antisemitism labels as bigoted any comparisons between Israel's current policies and those of Germany during World War II, even though an entire academic field—comparative genocide studies—seeks to identify differences and similarities between genocides. The definition thus creates an obvious content-based distinction that restricts students from making certain historical comparisons to the genocide in Gaza today but would allow those same comparisons with countries other than Israel. It does so despite comparisons to Nazi Germany being a hallmark of American political discourse—used to pillory Obamacare, climate and immigration policy, our prisons, most foreign leaders, court decisions about reproductive rights, and even campus protests such those organized by Plaintiffs.

c.  The order's definition of antisemitism labels as bigoted an accusation that a person is prioritizing Israel over the United States only if the person so accused is Jewish. Though accusations that people are prioritizing other countries rather than the United States are common and typical in American political discourse, the order's adopted definition treats such accusations involving Israel differently.

The order's definition of antisemitism labels as bigoted criticism levied against Israel that is not also made against other countries. Thus, Plaintiffs' criticism of Israel for indiscriminately bombing Gaza runs afoul of the order's definition if it is not accompanied by, for example, criticism of indiscriminate bombing elsewhere.

*SJP-UH, SJP-UTD, and DSA activities are forbidden by Governor Abbott's Order, and the slogans, rhetoric, and objectives are labeled as per se antisemitic by the order*

<u>SJP-UH</u>

41. SJP-UH is led by University of Houston students who advocate for Palestinians. SJP-UH believes that Israel is committing a genocide against Palestinians in Gaza and subjecting others to an apartheid system that denies them dignity and freedom. The group communicates its views through education, programming, advocacy, and direct action.

42. During the 2023-2024 school year, SJP-UH has helped organize protests, teach-ins, meetings, and other events to communicate a viewpoint that is critical of Israel. In the future, SJP-UH plans to continue to organize the same kinds of events described above.

43. An illustrative example of the kinds of events and activities SJP-UH has organized in the past and intends to organize again in the future, include the following.

    a. Popular University for Gaza: An initiative to educate fellow students about university investments in arms manufacturers supplying equipment Israel is using to mercilessly kill, maim, and starves millions in Gaza. SJP-UH and its supporters maintained a presence in a student center, where fellow students were invited to make signs and shirts, enjoy food, and learn about Palestine.

    b. Israeli Apartheid week: A weeklong series of tabling, teach-ins, and other programming centered on the construction of "walls" to physically depict the most infamous element of Israel's apartheid system. Students then painted and decorated the walls with imagery intended to educate the campus community about why SJP-UH and so many others view Israel as an apartheid state. This is a yearly event SJP-UH will do again in subsequent years.

    c. An art show aimed at creatively presenting the issue of Palestine to fellow students through visuals, slogans, banners, symbols, and other artistic objects that students can observe on campus

44. At SJP-UH gatherings, students regularly invoke popular political slogans—like "from the river to the sea, Palestine will be free"—as a shorthand for their peaceful calls demanding dignity and freedom for everyone in that geographic area.

45. At SJP-UH gatherings, students use forceful political rhetoric that calls Israel's conduct a genocide in Gaza and an apartheid system elsewhere.

46. SJP-UH gatherings bring together, not only the group's own members and supporters, but also those belonging to other student groups, including Palestine Solidarity Committee and SJP groups at other schools, all groups which the order labels as antisemitic.

47. SJP-UH also advocates for boycotts, divestment, and sanctions against Israel as part of the BDS movement, something Governor Abbott considers antisemitic.

48. As part of an ongoing project SJP-UH helped launch the University of Houston BDS Coalition, a student-led coalition of more than twenty groups, advocating for their school to divest itself of $7.6 million it has invested in companies SJP-UH believes profit off of the violence against Palestinians and remove certain products and restaurants from campus.

<u>DSA</u>

49. DSA has YDSA chapters at half a dozen Texas public university campuses, including at University of Texas at San Antonio, University of North Texas, University of Houston, Texas Tech University, Texas State University, and Texas A&M University.

50. DSA's YDSA chapters at Texas public universities are open to students and campus workers, under the age of 30, who are dues-paying DSA members.

51. There are more than 2,000 DSA members in Texas, and among them are students and campus workers who have played a leading role in campus advocacy for Palestine for years and will continue to fulfill that role in the future.

52. During the 2023-2024 school year, YDSA chapters in Texas have helped organize protests, sit-ins, film screenings, strikes, and other events to communicate a viewpoint that is critical of Israel.

53. In the future, DSA plans to continue to organize the same kinds of events described below.

54. An illustrative example of the kinds of events and activities DSA has organized in the past and intends to organize again in the future, include the following:

   a. The YDSA chapter at UTSA organized a "Die-in for Palestine" that the group co-sponsored with SJP-UTSA. The event was meant to educate the campus community about the genocide in Gaza and express solidarity with student actions across the country.

   b. The YDSA chapter at Texas State University held a teach-in about Palestine for fellow students where, at the end of the program, a coalition of students, faculty, and community letter sent a letter demanding that Texas State University stand against Governor Abbott's executive order.

   c. The YDSA chapter at Texas A&M University organized meetings and other programming to educate fellow students about boycotting Israel and companies supplied equipment used against Palestinians. At these events, YDSA members prepared students with information and poster-making opportunities to participate in future protests.

   d. YDSA is also leading a summer training program—*Building Power for Palestine*—for students and other campus leaders to help students build a long-lasting campaign for Palestine. YDSA is offering this program virtually to its

14

members, including those in Texas, in anticipation of the future actions YDSA chapters will take in the coming months.

55. At YDSA gatherings in Texas about Palestine, students regularly use popular political slogans—like "from the river to the sea, Palestine will be free"—as a shorthand for their peaceful calls demanding dignity and freedom for everyone in that geographic area.

56. At YDSA gatherings in Texas about Palestine, students use forceful political rhetoric that calls Israel's conduct a genocide in Gaza and an apartheid system elsewhere.

57. YDSA gatherings in Texas about Palestine gatherings bring together, not only the group's own members and supporters, but also those belonging to other student groups, including Palestine Solidarity Committee and SJP groups at other schools, all of which the order labels as antisemitic.

58. DSA also advocates for boycotts, divestment, and sanctions against Israel as part of the BDS movement, something Governor Abbott considers antisemitic.  DSA announced in 2017 that it "declares itself in solidarity with Palestinian civil society's nonviolent struggle against apartheid, colonialism, military occupation" and "fully support[s] BDS." YDSA chapters have worked in coalition with other student groups to advocate for BDS on campuses throughout Texas.

59. At UTSA, YDSA's chapter spoke with a campus official who confirmed that it was UTSA's understanding that Governor Abbott's order forbid students from chanting *from the river to the sea, Palestine will be free* at their protests. During a recording of that conversation between YDSA members and a UTSA campus official, a YDSA member asks "what they can and can't say" and the campus official states explicitly

that they are not allowed to use that slogan, because it "was written specifically in the order."

60. When asked what repercussions would result from using the phrase, the same campus official stated they would "be deferred to law enforcement."

61. At an on-campus protest organized by the YDSA chapter at UTSA, the same campus official spotted a sign reading "From the river to the sea, Palestine will be free," then approached YDSA leadership demanding that, in accordance with the executive order, the sign must be put away. YDSA leadership complied.

62. YDSA's chapter at Texas A&M University asked campus officials to reject Governor Abbott's order, to publicly state it will not enforce the order, and to affirm their First Amendment rights. The university has not responded to requests to reject the order.

<u>SJP-UTDSJP-UTD</u>

63. SJP-UTD is led by University of Texas at Dallas students who advocate for Palestinians. SJP-UTD believes that Israel is committing a genocide against Palestinians in Gaza and subjecting others to an apartheid system that denies them dignity and freedom. The group communicates its views through education, programming, advocacy and direct action.

64. During the 2023-2024 school year, SJP-UTD has helped organize protests, sit-ins, film screenings, strikes, and other events to communicate a viewpoint that is critical of Israel. In the future, SJP-UTD plans to continue to organize the same kinds of events described below.

65. An illustrative example of the kinds of events and activities SJP-UTD has organized in the past and intends to organize again in the future, include the following:

16

a.  From the River to the Sea, Palestine is Almost Free. Students Rise Against Complicity: a protest calling on university officials to divest from Israel's occupation and genocide of the Palestinian people.

b.  Divestment Action Week: A series of events designed to educate students and faculty about Israel's Apartheid policies and to push for divestment from Israel's occupation and genocide of the Palestinian people.

c.  An on campus sit in to demand the university issue a public statement calling for a ceasefire in Gaza and denouncing the ongoing genocidal campaign against the Palestinians.

66. At SJP-UTD gatherings, students regularly invoke popular political slogans—like "from the river to the sea, Palestine will be free"—as a shorthand for their peaceful calls demanding dignity and freedom for everyone in that geographic area.

67. At SJP-UTD gatherings, students use forceful political rhetoric that calls Israel's conduct a genocide in Gaza and an apartheid system elsewhere.

68. SJP-UTD gatherings bring together, not only the group's own members and supporters, but also those belonging to other student groups, including Palestine Solidarity Committee and SJP groups at other schools which the order labels as antisemitic, or who are unaffiliated.

69. SJP-UTD has asked the campus officials to reject Governor Abbot's order, to publicly state it will not enforce the order, and to affirm the First Amendment rights of SJP-UTD. The university has not responded to requests to reject the order.

70. SJP-UTD also advocates for boycotts, divestment, and sanctions against Israel as part of the BDS movement, something Governor Abbott considers antisemitic.

PSC-UT

71. PSC-UT is led by University of Texas students who advocate for Palestinians. PSC-UT believes that Israel is committing a genocide against Palestinians in Gaza and subjecting others to an apartheid system that denies them dignity and freedom. The group communicates its views through education, programming, advocacy and direct action.

72. During the 2023-2024 school year, PSC-UT has helped organize protests, sit-ins, film screenings, strikes, and other events to communicate a viewpoint that is critical of Israel. In the future, SJP-UTD plans to continue to organize the same kinds of events described below.

73. An illustrative example of the kinds of events and activities PSC-UT has organized in the past and intends to organize again in the future, include the following:

   d. Israel Apartheid Week: A series of events designed to educate students and faculty about Israel's racist and apartheid policies.

   e. Divestment Action Week: A series of events designed to educate students and faculty about Israel's Apartheid policies and to push for divestment from Israel's occupation and genocide of the Palestinian people.

   f. Film Screening of "Boycott" and Iftar: A film screening of a documentary that discusses Texas' efforts to silence criticism of Israel and advocacy for Palestine.

   g. Popular University: a demonstration on the university's South Lawn calling on the university to divest from Israel and calling attention to the ongoing genocide in Gaza.

74. At PSC-UT gatherings, students regularly invoke popular political slogans—like "from the river to the sea, Palestine will be free"—as a shorthand for their peaceful calls demanding dignity and freedom for everyone in that geographic area.

75. At PSC-UT gatherings, students use forceful political rhetoric that calls Israel's conduct a genocide in Gaza and an apartheid system elsewhere.

76. PSC-UT gatherings bring together, not only the group's own members and supporters, but also those belonging to other student groups, including Palestine Solidarity Committee and SJP groups at other schools which the order labels as antisemitic, or who are unaffiliated.

77. PSC-UT has asked the campus officials to reject Governor Abbot's order, to publicly state it will not enforce the order, and to affirm the First Amendment rights of SJP-UTD. The university has not responded to requests to reject the order.

78. PSC-UT also advocates for boycotts, divestment, and sanctions against Israel as part of the BDS movement, something Governor Abbott considers antisemitic.

79. University of Texas officials have preemptively cancelled a PSC-UT organized demonstration under the pretext of rules violations. PSC-UT did not intend to violate any school rules or policies at the demonstration and communicated this to officials prior to the protest. Despite clear communication that no rules would be violated, university officials and Governor Greg Abbott ordered dozens of state troopers to arrest protestors. At the direction of the university and the governor, state troopers brutalized and arrested dozens of protestors for their speech.

80. University of Texas officials have since suspended UT-PSC ostensibly because of rule violations but, in reality, for the viewpoint of UT-PSC and the content of its events and demonstrations.


## Count I
## Section 1983: First Amendment – GA 44's Viewpoint/Content Discrimination
### (against all defendants)

81. Plaintiffs repeat and re-allege all preceding paragraphs.

82. The First Amendment forbids government actors from restricting people's speech based on viewpoint or content. The First Amendment applies to state actors through the Fourteenth Amendment's incorporation doctrine.

83. The order violates SJP-UH, DSA, PSC-UT,  SJP-UTD, and their members' First Amendment right to free speech, because it prohibits them from using even peaceful political slogans commonly invoked and otherwise smears them, their prospective supporters, and their efforts to advocate for Palestinians as antisemitic.

84. The order unconstitutionally censors SJP-UH, DSA, SJP-UTD, PSC-UT and their members based on the content of their speech and viewpoints.

85. It is impermissible viewpoint discrimination to prohibit speech when the rationale for the restriction is a speaker's perspective or opinion.

86. It is impermissible content discrimination when the government regulates speech based on the topic it belongs to or the substance of message conveyed.

87. By directing campus officials to "ensure" the punishment of two plaintiffs by name for any violations of GA 44's terms, the order makes it clear that it's aimed at Plaintiffs and that it is so aimed because of their views and the contents of their

message. By labeling *from the river to the sea* and the pro-Palestine protests on Texas campuses during the Spring 2024 semester antisemitic, Governor Abbott's order once fully implemented will cause Plaintiffs to be punished.

88. By requiring campus officials to adopt a definition of antisemitism that establishes special rules for criticizing Israel, Defendants engage in blatant content and viewpoint discrimination. This definition labels common and typical criticisms of foreign countries—that they are racist, that they are led by war criminals—as antisemitic when made about Israel.

89. The order unconstitutionally chills the speech of SJP-UH, DSA, PSC-UT, SJP-UTD, and their members because it labels as antisemitic their activism and associations with each other. This deters their work together and separately and gives pause to prospective supporters.

90. Governor Abbott has a long track record of repeated efforts to suppress viewpoints critical of Israel and supportive of Palestinians, including last month's violent disruption of peaceful, lawful protests at public college campuses in Texas.

91. Specifically, Governor Abbott's crackdown has directly affected the persons holding positions of authority in Plaintiffs' groups. For example, SJP-UTD and PSC-UTs leadership have been arrested for gathering peacefully to engage in expressive activity on campus, as state law and campus policies allow.

92. SJP-UH, DSA, PSC-UT, and SJP-UTD each intend to engage in protected conduct. Each organization has continued to protest in support of Palestinians and against Israel's genocide in Gaza and each organization has concrete plans to continue engaging in these protests.

93. SJP-UH, DSA, PSC-UT, and SJP-UTD's past, present, and future speech is explicitly proscribed by the order.

   a. SJP-UH, DSA, PSC-UT, and SJP-UTD have all organized protests and will continue to organize protests where the phrase "From the river to the sea, Palestine will be free" is used.

   b. The plain meaning of the executive order directs public universities to treat the use of this phrase as antisemitic and thus will cause campus officials to restrict Plaintiffs' use of that phrase, punish it, or at the very least, objectively chill its use.

   c. SJP-UH, DSA, PSC-UT, and SJP-UTD have all organized protests and will continue to organize protests where language used by protestors would fit the definition of "antisemitism" adopted by the order, even though Plaintiffs' gatherings generally include fellow students from the Jewish community.

94. SJP-UH, DSA, PSC-UT, and SJP-UTD face a substantial threat of future enforcement of the order.

   a. The order sets a deadline of June 25, 2024 (within 90 days of the order), for the chair of the board of regents for each Texas public university to report on their compliance with the order.

   b. The administration at the University of Texas at San Antonio has explicitly warned students, including DSA members, that it is against their rules to use the phrase "From the river to the sea, Palestine will be free" as a result of the order.

c.   Neither the public universities of Texas nor the state of Texas have indicated any intent to decline to enforce the order.

95. The order unconstitutionally singles out SJP-UH, PSC-UT and SJP-UTD by directing Texas higher education officials to discipline groups "such as" "Students for Justice in Palestine" and "Palestine Solidarity Committee

96. The order has objectively chilled the speech of SJP-UH, PSC-UT, and SJP-UTD. Plaintiffs understand the order to be aimed at them, because it either names them specifically or describes them by their activism. As a result, Plaintiffs have altered plans and advocacy strategies in light of the order in an effort to avoid discipline.

97. Plaintiffs are entitled to compensatory and punitive damages, a declaratory judgment and a preliminary and permanent injunction against the Defendants in the form described below, as well as costs and attorneys' fees, as well as any other relief the Court deems just and appropriate.

### Count II
### Section 1983: First Amendment – UTSA's *From the River to the Sea* Rule
### (by Plaintiff DSA against Taylor Eighmy only)

98.  Plaintiff DSA repeats and re-alleges all preceding paragraphs.

99. It is impermissible viewpoint discrimination to prohibit speech when the rationale for the restriction is a speaker's perspective or opinion.

100.      It is impermissible content discrimination when the government regulates speech based on the topic it belongs to or the substance of message conveyed.

101.      UTSA has announced to students, Plaintiff DSA's members among them, that using the political slogan *from the river to the sea, Palestine will be free* is a *per se* violation, because Governor Abbott's order defines its use as antisemitic.

102.     That order originated from Taylor Eighmy, the President of UTSA, who has the sole authority in the absence of any specific action by the University of Texas Board of Regents to make such a determination.

103.     UTSA's declaration that it is impermissible to chant "from the river to the sea, Palestine will be free" is impermissible viewpoint discrimination.

104.     UTSA's *from the river to the sea* rule is also content discrimination that is not necessary to preserve the purposes of a limited forum, as UTSA's public spaces are public forums, and it is not antisemitic and does not create a hostile environment against Jewish students.

105.     UTSA's *from the river to the sea* rule is impermissible viewpoint discrimination, casts an unconstitutional chill on DSA's members and those they organize with who would use that phrase at protests on the UTSA campus, but are reasonably and objectively chilled by UTSA's rule.

106.     As a result of UTSA's *from the river to the sea* rule, Plaintiff DSA is entitled to compensatory and punitive damages, a declaratory judgment, and a preliminary and permanent injunction against Taylor Eighmy, in his official capacity, in the form described below, as well as costs and attorneys' fees, as well as any other relief the Court deems just and appropriate.

**<u>Count III</u>**
**<u>Section 1983: First Amendment – UT's Pretextual Cancellation of PSC-UT's</u>**
**<u>Lawful Demonstration</u>**
**(by Plaintiff PSC-UT against Jay Hartzell only)**

107.     Plaintiff PSC-UT repeats and re-alleges all preceding paragraphs.

108.     It is impermissible viewpoint discrimination to prohibit speech when the rationale for the restriction is a speaker's perspective or opinion.

109.    It is impermissible content discrimination when the government regulates speech based on the topic it belongs to or the substance of message conveyed.

110.    UT Austin has cancelled a PSC-UT demonstration solely because PSC-UT's viewpoints and the content sought to be expressed at the demonstration.

111.    UT Austin has suspended PSC-UT solely because of the PSC-UT's viewpoints and the content expressed at events and demonstrations.

112.    These orders originated from Jay Hartzell, the President of UT Austin, who has the sole authority in the absence of any specific action by the University of Texas Board of Regents to make such a determination. In the alternative, these orders originated from Governor Abbott alone or in conjunction with Defendant Hartzell.

113.    UT Austin's cancellation of the protest and suspension of PSC-UT is impermissible viewpoint and content discrimination because UT Austin only cancelled the protest due to PSC-UT's viewpoints on Gaza and the content displayed and spoken at their demonstrations.

114.    As a result of UT Austin's cancellation of the protest and suspension of PSC-UT, Plaintiff PSC-UT is entitled to compensatory and punitive damages, a declaratory judgment and a preliminary and permanent injunction against Jay Hartzell, in his official capacity, in the form described below, as well as costs and attorneys' fees, as well as any other relief the Court deems just and appropriate.

115.

## Prayer for Relief

WHEREFORE, Plaintiffs request that this Honorable Court enter judgment in their favor and against Defendants on each count in this Complaint, and issue an order awarding the

following relief:

1. A declaratory judgment that:

- Executive Order GA-44 is illegal viewpoint and content discrimination in violation of the First Amendment;

- Prohibiting individuals from saying or chanting "From the river to the sea, Palestine will be free" is illegal viewpoint and content discrimination in violation of the First Amendment; and

- Canceling protests and suspending organizations for criticizing Israel and advocating for Palestinians is illegal viewpoint and content discrimination in violation of the First Amendment.

2. An injunction that:

- Defendants shall not take any action in furtherance of the order or in accordance with GA-44;

  - Defendant Abbott's order is hereby null and void and the Court orders him to withdraw it;

  - Defendants shall not update their free speech policies, in accordance with Paragraph 1 or Paragraph 3 of the Order;

  - Defendants shall not take enforcement actions, in accordance with Paragraph 2 or Paragraph 3;

  - Defendants shall not treat the use of phrases and slogans such as "from the river to the sea, Palestine will be free," "Students for Justice in Palestine," or "Palestine Solidarity Committee" as a per se violation of campus policies;

- o   Defendant Jay Hartzell shall reinstate UT-PSC and revoke the group's suspension;

- UT and UH Defendants will not update their policies to incorporate the IHRA definition of Antisemitism or otherwise target individuals because of their political speech about Israel;

- Defendants shall provide to Plaintiffs the normal and typical permissions and resources it provides to student group;

3. Compensatory and punitive damages;

4. Attorneys' fees, costs and expenses of all litigation, under 42 U.S.C. § 1988; and

5. Any other relief that the Court may deem just and proper.

Respectfully submitted,

\_\_\_/s/Lena Masri_____
Lena Masri
Gadeir Abbas*
Justin Sadowsky
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave SE
Washington, D.C. 20003
T: (202) 488-8787
ldf@cair.com

*Licensed in VA; not in D.C.,
practice limited to federal matters
John T. Floyd Law Firm
By: /s/ John T Floyd
 Texas Bar No. 00790700

/s/ Chris Choate_____
Texas Bar No. 24045655

River Oaks Tower
3730 Kirby Dr., Suite 750
Houston, TX 77098
 Tel: 713-224-0101
Fax: 713-237-1511

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a true and correct copy of the amended complaint was served upon

Defendants' counsel of record through the Court's electronic filing system.

Dated: July 2, 2024                              <u>/s/ Lena Masri</u>
                                                Lena Masri