Docusign Envelope ID: D522F066-C343-4315-B605-1BA7758BA642

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STUDENTS FOR JUSTICE IN PALESTINE, AT THE UNIVERSITY OF HOUSTON; et al., | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | No. 1:24-CV-523-RP |
| GREG ABBOTT, IN HIS OFFICIAL CAPACITY ONLY AS THE GOVERNOR OF THE STATE OF TEXAS, et al., | § § § § | |
| *Defendants.* | § § | |

## DECLARATION OF KATIE MCGEE

1.     I, Katie McGee, am over eighteen years of age. I am fully capable of making this declaration. The following is within my personal knowledge and is true and correct:

2.     I am the Interim Dean of Students and Associate Vice President for The University of Texas at Austin (UT Austin), a position I have held since February 2024. I was previously the Executive Director for Student Conduct and Academic Integrity in the Office of the Dean of Students from January 2021 to February 2024. Before joining UT Austin, I worked at The University of Louisiana System, Louisiana State University, Florida State University, and Florida International University.

3.     I have advanced training in safety planning, threat assessment, behavioral intervention and risk mitigation in the university setting. This includes certifications in Advanced Risk Assessment, SIVRA certification (violence-risk

Declaration of Katie McGee                                                                 1

assessment), and Threat Management from the National Behavioral Intervention Team Association (NaBITA).  I also hold certification for Prevention of, Response to, and Recovery from Campus Emergencies by the National Center for Biomedical Research and Training Academy of Counter-Terrorist (NCBRT).

4.      I've reviewed the complaint and Ms. Jenna Homsi's affidavit.[1] These documents omit critical information and contain inaccurate and misleading statements regarding the Palestine Solidarity Committee (PSC)'s Popular University event on April 24, 2024.

5.      Before I explain what the PSC gets wrong, I want to make sure I am clear on several points:

- The Palestine Solidarity Committee's political views or past expressive activity did not influence the decision to inform them that the Popular University event could not occur on April 24, 2024. This decision was based on evidence that the event would violate our rules and likely cause significant disruption on campus during critical time period leading up to student final examinations.

- On April 23 and 24, my office told PSC's leadership multiple times that the event could not occur as planned. We also ordered PSC's leaders to immediately remove the tents, camping materials, and a large amplifier with speakers that staff had seen. Except for briefly trying to address the amplifier, PSC's leaders refused to follow directives and marched the group onto Speedway, loudly yelling and chanting. All of this occurred ***before*** the matter was turned over to law enforcement.

- PSC and its members displayed the most disruptive and belligerent behavior I have seen in my over twenty years of experience in higher education administration. They repeatedly refused to comply with orders to disperse and continued to occupy large areas of campus. After hours of disrupting campus life on Speedway, they went to the South Lawn, erected an encampment, and refused to leave.

---

[1] Based on PSC's registration with our office, it was believed Ms. Homsi was enrolled when my team spoke to her, it was later determined she was not a student in April 2024. She is also not currently enrolled at UT Austin.

Declaration of Katie McGee                                                                      2

- PSC was issued an interim action (meaning they could not reserve indoor space) pending an investigation because PSC's leaders and members violated numerous rules when they ignored directives and caused disruption on campus. The content of PSC's speech or point of view played no role in this decision. Notably, they never appealed this interim action as allowed under the policy.

- The Governor's executive order, which was not incorporated in our rules then, did not impact how my office responded to PSC's misconduct. Our motivation was to prevent serious disruption and hold the group and its members accountable for these egregious rule violations.

**The Dean of Students Office Supports Students' Ability to Demonstrate**

6.     The Office of the Dean of Students is committed to supporting and streamlining students' ability to demonstrate and exercise their free speech rights. Our services include helping students and student groups plan demonstrations in a safe and effective manner by working with the students to coordinate logistics and ensure compliance with university policies and the Institutional Rules. My office also hosts a website dedicated to expression and assembly.[2]

7.     Chapter 13 of the Institutional Rules sets out the University's time, place, and manner regulations. The rules are content-neutral and existed before the events at issue in this lawsuit. These rules include time, place, and manner regulations on expressive activities, such as prohibiting individuals from impeding the flow of pedestrian and vehicular traffic on campus, creating disruptions in buildings or at university events, using unauthorized amplified sound, wearing face coverings to conceal the wearer's identity, and engaging in physical violence or

---

[2] https://deanofstudents.utexas.edu/sa/demonstrationsbystudents.php.

Declaration of Katie McGee                                                              3

inciting others to take violent action. A true and correct copy of Chapter 13 of the Institutional Rules from April 2024 is appended hereto as Exhibit A.

8.  The rules also state in Section 13-1202 (e), "University personnel may prevent imminently threatened violations, or end ongoing violations, of a prohibition in this Chapter, by explanation and persuasion, by reasonable physical intervention, by arrest of violators, or by any other lawful measures."

9.  The rules continue, "University persons and University organizations on the campus will comply with instructions from University administrators and law enforcement officials at the scene. A University person or University organization that complies with an on-the-scene order limiting speech, expression, or assembly may test the propriety of that order in an appeal under Section 13–1203."

## Dean of Students Office's History with PSC

10.  The Dean of Students office is very familiar with PSC and its views because they have been active on campus, hosting multiple events yearly. Since October 7, 2023, our office has approved several indoor events for PSC, including a Resistance Art Gallery on April 1, a film screening on April 4, a Café Resistance on April 12, a Palestine Culture Night on April 19, and guest speakers on April 23, 2024.

11.  In addition, my office has confirmed many outdoor space requests for PSC. These outdoor events or displays occurred in 2023 on October 17, 18, 19, 24, 26, December 6, and in 2024 on March 29, 30, 31, April 1, 2, 3, 13, 14, 15, 16, 17, 18, and 19.

12.     Dean of Students staff also met multiple times this year with Ms. Homsi and other PSC leadership to discuss how the organization could demonstrate in compliance with Institutional Rules. This outreach included:

- A meeting on February 21 between Ms. Homsi and Sade Dawson-Love, the Associate Director of Student Activities, to discuss upcoming events and university rules and policies.

- Email communications on March 12 and 13 to discuss outdoor space availability.

- A phone call on March 26 between Ms. Homsi and Ms. Dawson-Love to discuss the outdoor space reservations and request, and university policies on demonstrations.

- An April 5 meeting with Dean of Students staff and PSC leadership that PSC did not show up for.

13.     My office has not interfered with the PSC's ability to counterprotest other groups' events, so long as those counterprotests comply with Institutional Rules. One clear example is how my office worked with the PSC concerning their protest of an Israel Block Party (the Israel Block Party was not a protest) hosted by Texas Hillel on April 2, 2024. PSC members initially marched at the event in what appeared to be an effort to disrupt it intentionally. Dean of Students staff informed them that this was unacceptable conduct and helped them find a way to hold their protest in a way that respected the rights of others, including those needing to move freely through the area on foot.

14.     My office did not charge PSC with violating the rules because of their initial behavior on April 2. Attempting to lay out a constructive path forward, my office sent a letter to Ms. Homsi, the purported PSC representative, admonishing that "[t]his message should serve as a notice of the potential risk of failing to comply

with directives of university officials, and disrupting authorized activities." In the letter, my office offered the help of the Office of the Dean of Students in planning future events or demonstrations and providing support to ensure PSC's future events take place successfully and without disrupting authorized activities. A true and correct copy of this letter is appended hereto as Exhibit B.

15.    A day after the event, PSC's leader Ammer Qaddumi stated in an interview that the University "understands that we want to demonstrate and, we're thankful that rather than serve as a hindrance, they actually have served to streamline that process." See Exhibit C.

### Since October 7, 2023, the Dean of Students Office Has Been Engaged in Outreach to Our Muslim and Jewish Communities

16.    In the aftermath of the event of October 7, 2023, the Dean of Students Office conducted outreach to the University's Muslim and Jewish student communities. Executive Director of Student Involvement Aaron Voyles and Executive Director of Student Support Kelly Soucy organized and attended meetings with the University's Muslim Student Association, Texas Hillel, 2400 Nueces Mosque, University Interfaith Council, and student leaders from the Longhorns for Israel organization. The outreach was aimed to understand the impact to the groups, checking in with the groups' members, and offering support resources.

17.    Staff in Sorority and Fraternity Life, a unit of the Dean of Students Office, likewise conducted outreach with the University's historically-based Jewish and Muslim fraternities and sororities, including Alpha Epsilon Phi Sorority, Alpha Epsilon Pi Fraternity, Sigma Alpha Mu Fraternity, Zeta Beta Tau Fraternity and Mu

Delta Alpha Sorority. Similarly, the outreach was to ensure they, too, were supported and knew how to access campus resources should their membership need it. In subsequent text outreach, in person meetings, and chapter coaching, staff were in touch with all five of these groups throughout the year.

### Some Incidents Involving PSC This Year Have Concerned My Office

18.    While things worked out on April 2, 2024, I am also aware of several occasions when members of the PSC or affiliated persons were involved in events that crossed the line into disruptive behavior.

19.    On December 6, 2023, PSC members and others protested a speaking event featuring journalist Bari Weiss. That disruption violated UT's rules because it prevented others from hearing the speaker, who was expressing a viewpoint with which those protestors disagreed. I have appended a video of the indoor disruption at the event as Exhibit D and a news story quoting Ammer Qaddumi, PSC's leader, about the disruption as Exhibit E.

20.    On December 8, 2023, protesters entered a locked building, burst into the private office of the dean for the School of Social Work, and while delivering a list of demands they temporarily prevented his ability to exit. The student conduct team conducted a disciplinary proceeding concerning four involved students, who were charged with disruptive conduct, unauthorized property entry, and failure to comply.

21.    Similarly, on January 26, 2024, there were disruptions at a talk by a prominent Israeli speaker Yaron Brook, hosted by the McCombs Salem Center. Protestors repeatedly stood up and shouted at the speaker, and one-by-one were

Declaration of Katie McGee                                                                              7

asked to leave or escorted out of the room. One protester was taken into custody by UTPD for refusing to leave and resisting arrest.[3]

**The National Pattern of Encampments and Disruption Coordinated by the National SJP Informed My Office's Expectations of Rules Violations and Disruption When PSC Declared Its Intention to Establish an Encampment.**

22.    The Students for Justice in Palestine (SJP) is a national organization supporting over three hundred and fifty pro-Palestinian campus organizations.  SJP manages campus-based activities, maintains communications networks, coordinates campaigns, leads training, and builds an organizing community. SJP provides "playbooks" or "toolkits" to guide their local groups. *See* Exhibit F.

23.    Since October 7, 2024, SJP and its local organizations have intentionally disrupted campus operations at numerous universities.

24.    The most prominent example is the SJP encampment at Columbia University, which began on April 17, 2024. A large group (students and non-students) took over the lawn in the heart of Columbia's campus for several weeks. They harassed students and staff and ultimately broke into a building, Hamilton Hall, causing extensive damage. This conduct forced Columbia to cancel in-person classes and commencement and severely curtail movement on its campus. Photos of protesters at Columbia breaking into Hamilton Hall and barricading themselves inside, such as in the two photos shown below, were published in the media.

---

[3] A video of this arrest can be found at https://drive.google.com/file/d/1oX4bI2FzF6eGNdnNRq4Jja_nZr-s6ZVR/view. It should be noted that this individual was also arrested on April 29, 2024, during a disruptive on-campus protest.

Declaration of Katie McGee                                                                    8



4



5

25.    Administrators from Columbia University formed a working group with administrators from other universities that were encountering the same pattern of encampment attempts and disruption, which my office was invited to join after the events on our campus on April 24. This group of university staff met regularly via Zoom for weeks to share information on response strategies, to discuss staffing models, staff compensation, and prevention work moving forward.

---

4 https://www.nbcnews.com/news/us-news/columbia-university-president-says-negotiations-protesters-stalled-sch-rcna149755
5 https://www.telegraph.co.uk/us/news/2024/04/30/columbia-students-pro-palestinian-protesters-barricade/

26.    Other encampments emerged at Yale, the University of Michigan, New York University, the New School, Tufts University, MIT, Emerson College, the University of California, Berkeley, California State Polytechnic University, Humbolt, and others.    At campus after campus, demonstrations associated with these encampments disrupted university operations, destroyed property, violated university rules, and threatened public safety.[6]

27.    Within The University of Texas System, on April 23, 2024, the President's Office at The University of Texas at Dallas was stormed by the local chapter of the SJP, which occupied the building for seven hours.[7] Over 100 protestors blocked stairs and hallways, drummed, yelled, and chanted while disrupting operations.

---

[6] See https://president.umich.edu/news-communications/messages-to-the-community/ending-the-encampment/ (University of Michigan statement detailing disruptions to university operations, vandalism, and an assault on law enforcement officers); https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/comms/the-greene-st-walkway-encampment.html (NYU statement detailing "disruption, vandalism, and violence"); https://salovey.yale.edu/writings-and-speeches/statements/call-civility' (Yale); https://today.emerson.edu/2024/04/24/important-encampment-update/ (Emerson); https://orgchart.mit.edu/letters/actions-encampment (MIT).
[7] https://www.instagram.com/p/C6Hf0BGpJbU/; https://www.instagram.com/p/C6H-vhkJ2VH/; https://www.instagram.com/p/C6H_9c3pSox/; https://twitter.com/MHurstMedia1/status/1782934006754931177?ref_src=twsrc%5Etfw%7Ctwcamp%5Etweetembed%7Ctwterm%5E1782934006754931177%7Ctwgr%5E388578422376a73391f7809c9944b6532e52dbb6%7Ctwcon%5Es1_&ref_url=https%3A%2F%2Fwww.statesman.com%2Fstory%2Fnews%2Fstate%2F2024%2F04%2F25%2Fut-dallas-student-pro-palestine-protest-demand-action-campus-president%2F73454359007%2F; https://www.statesman.com/story/news/state/2024/04/25/ut-dallas-student-pro-palestine-protest-demand-action-campus-president/73454359007/; https://www.instagram.com/p/C6PKih7JRSR/ (posted April 26 but showing the scene from April 23); https://www.instagram.com/p/C6PMs8ZpWj2/ (same); https://utdmercury.com/pro-palestine-students-to-meet-with-president-benson-after-seven-hour-long-sit-in-for-divestment/.

**PSC's Coordination with National SJP And Its Encampment Movement Was Evident from Its Statements on Instagram.**

28.     I have read the complaint, and its statements that the PSC's affiliation with groups at other universities and at the national level was nothing more than "rumor" could not be farther from the truth. My office's understanding that the PSC planned to create an encampment and disrupt the university was not based on rumor, but on the PSC's own statements and its wholesale adoption of the national SJP's terminology and tactics. The level of national coordination was like nothing I have seen before in my over twenty years working in higher education administration.

29.     The clearest way my office was able to see the national coordination occurring was through the PSC's Instagram posts, which closely tracked and often quoted from, reposted from, or jointly posted with, the National SJP's Instagram account.[8] That was particularly evident in the leadup to April 24.

 

---

[8] Based on their contents and associated accounts, I know these posts belong to the NSJP and PSC. These posts were still publicly available when I executed this declaration.

Declaration of Katie McGee                                                                11

30.     On April 20, 2024, SJP announced the Popular University for Gaza campaign to seize control of campuses nationwide. It wrote on its website: "Students for Justice in Palestine (SJP) chapters across North America have risen in defense of the Palestinian people, establishing autonomous zones on several university campuses to assert their strength and demands in the face of severe university repression. Today, April 20th, 2024, National Students for Justice in Palestine announces the Popular University for Gaza, a coordinated pressure campaign against university administrations and trustees to immediately divest from the Israeli state." It went on to state: "In the footsteps of our comrades at Rutgers-New Brunswick SJP, Tufts SJP, Columbia SJP, Yalies4Palestine, and many more, SJP chapters across the nation will seize the university and force the administration to divest for the people of Gaza!" See Exhibit G.

31.     SJP reiterated the call to action on Instagram, declaring: "WE ARE ALL SJP! Our universities have chosen profit and reputation over the lives of the people of Palestine and our will as students. The supposed power of our administrators is nothing compared to the strength of the united students, staff, and faculty committed to realizing justice and upholding Palestinian liberation on campus. In the footsteps of our comrades at Rutgers-New Brunswick SJP, Tufts SJP, and now Columbia SJP, we will seize our universities and force the administration to divest, for the people of Gaza! Join the Popular University, take back our institutions!"

Declaration of Katie McGee                                                                    12



32.    On the same day, April 20, 2024, the PSC reposted National SJP's announcement on its own Instagram account.



33.    On April 21, 2024, National SJP Instagram declared: "Campuses in Revolt: Six Gaza Solidarity Encampments have erupted so far and more are on the way!" It stated that encampments at Rutgers, Columbia, Yale, The New School, and more represented a "long-term sustained occupation."[9] PSC "liked" the post.[10]



34.    On April 22, 2024, the National SJP posted: "Join the Popular University for Gaza! In this historic moment, as students occupy their campuses, setting up encampments for the first time since the 1960s, National Students for Justice in Palestine has launched the Popular University for Gaza National Campaign. By establishing spaces for popular education on campus, we will disrupt the university's operations, usurp its existing structures, and undermine its elite

---

[9] https://www.instagram.com/p/C6CMk9oOPcF/.
[10] https://www.instagram.com/p/C6CMk9oOPcF/.

Declaration of Katie McGee                                                                    14

reputation to force university administrators to either cut ties with the Zionist entity or allow their universities to shatter."[11] SJP wrote that the "Popular University for Gaza is a coordinated mass movement of students, faculty, and staff dedicated to preventing our universities from performing their daily functions."[12]



35.    National SJP went on: "We will seize control of our institutions, campus by campus, until Palestine is free."[13]

---

[11] https://www.instagram.com/p/C6E0DYXuWs8/.

[12] https://www.instagram.com/p/C6E0DYXuWs8/.

[13] https://www.instagram.com/p/C6EQ0r1ulpM/?img_index=6.



36.     They continued: "We will disrupt university operations" and declared that they "will decide what we learn and how we gather."[14]

---



37.    It continued: "There will be no classes or compliance with our institutions so long as their shameless profiteering off of genocide persists."[15]

---

[15] https://www.instagram.com/p/C6EQ0r1ulpM/?img_index=3.



38.    On April 23, 2024, PSC posted that they planned to implement the

Popular University at UT Austin the next day. PSC announced under the banner of

the Popular University that "[c]lass is [c]anceled" and that they would "reclaim [their]

space on Wednesday, April 24."[16] Participants were to walk out of class, meet at

Gregory Gym at 11:40, and march to the South Lawn to "occupy" it. Again, they would

do so "[i]n the footsteps of [their] comrades at Columbia SJP, Rutgers-New

Brunswick, Yale, and countless others across the nation." Participants were to bring

"blankets, food and water, face masks, and lots of energy."

---

[16] https://www.instagram.com/p/C6G7WP9OkA0/?img_index=1.



39.    That same day, April 23, a representative of the PSC emailed Sade Dawson-Love in my office and inquired about the availability of Greg Plaza on April 24, 2024, stating that while they "don't necessarily need to reserve the space," they wanted to know if there were other major events otherwise using it.

40.    April 23, 2024, at 10:41 p.m., my office transmitted to PSC Authorized Representatives a "Notice Cancelling Planned Event." We resent the letter the following morning to additional individuals associated with PSC's leadership. See Exhibit H.

41.    The link between PSC and SJP continued to be manifest after April 24. Sometime after April 24, 2024, SJP began updating its website with a map showing its "Popular University for Gaza Solidarity Encampments" across the country. SJP lists an encampment at UT Austin among its alleged victories. And on April 29, 2024, when protesters again attempted to establish an encampment on the South Lawn, PSC made a joint Instagram post along with National SJP encouraging people in "our movement" to go to the lawn and "defend our space."











# NATIONAL STUDENTS FOR JUSTICE IN PALESTINE

Supporting over 350 Palestine solidarity organizations across occupied Turtle Island ("North America"), we aim to develop a student movement that is **connected**, **disciplined**, and **equipped** with the tools necessary achieve **Palestinian liberation**.

## POPULAR UNIVERSITY FOR GAZA SOLIDARITY ENCAMPMENTS



See full screen

**My Office Cancelled the April 24 PSC Event Because We Believed it was**
**Likely to Violate our Rules and Cause Substantial Disruption**

42.    We concluded that the planned event was likely to violate our rules and to cause a material and substantial disruption to school activities during a critical time of the academic term, and that is why we cancelled the event.

43.    We did not consider there to be any ambiguity behind what PSC meant when it called for a Popular University on the UT Austin campus: PSC planned to create an encampment. The national movement to establish Popular Universities on campuses, of which PSC was a part, held as express goals of long-term sustained encampment and disruption of university operations. We took those statements at face value.

44.    Furthermore, because April 24 was the last day of classes, the anticipated encampment and disruption to university operations would have been timed to coincide with the period for students studying for final exams. Students typically have a large portion of the academic grade determined by work submitted at the end of the term.  This includes final papers, projects, and examinations.  The last regular days of the term are also a time that faculty generally provide review and guidance for final examinations.  This is historically a high impact time for students and often a time when the Dean of Students team receives a high number of student concern reports due to stress and anxiety over grades.

45.    I have reviewed the complaint, and it states that the event was preemptively cancelled under the "pretext" of rules violations. My office did not cancel the event based on pretext or rumor. We canceled the event because PSC expressed

an intent to violate school rules at their demonstration. I have appended a copy of the cancelation letter hereto as Exhibit I.

46.     Our decision to cancel the event had everything to do with PSC's planned actions—setting up an encampment and disrupting university operations in violation of Institutional Rules—and nothing to do with the content of PSC's planned expression, which was the same as it had been at previous (and subsequent) events that my office approved.

47.     Our decision to cancel the event also had nothing to do with Executive Order GA-44. At the time of our decision to cancel the event, no changes had been made to our Institutional Rules in response to the Executive Order. Chapter 13 was updated to include the definition of antisemitism required by GA-44 on June 21, 2024.

**After the PSC Carried Out Its April 24 Event Anyway, My Office Placed PSC on Interim Suspension**

48.     My office placed the PSC on interim suspension after the April 24 protest. The investigation process is ongoing and there has not been a final resolution. The conduct team prioritized the investigative caseload for individual students to ensure resolution prior to the beginning of the fall academic term. The interim suspension is in place because of alleged violations of university policies, which are being investigated, and has nothing to do with the viewpoint of PSC.

49.     As defined by the University's Institutional Rules on Student Organizations, Section 6-402, "'Interim Action' means an action taken by the Dean of Students against a Student Organization while the Dean of Students is assessing an alleged violation of university policy by the Student Organization. Actions include

but are not limited to suspension, suspension of rights or privilege or a probation from activities or operations."

50.    In this case, on April 25, 2024, I sent a letter to the Authorized Representatives of the PSC. The letter informed those representatives that the Office of the Dean of Students is engaged in a formal investigation into information we received indicating that the PSC "may have violated the University's *Institutional Rules.*" Thus, effective immediately, the PSC was instructed to "cease all activity until representatives of the Office of Student Conduct and Academic Integrity fully investigate the pending allegations." The letter reinforced that the University "does not tolerate misconduct by any group or individual affiliated with the University." The Dean of Students is preliminarily investigating these reports pursuant to Section 6-501, and at the conclusion of that investigation will either dismiss the allegation or pursue an appropriate resolution option as outlined in Section 6-503.

51.    A Student Organization violates a University regulation when, among other circumstances, an Officer acting in the scope of their organizational capacities commits a violation, a member of the Student Organization commits a violation while acting with apparent authority of the Student Organization, a member or officer permits, encourages, aids, or assists any of its members in committing a violation, or members or officers fail to prevent an action when they "knew or should have known that an action constituting a violation was occurring or about to occur." Section 6-501.

52.    Section 6-404 lists prohibited conduct of student organizations. It authorizes the Dean of Students to "initiate disciplinary proceedings" against "a

Student Organization that is alleged to have engaged in" prohibited activities in the following categories: (1) Local, State, or Federal Law Violations; (2) Weapons; (3) Dangerous Materials; (4) Threatening or Endangering Behavior; (5) Sex or Gender Based Harassment; (6) Theft; (7) Hazing or Hazing Activity; (8) Alcohol Misconduct; (9) Drugs; (10) Individual and/or Unauthorized Group Disturbance; (11) Harassment; (12) Property; (13) Technology Misuse; (14) Stalking; (15) Gambling; (16) False and Misleading Information; (17) Unauthorized Surveillance; (18) Disruptive Conduct; (19) Failure to Comply; (20) Violent Conduct; (21) Animal Cruelty; (22) University System and Institutional Violations; (23) Financial Misconduct; (24) Retaliation; and (25) Aiding in Academic Misconduct.

53.     The Dean of Students Office is investigating PSC for potential violations in multiple categories.[17]

54.     Erecting tents and attempting to establish an encampment are prohibited by Handbook of Operating Procedures ("HOP") 8-1050.[18] Under that policy, "[c]amping is not permitted" on UT Austin property. Camping includes "Establishing or maintaining outdoors, or in or under any structure not designated for human occupancy, at any time during the day or night, a temporary or permanent place for cooking, storing of personal belongings, or sleeping by setting up any bedding, sleeping bag, mattress, tent, hammock or other sleeping equipment, or by setting up any cooking equipment that has not been approved by the Office of

---

[17] The version of the rule that was in place in April 2024 will guide this investigation.
[18] The issue with the tents on the lawn was both that it violated HOP 8-1050 and also that encampments are disruptive to operations.

Environmental Health and Safety" as well as "The establishment of, or attempt to establish, temporary or permanent living quarters."

55.    HOP 8-1010 prohibits campus violence. Campus violence is defined to include physically assaulting a person, "including slapping, hitting, punching, pushing, poking or kicking; or physical threats to inflict physical harm."

56.    Chapter 13 of our Institutional Rules on Student Services and Activities establishes the University's time, place, and manner restrictions for speech, expression, and assembly. Section 13-301 prohibits disruptions. Section 13-801 prohibits unauthorized use of amplified sound. Section 13-600 prohibits unauthorized use of tables in areas on grass space, including the South Lawn. Section 13-105 prohibits the use of face coverings to conceal the wearer's identity. Chapter 13-1202 requires all students and groups to comply with directives from staff and law enforcement.

57.    Chapter 11 of our Institutional Rules on Student Services and Activities establishes rules on Student Conduct and Academic Integrity. Section 11-402, on Behavioral Misconduct, mirrors the categories listed above for prohibited conduct by student organizations found in Section 6-404. Section 11-402(16) makes it a violation to fail to comply with the directives of any university official(s) acting in the performance of their duties, and who has the authorization to issue such directives. That same section also makes it a violation to fail to identify oneself to a university official when requested to do so.

Declaration of Katie McGee                                                                     27

58.    Under Section 11-402(2), a person violates the university's policy on weapons when one: "possesses, uses, or displays firearms, facsimile firearms, ammunition, explosives, or other items that could be used as weapons, including but not limited to sticks, poles, clubs, swords, shields, body-armor or make shift body-armor, masks, helmets and other garments, such as sporting protective gear, that alone or in combination could be reasonably construed as weapons or body-armor on property owned or controlled by the University, without written permission from the Dean of Students, unless authorized by federal, state or local laws; or, violates Policy 8-1060, Campus Carry, of the Handbook of Operating Procedures"[19]

59.    Failure to follow city, state, and federal laws, including criminal trespass, disorderly conduct, destruction of government property, and obstructing a roadway, is also a violation of university policy.

### Had My Office Not Acted As It Did, We Would Have Undermined Our Future Ability to Enforce Time, Place, and Manner Restrictions on Speech and Ensure Campus Safety.

60.    UT Austin is committed to enforcing its Institutional Rules as written, regardless of the viewpoint being expressed. Those rules already seek to achieve a balance between freedom of expression, along with content-neutral time, place, and manner restrictions that allow the campus to operate safely and to ensure that all students are able to use and enjoy the campus. A refusal to enforce those Rules here— for instance by permitting this group to establish an encampment—would make it impossible for UT Austin to fairly enforce those rules in the future.

---

[19] Individuals with a handgun license may carry a concealed firearm on campus. https://www.utexas.edu/campus-carry.

## Conclusion

61.    I declare under penalty of perjury that the foregoing is true and correct.

**PURSUANT TO 28 U.S.C. § 1746, I VERIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF TEXAS AND THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on _____2024-08-19 | 12:13:33 PDT_____, 2024

*Katie McGee*
A80B2C52291A43F.

Katie McGee
Interim Dean of Students and
Associate Vice President
Office of the Dean of Students
University of Texas at Austin

**EXHIBIT A**

*Chapter 13 of the UT Austin Institutional Rules in effect during April 2024*

# Chapter 13. Speech, Expression, and Assembly

**Subchapter 13–100. Governing Principles**

### Sec. 13–101. Freedom of Speech, Expression, and Assembly

a. The freedoms of speech, expression, and assembly are fundamental rights of all persons and are central to the mission of the University. In accordance with this Chapter, students, faculty members, staff members, and Members of the Public have the right to assemble, to speak, and to attempt to attract the attention of others, and corresponding rights to hear the speech of others when they choose to listen, and to ignore the speech of others when they choose not to listen.

b. In furtherance of the University's educational mission, the University buildings including their outside surfaces, surfaces associated with or connected to a University building, and University structures are limited public forums open only to the expressive activities of faculty, staff, and students as set forth in this Chapter. Members of the Public may engage in expressive activities at the University in accordance with the rules contained in this Chapter, including generally applicable or localized "time, place, and manner" rules as described in Subsection 13-304. Student, faculty, and staff organizations may not invite the public at large to events in University buildings or facilities, or locations that are not in a common outdoor area.

c. Students, faculty, and staff members are free to express their views, individually or in organized groups, orally or in writing or by other symbols, on any topic, in all parts of the campus, subject only to rules necessary to preserve the equal rights of others and the other functions of the University. Teaching, research, and other official functions of the University will have priority in allocating the use of space on campus. Members of the Public may engage in expressive activities only in common outdoor areas of the campus, and subject to the time, place, and manner rules necessary to preserve the functions of the University, as set forth in subsection 13-304.

d. The University will not discriminate on the basis of the political, religious, philosophical, ideological, or academic viewpoint expressed by any person, either in the enforcement and administration of these rules or otherwise. This subsection does not limit the University's ability to enforce provisions involving prohibited categories of expression described in Subchapter 13-200.

e. The University of Texas at Austin Police Department (UTPD) may immediately enforce these rules if a violation of these rules constitutes a breach of the peace or compromises public safety.

### Sec. 13–102. Scope of This Chapter and Related Provisions

a. This Chapter protects and regulates on-campus speech, expression, and assembly of students, faculty members, staff members, and members of the public, regardless of whether those activities are part of the teaching, research, or other official functions of the University or whether they are sponsored by the University or any academic or administrative unit.

   1. This Chapter also regulates certain speech that is part of the teaching, research, or other official functions of the University.

   2. Section 13–204 on harassment applies to all speech on campus, to speech made using University resources, and to off-campus speech that materially interferes with a person's education or employment.

b. This Chapter applies to speech by University persons and University organizations in the common outdoor areas and the limited public forums, and to speech by members of the public in the common outdoor areas. It also applies to speech made using the University's information resources as defined in the *Acceptable Use Policy for University Students*, regardless of whether the speech was submitted for academic credit. The Dean of Students administers and schedules reservations for the use of the temporary exhibit and banner spaces and the use of University tables and amplified sound because scheduling through a single office is necessary to avoid conflicts.

c. Any program or event sponsored by an academic or administrative unit of the University will have priority in the use of space and facilities over any speech, expression, or assembly that is not sponsored by an academic or administrative unit, except that programs or events sponsored by an academic or administrative unit will not have priority in the use of weekday amplified sound areas defined in Section 13–802. This Chapter does not limit other existing authority of University officials to authorize programs and events sponsored by an academic or administrative unit and not provided for in this Chapter.

d. Additional rules concerning free speech and academic freedom of faculty members are found in the Regents' *Rules and Regulations*, Rule 31004, Paragraph 2, Sections 1 and 2.

e. Additional rules concerning free speech at the University are found in the Regents' *Rules and Regulations*, Rule 40501, Rule 80101, Rule 80103, and Rule 80104. Chapter 13 of the *Institutional Rules* implements those provisions and applies them to UT Austin.

f. Rules requiring University employees to make clear that controversial statements are made in their personal capacity are found in the Regents' *Rules and Regulations*, Rule 10101, Section 6.2. Rules restricting use of University equipment, supplies, services, and working hours for political activities are found in the Regents' *Rules and Regulations*, Rule 30103.

g. If a deadline stated in this Chapter falls on a Saturday, Sunday, University holiday, or skeleton crew day, that deadline will be moved to the next day that is not a Saturday, Sunday, University holiday, or skeleton crew day.

### Sec 13–103. General Definitions—Categories of Speakers and Users

In this Chapter, unless the context requires a different meaning, the following definitions apply.

1. "Academic or administrative unit" means any office or department of the University.

2. "Event" means something that occurs in a certain place during a particular interval of time. Events include but are not limited to presentations by guest speakers, public assemblies, and other speech activities, which may include the distribution of literature or the use of exhibits, tables, or signs.

3. "Faculty member and staff member" includes any person who is employed by the University.

4. "Off-campus person or organization" and "member of the public" mean any person, organization, or business that is not an academic or administrative unit, a registered student, faculty, or staff organization, or a student, faculty member, or staff member.

5. "Registered faculty or staff organization" means a faculty organization or staff organization under the Regents' Rules and Regulations, Rule 40201 and Handbook of Operating Procedures 4-1110.

6. "Registered or sponsored student organization" means a registered student organization or a sponsored student organization under Subchapter 6–200 of the *Institutional Rules*.

7. "Student" means a person who is currently enrolled at the University, or has been enrolled at the University in a prior semester (including summer) and is eligible to continue enrollment in the semester that immediately follows.

8. "University person or organization" includes academic or administrative units, registered or sponsored students organizations, registered faculty or staff organizations, and individual students, faculty members, and staff members.

### Sec. 13–104. Other General Definitions

In this Chapter, unless the context requires a different meaning, the following definitions apply.

1. "Amplified sound" means sound whose volume is increased by any electric, electronic, mechanical, or motor-powered means. Shouting, group chanting, and acoustic musical instruments are exempt from this definition and are not subject to the special rules on amplified sound, but are subject to general rules on disruption.

2. "Common outdoor area" means outdoor space that is not regularly used for dedicated University business and does not have an educational function, or a research function.  It does not include the outside surfaces of a University building, surfaces associated with or connected to a University building, a University structure, spaces dedicated to temporary outdoor banners, spaces dedicated to temporary outdoor exhibits, or any other space within the University's limited public forum.  Common outdoor areas are designated by state law as traditional public forums.

3. "Dean of students" means the dean of students of The University of Texas at Austin or any delegate or representative of the dean of students.

4. "Limited public forum" means the University property, both indoors and outdoors, that is not a common outdoor area. This includes the outside surfaces of a University building, surfaces associated with or connected to a University building, a University structure, spaces dedicated to temporary outdoor banners, spaces dedicated to temporary outdoor exhibits, and residential outdoor spaces managed by University Housing and Dining including Jester Spanish Oaks Terrace, San Jacinto Amphitheatre, Honors Quad, Duren Courtyard, the Blanton Museum's outdoor Plaza and Art Garden, the Union Building Patios, the William C. Powers Jr. Student Activity Center patios, Goldsmith Hall, and the Cronkite Plaza.

5. "Main Mall" means the area bounded by the south wall of the Main Building, the west walls of Garrison Hall, the north edge of Inner Campus Drive, the south wall of the Dorothy L. Gebauer Building and the east wall of Battle Hall. The Main Mall includes the south steps and south porches of the Main Building.

6. "Room or space" includes any room or space, indoors or outdoors, owned or controlled by the University.

7. "Temporary banner space" means designated outdoor or indoor display area reserved for University persons and University organizations' use, as managed by the dean of students, where a University person or organization's temporary banner may be affixed for multiple days as permitted by Subsection 13-503. These areas are part of the University's limited public forum and not open to members of the public.

8. "Temporary exhibit space" means an outdoor display area designated and managed by the Dean of Students, where an authorized person or organization may erect a temporary exhibit as permitted by Subsection 13–503.  These areas are part of the University's limited public forum and not open to members of the public.

9. "University" means The University of Texas at Austin.

10. "Vice president" means the Vice President for Student Affairs at The University of Texas at Austin.

### Sec. 13-105. Prohibited Items or Actions

The following restrictions are intended to protect the health and safety of all persons on campus, to maintain the free flow of pedestrian traffic in and out of University buildings, and to protect the educational mission of the University.

a. The following items are prohibited on campus:

   i. A mask, facial covering, or disguise that conceals the identity of the wearer that is calculated to obstruct the enforcement of these rules or the law, or to intimidate, hinder or interrupt a University official, UTPD officer, or other person in the lawful performance of their duty;

   ii. The possession, use, or display of firearms, facsimile firearms, ammunition, explosives, or other items that could be used as weapons, including but not limited to sticks, poles, clubs, swords, shields, or rigid signs that can be used as a shield, without written permission from the Dean of Students, unless authorized by federal, State or local laws;

   iii. Body-armor or make shift body-armor, helmets and other garments, such as sporting protective gear, that alone or in combination could be reasonably construed as weapons or body-armor, without written permission from the Dean of Students; and

   iv. Open flame, unless approved in advance by The University of Texas at Austin Fire Marshal.

b. No person or organization may engage in expressive activity within a ten-foot clearance around points of entry and the perimeter of all University buildings.

## Subchapter 13–200. Prohibited Expression

### Sec. 13–201. Obscenity

No person or organization will distribute or display on the campus any writing or visual image, or engage in any public performance, that is obscene. A writing, image, or performance is "obscene" if it is obscene as defined in Texas Penal Code, Section 43.21 or successor provisions, and is within the constitutional definition of obscenity as set forth in decisions of the United States Supreme Court.

### Sec. 13–202. Defamation

a. No person shall publish to a third party any statement that defames any other person.

b. A statement defames another person if it is: (i) published to a third party other than the subject of the statement or their legal representative; (ii) of and concerning that person; (iii) is a false statement of fact; (iv) that holds the person up to hatred ridicule or contempt; (v) is made negligently, if the person is a private figure or, if the person is a public official or public figure, with knowledge of falsity or reckless disregard of the truth; (vi) which proximately causes damages; and (vii) is not privileged.

### Sec. 13–203. Incitement to Imminent Violations of Law

No person will make, distribute, or display on the campus any statements directed to inciting or producing imminent violations of law under circumstances such that the statements are likely to actually and imminently incite or produce violations of law.

### Sec. 13–204. Harassment

a. No person will engage in conduct that constitutes harassment of another person or make, distribute, or display on the campus or through University information resources any statement that constitutes harassment of any other person. This Section applies to

all speech at UT Austin, all speech made using University resources, including speech that is part of teaching, research, or other official functions of the University whether in person or not, and whether oral, written, or symbolic, and off-campus speech that materially interferes with a person's education or employment.

1. "Harassment" means hostile or threatening conduct or speech, whether oral, written, or symbolic, that:

    A. is sufficiently severe, pervasive, and objectively offensive to create an objectively hostile or threatening environment that interferes with or diminishes the victim's ability to participate in or benefit from the services, activities, or privileges provided by the University; and

    B. personally describes or is personally directed to one or more specific individuals.

    C. When harassment is sex or gender based, the definitions for quid pro quo and hostile environment harassment, set out in Handbook of Operating Procedure 3-3031(V)(E), apply under this policy's harassment provision.

b. To make an argument for or against the substance of any political, religious, philosophical, ideological, or academic idea is not harassment, even if some listeners are offended by the argument or idea.

c. Verbal harassment may consist of threats, insults, epithets, ridicule, personal attacks, or the categories of harassing sexual speech set forth in Policy 3-3031 of the Handbook of Operating Procedures.

d. Harassment can also consist of nonverbal conduct, such as hazing, practical jokes, damage to property, and physical assault. In the case of sexual harassment and other sex-based misconduct, sexual conduct is often central to the offense. These forms of harassment are prohibited by Policy 3-3031 of the Handbook of Operating Procedures, and by the Regents' *Rules and Regulations*, Rule 30105. Some forms of harassment violate the Prohibition of Campus Violence, Policy 8-1010, in the Handbook of Operating Procedures. Harassment directed at an individual or group of individuals because of race, sex, or certain other characteristics is prohibited by Handbook of Operating Procedures 3-3020. For enhanced sanctions for disciplinary offenses motivated by the race, color, or national origin of a student harmed by the offense, see Subsection 11−701(b) of the *Institutional Rules*. To the extent of any conflict in the definition of verbal harassment, the more detailed definition in this Section controls.

e. An essential part of higher education is to learn to separate substantive argument from personal offense. Inherent in freely exploring ideas and engaging in educational inquiry is discussion where controversial and offensive ideas may be expressed and even welcomed in furtherance of free inquiry and pursuit of knowledge. We strive as a university community to express even the deepest disagreements in a manner that reflects mutual respect, understanding, and sensitivity within the University and in the larger society. These are community norms, even though they cannot be enforced by disciplinary rules. Sometimes community members may engage in a manner that falls short of the desired norms, but this failure does not convert the communication at issue to harassment or a conduct violation.

f. Verbal harassment has been interpreted very narrowly by the federal courts. Policies on verbal harassment or hate speech at many universities have been held unconstitutional, either because they prohibited harassment only when it was based on race, sex, and similar categories, or because they failed to protect the expression of potentially offensive ideas. This policy should be interpreted as narrowly as need be to preserve its constitutionality.

g. Members of the University community are strongly encouraged to report harassment and in some cases are required to do so by law. See HOP 3-3031 and HOP 3-3020 for more information.

Investigation of the information provided, and any remedial or disciplinary proceedings, will proceed under the procedures set out in the harassment policies cross-referenced in Subsection 13-204 (d).

### Sec. 13–205. Solicitation  and Commercial Speech

a. General Rules.

1. No University person, University organization, or member of the public will make, distribute, or display on the campus any statement that promotes, offers, or advertises any product or service for sale or lease that includes commercial identifiers, such as for-profit logos, trademarks, and service marks, or that requests any gift or contribution, except as authorized by Subsection 13−205(b), by section 13−403, or by the Regents' *Rules and Regulations*.

2. Words or symbols on personal apparel, or on decals or bumper stickers affixed to a vehicle by an owner of that vehicle, are not solicitation within this definition.

3. Unadorned acknowledgments or thanks to donors are not solicitation within this definition.

b. Rules specific to campus community members.

1. A registered or sponsored student or a registered faculty or staff organization may advertise or sell merchandise, publications, food, or nonalcoholic beverages, or request contributions: for the benefit of the registered or sponsored student organization or registered faculty or staff organization; for the benefit of another registered or sponsored student organization or registered faculty or staff organization; or for the benefit of an organization that is tax-exempt under Section 501(c)(3) of the Internal Revenue Code. No organization may sell items obtained on consignment. No organization may request contributions for an off-campus tax-exempt organization for more than fourteen days in any fiscal year.

2. Registered or sponsored student organizations, registered faculty or staff organizations, and academic or administrative units, may sell, distribute, or display literature that contains advertising, subject to the limits in Section 13−403. Individual students, faculty members, and staff members may distribute or display such literature, but may not sell it.

3. Individual students, faculty members, and staff members may post advertisements for roommates, subleases, and sales of used goods that the seller has personally owned and used, but only on a bulletin board or website designated for that purpose by an academic or administrative unit in space that the unit occupies or controls. Any unit that designates a bulletin board or website for this purpose may regulate that bulletin board or website under the procedures set forth in Section 13−504.

4. A resident of a University residence hall or apartment building may occasionally invite one or more salespersons to come to the resident's room or apartment, and in that room or apartment, the salesperson may offer products or services for sale to other residents of that residence hall or apartment building.

5. A registered or sponsored student organization or a registered faculty or staff organization may collect admission fees for programs scheduled in advance in accordance with Subchapter 10−200 of the *Institutional Rules*.

6. A registered or sponsored student organization or a registered faculty or staff organization may collect membership fees or dues at meetings of the organization scheduled in advance under Subchapter 10−200 of the *Institutional Rules*.

7. A registered student organization that is a qualified organization as that term is defined in the Texas Charitable Raffle Enabling Act, Texas Occupations Code, Chapter 2002, or successor provisions, may sell charitable raffle tickets pursuant to that act.

8. A registered or sponsored student organization or a registered faculty or staff organization may host a public performance of a film scheduled in advance in accordance with Subchapter 10–200 of the *Institutional Rules*. In accordance with the Regents' *Rules and Regulations*, Rule 80103, admission fees may be collected. All registered or sponsored student organizations or registered faculty or staff organizations that exhibit films on campus must obtain a Public Performance License for the individual film(s) from a licensing agent. This license is required even if the exhibition of the film is offered to the public for free and is educational in nature. Registered or sponsored student organizations and registered faculty or staff organizations will be required to follow the process prescribed by the film distributor to obtain approval to exhibit the film. Federal copyright laws generally protect all films viewed in public areas, regardless of format. However, registered or sponsored student organization and a registered faculty or staff organization may exhibit a film publicly if:

   A. the film is in the public domain;

   B. the organization has written permission from the film's producer or other holder of the right to grant such permission; or

   C. the film is obtained from a company that provides a Public Performance License with the purchase or rental of the film.

c. More detailed regulation of solicitation appears in the Regents' *Rules and Regulations*, Rule 80103.

## Subchapter 13–300. General Rules on Means of Expression

### Sec. 13–301. Disruption

a. Except as expressly authorized in Section 13–802, or by an authorized University official responsible for a program or event sponsored by an academic or administrative unit, no speech, expression, or assembly may be conducted in a way that disrupts or interferes with:

   1. Any teaching, research, administration, function of the University, or other authorized activities on the campus;

   2. The free and unimpeded flow of pedestrian and vehicular traffic on the campus; or

   3. Any public assemblies, distribution of literature, guest speakers, or use of signs, tables, exhibits, or amplified sound by the University of another person or organization acting under the rules in this Chapter.

b. Scope

   1. The term "disruption" and its variants, as used in this Rule, are distinct from and broader than the phrase "disruption of activities," as used in the Regents' *Rules and Regulations,* Rule 30103, Number 2, Section 2, and the phrase "disruptive activities," as used in the Regents' *Rules and Regulations*, Rule 40502. This Rule is concerned not only with deliberate disruption, but also with scheduling and coordination of events to manage or minimize the inevitable conflicts between legitimate events conducted in close proximity, and to preserve the University's ability to execute its functions.

   2. Except in the most extreme cases, interference and disruption are unavoidably contextual. Intentional physical interference with other persons is nearly always disruptive in any context. Interfering with traffic depends on the relation between the volume of traffic and the size of the passageway left open. Disruptive noise is the most contextual of all, because it depends on the activity disrupted. Any distracting sound may disrupt a memorial service. Any sound sufficiently loud or persistent to make concentration difficult may disrupt a class or library.

Occasional heckling in the speaker's pauses may not disrupt a political speech, but persistent heckling that prevents listeners from hearing the speaker does disrupt a political speech. These illustrations may be helpful, but none of them includes enough context to be taken as a rule. We cannot escape relying on the judgment and fairness of University authorities in particular cases. In this context where difficult enforcement judgments are unavoidable, administrators and law enforcement officials' judgments should not be influenced by the viewpoint of those claiming disruption or of those allegedly disrupting.

c. Potentially disruptive events can often proceed without disruption if participants, administrators, and law enforcement officials cooperate to avoid disruption without stopping the event. In cases of marginal or unintentional disruption, administrators and law enforcement officials should clearly state what they consider disruptive and seek voluntary compliance before stopping the event or resorting to disciplinary charges or arrest.

### Sec. 13–302. Damage to Property

a. No speech, expression, or assembly may be conducted in a way that damages, defaces, marks (including by chalking), discolors, or alters in any way property of the University or of any person who has not authorized the speaker to damage or deface his or her property.

b. No person may damage, deface, mark, discolor, alter, or interfere with any sign, table, or exhibit posted or displayed by another person or organization acting under the rules in this Chapter.

### Sec. 13–303. Coercing Attention

a. No person may attempt to coerce, intimidate, or badger any other person into viewing, listening to, or accepting a copy of any communication.

b. No person may persist in requesting or demanding the attention of any other person after that other person has attempted to walk away or has clearly refused to attend to the speaker's communication.

### Sec. 13–304. Other Rules with Incidental Effects on Speech

a. Other generally applicable or narrowly localized rules, written and unwritten, incidentally limit the time, place, and manner of speech, but are too numerous to compile or cross-reference here. For example, libraries typically have highly restrictive rules concerning noise; laboratories and rooms containing the electrical and mechanical infrastructure of the University typically have safety rules and rules excluding persons without specific business there; fire and safety codes prohibit the obstruction of exits and limit the constriction of hallways. Speech within classrooms is generally confined to the subject matter of the class; the right to attend a class at all is subject to registration and payment of tuition; individual professors may have rules of decorum in their classrooms. These "time, place, and manner" rules limit the rights of persons to enter and speak in the places to which these rules apply.

b. Reasonable and nondiscriminatory "time, place, and manner" rules generally control over the rights of free speech guaranteed in this Chapter. But even "time, place, and manner" rules are subject to the constitutional right of free speech. Accordingly, such rules must be viewpoint neutral and cannot regulate speech more restrictively than they regulate other activities that cause the problems to be avoided by the rule, or speech more than is reasonably necessary to serve their purpose. Such rules cannot ban unobtrusive forms of communication with no potential for disruption even in the specialized environment subject to the localized rule. Thus, for example, means of silent expression or protest confined to the speaker's immediate person, such as armbands, buttons, and T-shirts, are nearly always protected because they are rarely disruptive in any environment.

## Subchapter 13–400. Distribution of Literature

### Sec. 13–401. General Rule on Distribution of Literature

a. "Literature" means any printed material, including any newspaper, magazine, or other publication, and any leaflet, flyer, or other informal matter, that is produced in multiple copies for distribution to potential readers.

b. Registered or sponsored students organizations, registered faculty or staff organizations, and academic or administrative units may sell, distribute, or display literature on campus, subject to the rules in this Subchapter and to the general rules in Subchapter 13–200 and Subchapter 13–300. Individual students, faculty members, and staff members may distribute or display literature, subject to the rules in this Subchapter and to the general rules in Subchapter 13–200 and Subchapter 13–300, but may not sell it. In either case, no advance permission is required. Members of the public may distribute literature in the common outdoor areas, subject to the rules in this Subchapter and to the general rules in Subchapter 13–200 and Subchapter 13–300, but may not sell literature.

### Sec. 13–402. Not-for-Profit Literature Only

a. Except as expressly authorized by the Regents' *Rules and Regulations* or by contract with the University, no person or organization may sell, distribute, or display on campus any publication operated for profit. A registered or sponsored organization or a registered faculty or staff organization may sell publications operated for profit as part of a fund-raiser authorized by, and subject to the limits of, Subsection 13–205(b)(1).

b. A publication is operated for profit if any part of the net earnings of the publication, or of its distribution, benefits any private shareholder or individual.

### Sec. 13–403. Limits on Advertising

Literature distributed on campus may contain the following advertising:

1. advertising for a registered or sponsored student organization, a registered faculty or staff organization, or an academic or administrative unit;

2. advertising for an organization that is tax exempt under Section 501(c)(3) of the Internal Revenue Code;

3. paid advertising in a publication primarily devoted to promoting the views of a not-for-profit organization or to other bona fide editorial content distinct from the paid advertising; and

4. other advertising expressly authorized by the Regents' *Rules and Regulations* or by contract with the University.

All other advertising in literature distributed on campus is prohibited.

### Sec. 13–404. Clean Up of Abandoned Literature

Any person or organization distributing literature on campus will pick up all copies dropped on the ground in the area where the literature was distributed.

## Subchapter 13–500. Signs and Banners

### Sec. 13–501. General Rule on Signs

a. "Sign" means any method of displaying a visual message to others, except that transferring possession of a copy of the message is distribution of literature and not a sign.

b. Subject to the rules in this Subchapter and to the general rules in Subchapter 13–200 and Subchapter 13–300, a University person or organization may display a sign by holding or carrying it, by displaying it at a table (see Subchapter 13–600), or by posting it on a bulletin board or other designated location. Signs may not be staked in the ground or posted in any other location except

for those areas allowed by long standing tradition or otherwise allowed by Subsections 13–304(a), (b), and 13–504(a). Subject to viewpoint-neutral size requirements, University Housing and Dining has designated the windows and doors of a residence hall room as locations where the resident(s) of that room may post signs. Section 13–504 lists other designated locations.

### Sec. 13–502. Hand-Held Signs

a. A University person or University organization may display a sign on campus by holding or carrying it by hand or attaching it to their person. Members of the public may display a sign in the common outdoor areas by holding or carrying it by hand or attaching it to their person. No advance permission is required. Signs on sticks or poles or otherwise attached to any device are prohibited.

b. Hand-held signs constructed of materials that create a hazard to other people are not permitted. Signs constructed of rigid materials, including sticks, poles, wood, metal, hard plastic, or other materials that could be construed as a hazard are not permitted.

c. Any person holding or carrying a sign will exercise due care to avoid bumping, hitting, or injuring any other person.

d. Any person holding or carrying a sign at a speech, performance, or other event will exercise due care to avoid blocking the view of any other person observing the speech, performance, or event. Depending on the venue, this may mean that signs may be displayed only around the perimeter of a room or an audience.

e. A law enforcement officer, the dean of students, or an usher or other University employee (if authorized by officials responsible for managing the venue), may warn any person that his or her sign is being handled in violation of Subsections 13–502(a), (b), (c) or (d). If the violation persists after a clear warning, the law enforcement officer, dean of students, authorized usher, or other authorized employee may confiscate the sign. A law enforcement officer may take any action necessary to keep the peace including but not limited to issuing a criminal trespass warning to or arresting the violator.

### Sec. 13–503. Banners

"Banner" means an affixed, stationary sign hung from a structure or building or between two buildings, structures, or poles. Banners on poles may not be carried by individuals.

a. Hand-held banners. University persons, University organizations, and members of the public are permitted to display a hand-held banner carried by two or more individuals without poles, in accordance with Rule 13–502(a) above, in the common outdoor areas.

b. Temporary banner space designations.

1. The dean of students will designate temporary banner spaces where banners may be hung in outdoor locations not occupied or controlled by any other academic or administrative unit. Temporary banner spaces are not open to members of the public.

2. Other academic or administrative units may designate one or more temporary banner spaces where banners may be hung in indoor or outdoor locations that the unit occupies or controls. These temporary banner spaces are not open to members of the public.

c. Space priority.

1. Academic or administrative units, registered or sponsored student organizations, and registered faculty and staff organizations may hang banners in locations designated under Subsection 13–503 (b). The Dean of Students may set reasonable limits on the number of banners that any unit or organization may hang at one time. Individuals and members of the public may not hang banners.

2. Advance permission is required from the unit administering the location; usually, advance reservations are required. Academic

and administrative units advertising official University events or programs may be given priority. In locations administered by academic or administrative units other than the dean of students, organizations affiliated with the unit administering the location may be given priority.

d. Time limits.

1. In locations administered by the dean of students, each banner may be hung for two weeks. The banner may be renewed from week to week, for up to four weeks, if space is available.

2. Other units administering a location for banners may limit the time each banner may hang. Any such time limit will be applied without discrimination to all organizations, except that academic or administrative units may be given preference.

e. The dean of students will maintain, on a website or on a flyer or pamphlet available at the dean of students' office:

1. a list of outdoor temporary banner spaces where banners may be hung;

2. the academic or administrative unit that administers this banner policy at each outdoor location; and

3. a current description of the rules and procedures for reserving a temporary banner space in order to hang a banner in locations administered by the dean of students.

f. The unit administering a banner location may require that the physical work of hanging the banners be performed only by Department of Facilities Services employees or other appropriate University personnel.

## Sec. 13–504. Signs in Other Designated Locations (Including Departmental Bulletin Boards)

a. Each academic or administrative unit may authorize the posting of signs in spaces that unit occupies and controls. Such authorization may be granted by general rule, by stamping or initialing individual signs, or by long standing tradition.

b. Signs in spaces occupied by academic or administrative units may be:

1. confined to bulletin boards or other designated locations;

2. subjected to viewpoint-neutral rules limiting the size of signs, limiting how long they may be posted, requiring each sign to show the date it was posted and the name of the person or organization who posted it, and similar rules designed to facilitate fair and equal opportunities to post signs; and

3. confined to official statements or business of the unit, or to certain subject matters of interest within the unit, or to signs posted by persons or organizations affiliated with the unit.

c. Each academic or administrative unit will post on or near each bulletin board or other designated location that it administers:

1. either the rules applicable to that bulletin board or location, or a particular office or website where the rules applicable to that bulletin board or location may be found; and

2. if a stamp or initials are required on signs before they are posted on that bulletin board or location, the name and office location of the person whose stamp or initials are required.

3. This notice will be posted in the upper left corner of each bulletin board or other designated location for posting signs, or conspicuously in another nearby location. If no such notice is posted, then the only applicable rules are those contained in Subchapter 13–200 and Sections 13–301 to 13–304.

d. Within the scope of the subject matters permitted on a particular bulletin board or other designated location, no academic or administrative unit will discriminate on the basis of the political, religious, philosophical, ideological, or academic viewpoint expressed on a sign.

e. This Section does not apply to any enclosed bulletin board or display case that is accessible only to authorized personnel for official University business.

## Subchapter 13–600. Tables

### Sec. 13–601. General Rule on Tables

University persons and University organizations may set up tables to display literature, disseminate information and opinions, and raise funds, subject to the location restrictions and other rules in this Subchapter and to the general rules in Subchapter 13–200, Subchapter 13–300, and Subchapter 13–1000. University persons and University organizations do not need advance permission to set up tables but are encouraged to reserve tabling space on the West Mall and in other high-demand areas where tabling spaces are designated and limited. Subject to the above rules, members of the public may set up tables in the common outdoor areas and do not need advance permission except on the West Mall and on the east side of Speedway between 21st Street and the south edge of Gregory Plaza; in those locations, members of the public may not set up tables without obtaining a reservation as described below. Members of the public may not set up tables in the University's limited public forum areas.

### Sec. 13–602. Locations

a. Subject to the restrictions elsewhere in these rules, including in Subsection 13–602(b) and the rules on disruption of other functions and interference with vehicular and pedestrian traffic (see Section 13–301), University persons, University organizations, and members of the public may set up tables on impervious surfaces in the common outdoor areas on the campus. Tables may not be set up in areas covered by grass, landscaping, or other pervious substances. University persons and University organizations may set up tables in University buildings in any large, open, indoor location as permitted by the specific building protocols and with permission of the academic or administrative unit controlling the space. In some buildings, tabling may be prohibited completely. The Main building is not available for tabling at any time.

b. Additional restrictions.

1. Tables may not be set up on the Main Mall between 8:00 am and 5:00 pm on weekdays, or on the west side of any portion of Speedway at any time.

2. Tables may not be set up inside any library, classroom, laboratory, performance hall, stadium, or office, or in any hallway less than ten feet wide, without permission from the academic or administrative unit that controls the space, or from the faculty member or staff member who controls the space at a particular time.

3. An academic or administrative unit may further specify these rules by restricting tables to reasonable locations in spaces occupied by that unit. Academic and administrative units are encouraged to state any such rules clearly in writing and to publish those rules on a website or on a flyer or pamphlet available at the chief administrative office of the unit.

4. Tabling space on the West Mall or on the east side of Speedway between 21st Street and the south edge of Gregory Plaza may be reserved by University persons, University organizations, and members of the public by submitting a request using the Hornslink Public Reservation Form. Members of the general public who wish to table on the West Mall or on the east side of Speedway between 21st Street and the south edge of Gregory Plaza must have a reservation. University persons and University organizations are not required to have a reservation to table on the West Mall or on the east side of Speedway between 21st Street and the south edge of Gregory Plaza, but are encouraged to secure a reservation. Tabling space on the west Mall or on the

east side of Speedway between 21st Street and the south edge of Gregory Plaza may be reserved up to four weeks in advance by University persons or organizations and up to three weeks in advance by members of the general public.

    5. Tables must be attended at all times. Unattended tables and their contents may be confiscated by University personnel.

c. If any table is set up in a prohibited or disruptive location, any University employee pointing out the violation is encouraged to also point out other locations, as nearby as is reasonably possible, where the table is permitted.

### Sec. 13–603.  Tabling Cleanup

Every person or organization sponsoring a table will remove their table, items used during tabling, and any litter from the area around the table before vacating the space.

### Sec. 13–604. Sources of Tables

University persons and organizations may supply their own tables. In addition, the dean of students maintains a supply of tables for registered or sponsored student organizations that may be checked out for use on campus in designated areas. The Dean of Students will maintain, on a website or on a flyer or pamphlet available at the office of the dean of students, a current description of the rules and procedures for checking out tables. Members of the general public, and University persons and organizations other than registered or sponsored student organizations, must supply their own tables.

## Subchapter 13–700. Exhibits

### Sec. 13–701. General Rule on Exhibits

a. "General exhibit" means an object or collection of related objects, designed to stand on the ground or on a raised surface, which is not a table, is designed for temporary display, and is not permanently attached to the ground.

b. "A-frame exhibit" means a movable and self-supported sign board designed to stand on the ground and remain overnight in a temporary outdoor exhibit space. A-frame exhibits may not exceed five feet in height or width. Structures that do not meet these criteria will be considered general exhibits and will be subject to the rules governing general exhibits.

c. Academic or administrative units, registered or sponsored student organizations, and registered faculty or staff organizations may erect general exhibits and A-frame exhibits, subject to the rules in this Subchapter and to the general rules in Subchapter 13–200, Subchapter 13–300, and Subchapter 13–1000. Advance permission is required from the dean of students, except that an academic unit may authorize indoor exhibits in a space that it occupies and controls. A-frame exhibits may not be erected on the Main Mall at any time. Members of the public and individual students, faculty, or staff may not erect general exhibits, but may - with permission from the Dean of Students- erect A-frame exhibits in approved locations, subject to the rules in this Subchapter and the general rules in Subchapter 13-200, Subchapter 13-300, and Subchapter 13-1000.

### Sec. 13–702. Application Process

Requests for approval of, or reservation of space for, outdoor general exhibits and A-frame exhibit may be submitted via the Hornslink.org Public Reservation Form.

### Sec. 13–703. Approval Process

a. General exhibits.

    1. The dean of students will designate temporary outdoor exhibit spaces where academic or administrative units, registered or sponsored student organizations, and registered faculty or staff organizations may place general exhibits upon approval

by the Dean of Students. Applications must, where feasible, be submitted at least 14 days in advance of the beginning of the requested display period. The Dean of Students will approve a general exhibit described in a completed and timely application under Section 13–702 unless the Dean of Students disapproves the application under the criteria in Section 10–203 of the *Institutional Rules*, or for other good cause. The Dean of Students will, if possible, advise the applicant how to correct any conditions that preclude approval of the application.

    2. The Dean of Students will consider the totality of the circumstances, including safety concerns, as part of the approval process.

b. A-frame exhibits.

    1. The dean of students will designate locations where A-frame exhibits may be placed. If an academic or administrative unit, a registered or sponsored student organization, or a registered faculty or staff organization wishes to place an A-frame exhibit in a location that is not one of the designated A-frame exhibit locations, then the structure will be considered a general exhibit under this Subchapter and may be placed, if approved, only in a designated temporary outdoor exhibit space. Members of the public and individual students, faculty, or staff may not erect A-frame exhibits outside of the designated A-frame exhibit locations.

    2. The Dean of Students will maintain, on a website, a current description of the rules and procedures for reserving a space for A-frame exhibits on campus. Space for A-frame exhibits may be reserved up to two weeks in advance by members of the general public. The Dean of Students may establish reasonable limits on the number of times per semester or per academic year an individual or organization may reserve space for an A-frame exhibit.

    3. The Dean of Students may establish reasonable limits on the number of A-frame exhibits that an individual or organization may display in a designated area, or on campus, at any time.

### Sec. 13–704. Time Limits

a. General exhibits.

    1. In locations administered by the dean of students, each exhibit may be displayed for up to fourteen consecutive days. The exhibit may be renewed for an additional fourteen days if space is available.

    2. The exhibit may be displayed no earlier than 8:00 am and must be removed by 10:00 pm each day and may be re-erected each morning during the permit period. Requests to display exhibits overnight will be considered on a case-by-case basis and subject to Subsection 13-703.

    3. If an exhibit displayed without permissions, including outside the permit period, the exhibit may be removed by the Department of Facilities Services at the expense of the person or organization sponsoring the exhibit.

b. A-frame exhibits.

    1. Each A-frame exhibit may be placed for up to fourteen consecutive days and remain overnight. The A-frame exhibit may be renewed for an additional fourteen consecutive days if space is available.

    2. If an A-frame exhibit is left on campus without permission, including outside the permit period, the exhibit may be removed by the Department of Facilities Services, at the expense of the person or organization sponsoring the exhibit.

### Sec. 13–705. Exhibit Cleanup

The person or organization sponsoring an exhibit will remove the exhibit and any litter from the area around the exhibit before vacating the space.

### Sec. 13–706. Liability

The person or organization sponsoring an exhibit assumes full responsibility for the exhibit, including all injuries or hazards that may arise from the exhibit. The University will not be liable for any damage that may occur to the exhibit, and the person or organization sponsoring the exhibit will indemnify the University for any claims arising from the exhibit's presence on campus.

## Subchapter 13–800. Amplified Sound

### Sec. 13–801. General Rule on Amplified Sound

Registered or sponsored student organizations, registered faculty or staff organizations, and members of the public may use amplified sound on campus at designated times and locations, subject to the rules in this Subchapter and to the general rules in Subchapter 13–200 and Subchapter 13–300. Advance permission is required. Academic and administrative units need not obtain permission from the Dean of Students to use amplified sound in areas under their control, but should provide advance notice to the Dean of Students when feasible so that the Dean of Students can coordinate timing and help units avoid conflicts. The following unit-controlled areas are sufficiently isolated that coordination by the Dean of Students is unnecessary: the Blanton Museum of Art Courtyard; the McCombs School of Business South Plaza; the Walter Cronkite Plaza at the Jesse H. Jones Communication Center; and the Whitis Court Courtyard.

This Subchapter creates limited exceptions to the general rule on disruption in Section 13–301. An Amplified Sound Areas Map may be found here.

### Sec. 13–802. Location and Times of Weekday Amplified Sound Areas

a. West Mall Amplified Sound Area.
   1. The West Mall Amplified Sound Area is the extreme east end of the West Mall, adjacent to the west steps of the Main Building.
   2. University persons, University organizations, and members of the public may use amplified sound in this area from 11:30 am to 1:30 pm on weekdays.
   3. All academic and administrative units, as well as, registered and sponsored student organizations, and faculty and staff organizations may use sound equipment owned or controlled by the dean of students' office for this sound area.
   4. Members of the public must use their own sound equipment. This sound area requires a reduced decibel level as compared to other sound areas to ensure educational activity in close proximity is not disturbed.
   5. Per Section 61.004 of the Texas Elections Code, groups making a political speech, or electioneering for or against any candidate, measure, or political party may not use amplified sound on the West Mall or anywhere within 1000 feet of a polling place when the polling place is open.

b. Winship Circle Amplified Sound Area.
   1. The Winship Circle Amplified Sound Area is the grassy area east of the East Mall Fountain, west of Waller Creek, and south of Winship Hall.
   2. University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 am to 5:00 pm on weekdays.

c. Battle Oaks Amplified Sound Area.
   1. The Battle Oaks Amplified Sound Area is the area bounded by the north wall of Hogg Auditorium, by an extension drawn northward from the east wall of the Texas Union, by the south edge of the sidewalk on the south side of 24th Street, and by the west edge of the sidewalk on the west side of Inner Campus Drive.
   2. University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 am to 5:00 pm on weekdays.

d. Mustangs Amplified Sound Area.
   1. The Mustangs Amplified Sound Area is the area bounded by the sidewalk on the east side of San Jacinto Boulevard, by the west wall of the Texas Memorial Museum, and by the outer edge of the two stairways on either side of the lawn.
   2. University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 am to 5:00 pm on weekdays.

e. San Jacinto Street Amplified Sound Area.
   1. The San Jacinto Street Amplified Sound Area is the area bounded by the south wall of the Art Building, by the east edge of the sidewalk on the east side of San Jacinto Boulevard, by the north edge of the sidewalk on the north side of 23rd Street, and by the west edge of the sidewalk on the west side of Trinity Avenue.
   2. University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 am to 5:00 pm on weekdays.

f. LBJ Fountain Amplified Sound Area.
   1. The LBJ Fountain Amplified Sound Area is the area bounded by the east edge of Robert Dedman Drive, by the first sidewalk north of the LBJ Fountain, by a line drawn tangent to the west side of the LBJ Fountain and parallel to Robert Dedman Drive, and by the base of the hill on the south side of the LBJ Fountain.
   2. University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 am to 5:00 pm on weekdays.

g. 2609 University Avenue Courtyard Amplified Sound Area.
   1. The 2609 University Avenue Courtyard Amplified Sound Area is the area bounded by the 2609 University Avenue Building on the north, south and east sides, and by the east edge of the sidewalk on the east side of University Avenue.
   2. University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 am to 5:00 pm on weekdays.

h. Creekside Residence Hall Lawn Amplified Sound Area.
   1. The Creekside Residence Hall Lawn Amplified Sound Area is the area bounded by Dean Keeton Street on the north, by Waller Creek on the east and south, and by San Jacinto Boulevard on the west and south.
   2. University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 am to 5:00 pm on weekdays.

### Sec. 13–803. Regulation and Scheduling of Weekday Amplified Sound

a. The dean of students may prescribe rules concerning scheduling, sound levels, the location of speakers and the direction in which they are pointed, and other rules to facilitate the use of weekday amplified sound areas, to mediate any conflict with University functions and other nearby activities, and to manage environmental impact. All such rules will be reasonable and nondiscriminatory.

b. Reservations.

1. University persons, University organizations, and members of the public wishing to use a weekday amplified sound area must reserve a particular area at a particular time. Reservations by University persons and University organizations must be made with the dean of students on a form prescribed by the dean of students. Members of the public may reserve space by making a request on the Hornslink.org Public Reservation Form.  The Dean of Students will approve a properly completed application to reserve an amplified sound area, unless the application or request must be disapproved under the criteria in Section 10–203 of the *Institutional Rules* or under rules promulgated by the dean of students under the authority of this Section.

2. The dean of students may limit the number or frequency of reservations for each applicant to ensure reasonable access for all persons and organizations desiring to use amplified sound on weekdays.

3. When amplified sound areas are not reserved for use for an assembly including amplified sound, they are available, without reservation, for permitted expressive activities that do not involve amplified sound. Such as-available expressive use does not permit a person to use amplified sound without a reservation. Any person or organization using or occupying the space without a reservation must yield control of the space in time to permit any user with a reservation to begin using the space promptly at the beginning of the reserved time

c. Amplified sound in the West Mall Sound Area is in fact disruptive of teaching, administration, and research in the Main Building, in the Flawn Academic Center, in Goldsmith Hall, in the West Mall Office Building, and in Battle Hall. Amplified sound in the Winship Circle Amplified Sound Area is in fact disruptive of teaching, administration, research and performance in College of Liberal Arts Building, the Laboratory Theatre and Winship Hall. The disruption inherent in this use of amplified sound is expressly authorized, but no other disruption is authorized. Disruption is permitted to this extent because otherwise, it would be necessary to ban all use of amplified sound in and near the center of campus during working hours.

d. University persons, University organizations, and members of the public using amplified sound are responsible for maintaining a passageway for pedestrians that is adequate to the volume of pedestrian traffic passing through the area.  Should the size of the assembly exceed the maximum number of participants that is safe for a given location, participants will be directed by campus authorities to relocate to a space that is better suited to the size of the assembly.

e. The amplified sound locations are maintained on the Amplified Sound Areas Map. Any designations of additional areas, any additional rules regulating the designated areas, and the rules and procedures for reserving the use of a designated area, will be clearly stated on a website.

### Sec. 13–804. Amplified Sound on Evenings and Weekends

a. With advance permission, University persons, University organizations, and members of the public may use amplified sound in any location in the common outdoor areas of campus, including the weekday amplified sound areas designated in Section 13–802, after 5:00 pm on weekdays, and after 8:00 am on weekends, except for the early morning hours excluded in Subsection 13–804(b).

b. If amplified sound is authorized for an event on a Sunday, Monday, Tuesday, Wednesday, or Thursday evening, the sound must be turned off by midnight on the following day. If amplified sound is authorized for an event on a Friday or Saturday evening, the sound must be turned off by 1:00 am on the following day.

c. The dean of students may prescribe reasonable and nondiscriminatory rules concerning scheduling, sound levels, the location of speakers and the direction in which they are pointed, and other rules to facilitate the use of amplified sound on evenings and weekends, to mediate any conflict with University functions and other nearby activities, and to manage environmental impact.

d. Use of amplified sound on evenings and weekends requires advance permission from the dean of students. Reservations by University persons and University organizations must be made with the dean of students on a form prescribed by the dean of students. Members of the public may reserve space by making a request on the Hornslink.org Public Reservation Form. The Dean of Students will authorize amplified sound as described in a completed application unless the Dean of Students finds that the application or request must be disapproved under the criteria in Section 10–203 of the *Institutional Rules* or under rules promulgated by the dean of students under the authority of this Section. The Dean of Students will advise each applicant or requestor how to correct, if possible, any conditions that preclude approval of its application.

### Sec. 13–805. Amplified Sound Indoors

University persons and University organizations may use amplified sound indoors. Amplified sound sufficient to be heard throughout the room may be used in any room in any building, but the dean of students may limit or prohibit sound that would be disruptive outside the room. Reservations may be required. Rules concerning use of University buildings are contained in Chapter 10 of the *Institutional Rules*.

## Subchapter 13–900. Public Assemblies

### Sec. 13–901. General Rule on Public Assemblies

a. "Publicly assemble" and "public assembly" include any gathering of persons, including discussions, rallies, and demonstrations. The rules in Subchapter 13–800 apply to any use of amplified sound at a public assembly.

b. Persons and organizations may publicly assemble on campus in any place where, at the time of the assembly, the persons assembling are permitted to be. This right to assemble is subject to the rules in this Chapter and to the rules on use of University property in Chapter 10 of the *Institutional Rules*. No advance permission is required in the common outdoor areas.

### Sec. 13–902. Reservation of Space

a. Common outdoor areas reservations.

1. University persons, University organizations, and members of the public may reserve a space to assemble in the common outdoor areas, as defined by this Chapter. This is in addition to the amplified sound areas which are also available for reservation.

2. Reservations by University persons and University organizations must be made with the dean of students on a form prescribed by the dean of students. Members of the public may reserve space by making a request on the Hornslink.org Public Reservation Form.  Applications and requests for a reservation for such assemblies will be approved pursuant to Subchapter 10–200 of the *Institutional Rules*.

3. If the expected attendance at an assembly is twenty-five or more people, advance notice of no less than two weeks is recommended.  Persons and organizations are encouraged to seek a reservation of a space that is suited to their assembly's anticipated size.

b. Limited public forum areas reservations.

1. Registered student, sponsored student, registered faculty, or staff organizations and academic or administrative units may reserve

a space to assemble in permitted limited public forum areas, as defined by this Chapter.

2. The dean of students will receive applications for reservations of a space within the limited public forum areas. Applications for a reservation for such assemblies will be processed under the provisions in Subchapter 10–202 of the *Institutional Rules*. Individual faculty, staff, and students may not reserve space under the provisions in Chapter 10.

3. If the expected attendance at an event with a guest speaker is twenty-five or more people, advance notice of no less than two weeks is required.

c. Any person or organization with a reservation has the right to the reserved room or space for the time covered by the reservation. Any person or organization using or occupying the room or space without a reservation must yield control of the room or space in time to permit any user with a reservation to begin using the room or space promptly at the beginning of its reserved time.

d. Should the size of any assembly exceed the maximum number of participants that is safe for a given location, including a reserved space, assembly participants will be directed by campus authorities to relocate to a space that is better suited to the size of the assembly to the extent relocation is practicable.

e. While reservations are not always required, they are strongly encouraged. Without a reservation, a person or organization may find the facility locked or the space in use by another person or organization.

f. In some buildings, public assemblies unrelated to the purpose of the building may be prohibited completely. To avoid disruption of University operations, the Main Building may not be used for such public assembly at any time.

### Sec. 13–903. Notice and Consultation

a. Persons or organizations may publicly assemble on campus in any place where, at the time of the assembly, the persons assembling are permitted to be.

b. Persons or organizations that are planning a public assembly in a common outdoor area with or without a guest speaker and expected attendance of more than twenty-five participants, including potential counter-demonstrators, are encouraged to provide advance notice of no less than two weeks to the dean of students to help the University improve the safety and success of the expressive activity. Members of the public may provide this notice by submitted a description of the planned event using the Hornslink.org Public Reservation Form. If there is uncertainty about applicable University rules, the appropriateness of the planned location, or possible conflict with other events, persons and organizations are encouraged to consult the dean of students. Should the size of the assembly exceed the maximum number of participants that is safe for a given location, participants will be directed by campus authorities to relocate to a space that is better suited to the size of the assembly.

c. University persons or organizations planning an event in the limited public forum areas with or without a guest speaker and an expected attendance of more than twenty-five participants, are required to provide advanced notice of no less than two weeks to the dean of students to help the University improve the safety and success of the expressive activity. Notice will be provided on a form prescribed by the dean of students.

d. The notice and consultation requirements of this Subchapter do not apply to academic or administrative units.

e. The University persons and University organizations notice and consultation requirements of this Subchapter may be waived by the dean of students or his or her designee.

f. Registered student, sponsored student, registered faculty, and staff organizations are afforded privileges not available to individual faculty, staff, and students. Individuals may not reserve indoor space on campus.

## Subchapter 13–1000. Guest Speakers

### Sec. 13–1001. Definitions

"Guest speaker" means a speaker or performer who is not a student, faculty member, or staff member.

### Sec. 13–1002. Who May Present

a. Subject to the rules in this Chapter, University persons, University organizations, and members of the public may present guest speakers in common outdoor areas of the campus.

b. Registered student, sponsored student, registered faculty, and staff organizations and academic or administrative units may present guest speakers in the limited public forums of the campus. In the case of registered student organizations and sponsored student organizations, advance permission from the dean of students is required. Registered faculty organizations are required to seek advance permission from the executive vice president and provost. Registered staff organizations are required to seek advance permission from the senior vice president and chief operating officer. Individuals may not present a guest speaker in University buildings or University facilities.

### Sec. 13–1003. Location and Form of Presentation

a. Subject to the rules in this Chapter, including the applicable time, place, and manner rules, University persons, University organizations, and members of the public may utilize the common outdoor areas for guest speaker assemblies. No reservation or prior approval is necessary, but notice and reservations are encouraged for assemblies of twenty-five or more people.

b. A guest speaker may present a speech or performance, or lead a discussion of specified duration, at a time announced in advance, in a fixed indoor location approved by the dean of students.

1. A guest speaker may distribute literature indoors only immediately before, during, and immediately after the normal course of his or her speech, presentation, or performance, and only to persons in attendance. Only literature that complies with Subchapter 13–400 may be distributed.

2. Student, faculty, and staff organizations may not invite the public at large to events in University buildings or facilities.

c. A guest speaker may not

1. accost potential listeners who have not chosen to attend the speech, performance, or discussion; or

2. help staff a table or exhibit set up outside of the common outdoor areas or in the University buildings or facilities.

d. No University person, University organization, or member of the public may present a guest speaker in violation of the prohibitions against solicitation in Section 13–205 or cosponsorship in Chapter 10, Section 13–304 of the Institutional Rules.

### Sec. 13–1004. Application for University Building or Facility Space for Presentation of Guest Speakers

In accordance with Regents' *Rules and Regulations*, Rule 40501, Section 3.5, all registered students, sponsored students, registered faculty, and staff organizations that wish to present a guest speaker in a University building or facility space will apply through a prescribed process, at least two weeks before the scheduled event or any planned advertising for the event, whichever is earlier.

1. A registered or sponsored student organization that wishes to present a guest speaker will apply to the dean of students, through a process prescribed by the dean of students, at least two weeks before the scheduled event or any planned advertising for the event, whichever is earlier. The application will be combined with an application under Section 10−202 of the *Institutional Rules* to reserve the use of a University room or space for the event. The dean of students will approve an application properly made under Subsection 13−1004(a) unless it must be disapproved under the criteria in Chapter 10, Section 10−203 of the *Institutional Rules*.

2. A registered faculty organization that wishes to present a guest speaker will apply to the executive vice president and provost through a process prescribed by the executive vice president and provost, at least two weeks before the scheduled event or any planned advertising for the event, whichever is earlier. The application will be combined with an application under Chapter 10, Section 10−202 of the *Institutional Rules* to reserve the use of a University room or space for the event. The executive vice president and provost will approve an application properly made under Subsection 13−1004(a) in consultation with the dean of students unless it must be disapproved under the criteria in Chapter 10, Section 10−203 of the *Institutional Rules*.

3. A registered staff organization that wishes to present a guest speaker will apply to the senior vice president and chief financial officer through a process prescribed by the senior vice president and chief financial officer, at least two weeks before the scheduled event or any planned advertising for the event, whichever is earlier. The application will be combined with an application under Chapter 10, Section 10−202 of the *Institutional Rules* to reserve the use of a University room or space for the event. The senior vice president and chief operating officer will approve an application properly made under Subsection 13−1004(a) in consultation with the dean of students unless it must be disapproved under the criteria in Chapter 10, Section 10−203 of the *Institutional Rules*.

### Sec. 13–1005. Obligations of Presenting Organization

A University person or registered student organization or registered faculty or staff organization that presents a guest speaker in a University building or facility must make clear that:

a. the organization, and not the University, invited the speaker;

b. the views expressed by the speaker are his or her own and do not necessarily represent the views of the University, The University of Texas System, or any System institution; and

c. members of the general public are not invited to attend the guest speaker's presentation with the exception of presentations put on by academic or administrative units.

## Subchapter 13–1100. Responding to Speech, Expression, and Assembly

### Sec. 13–1101. General Rule on Responding

Persons and organizations may respond to the speech, expression, or assembly of others, subject to all the rules in this Chapter.

### Sec. 13–1102. Applications of Section

a. Responders may not damage or deface signs or exhibits, disrupt public assemblies, block the view of participants, or prevent speakers from being heard.

b. Means of response that are permitted in many locations and without advance permission or reservation, such as signs, distribution of literature, and public assembly without amplified sound, may be used immediately and in any location authorized in this Chapter.

c. Means of response that require advance permission or reservation, such as temporary banners, A-frames exhibits, general exhibits, and amplified sound, may be used as soon as the needed permission or reservation may be arranged. Temporary banner space, temporary outdoor exhibit space, and some amplified sound areas may be unavailable on short notice because of earlier reservations, but the Dean of Students will, where feasible, expedite approval of available temporary banner spaces, available temporary outdoor exhibit spaces, and amplified sound areas where necessary to permit appropriate response to other speech, assembly, or expression.

d. Means of response that are confined to authorized locations, such as banners, exhibits, and amplified sound, may be used only in those locations. It is not possible to respond to amplified sound with amplified sound in the same location; similarly, if an exhibit or public assembly is in a location where amplified sound is not permitted, it is not possible to respond with amplified sound in that location. In either case, it is possible to respond with amplified sound in another location and to use signs or distribution of literature to advertise the response at the other location.

## Subchapter 13–1200. Enforcement and Appeals

### Sec. 13–1201. Police Protection

a. It is the responsibility of the University to protect the safety of all persons on campus and to provide police protection for speakers, public assemblies, persons staffing or viewing exhibits, and other events. The normal patrolling of officers during regular duty areas in the area of such events will be at the cost of the University. When the magnitude, timing, or nature of an event in a University building, University facility, or other area of the University's limited public forum that requires overtime hours from police officers (including contract hours for officers hired from other departments or private security agencies), the University will, to the extent specified in Subsection 13−1201(b) and Subsection 13−1201(c), charge the cost of overtime or contract officers to the person or organization sponsoring the event or exhibit that requires overtime police protection. The purpose of Subsection 13−1201(b) and Subsection 13−1201(c) is to charge for police overtime where reasonably possible, but not to charge for police overtime made necessary by the content of speech at the event or by the controversy associated with any event.

b. University persons or organizations planning such events should budget for the cost of police protection. A reasonable and nondiscriminatory fee for overtime police work will be charged to the registered student, sponsored student, faculty, or staff organization for events in a University building, University facility, or other area of the University's limited public forum that require overtime police protection, and
    1. charge a price for admission; or
    2. have a paid speaker, band, or other off-campus person or organization for services at the event.

c. The University will have the sole power to decide, after reasonable consultation with the person or organization planning the event, whether and to what extent overtime police protection is required. No fee will be charged for officers assigned because of political, religious, philosophical, ideological, or academic controversy anticipated or actually experienced at the event. All fees will be based on the number of officers required for an uncontroversial event of the same size and kind, in the same place and at the same time of day, handling the same amount of cash.

d. Nothing in this Section applies to any interdepartmental charge or transfer among units or accounts funded by the University.

**Sec. 13–1202. Response to Violations**

a. Students wishing to make a grievance regarding a violation of Texas Education Code § 51.9315 may report it via the University compliance and ethics hotline by emailing compliance@austin.utexas.edu.

b. A student who violates a prohibition in this Chapter may be disciplined under the procedures in Chapter 11 of the *Institutional Rules*. A registered student or sponsored student organization that violates a prohibition in this Chapter may be disciplined under the procedures in Chapter 6 of the *Institutional Rules*.

c. A faculty member who violates a prohibition in this Chapter may be disciplined under applicable procedures provided by other rules. If no such procedures exist, violations by faculty members will be referred to the Office of the Executive Vice President and Provost.

d. A staff member who violates a prohibition in this Chapter may be disciplined under applicable procedures provided by other rules. If no such procedures exist, violations by staff members will be referred to Human Resource Services.

e. Authorized University personnel may prevent imminently threatened violations, or end ongoing violations, of a prohibition in this Chapter, by explanation and persuasion, by reasonable physical intervention, by arrest of violators, or by any other lawful measures. Alternatively or additionally, they may initiate disciplinary proceedings under Subsection 13–1202(a), Subsection 13–1202(b), or Subsection 13–1202(c). Discretion regarding the means and necessity of enforcement will be vested in the chief of police, or in University personnel designated by the president, as appropriate, but such discretion will be exercised without regard to the viewpoint of any speaker.

f. University persons and University organizations on the campus will comply with instructions from University administrators and law enforcement officials at the scene. A University person or University organization that complies with an on-the-scene order limiting speech, expression, or assembly may test the propriety of that order in an appeal under Section 13–1203.

g. Off-campus person(s) or organization(s) on the campus who violate a prohibition in this Chapter may be subject to criminal trespass charges, arrest, or other lawful measures.

**Sec. 13–1203. Appeals**

a. A person or organization that is denied permission for an activity requiring advance permission under this Chapter may appeal the denial of permission.

b. A University person or organization that complies with an on-the-scene order limiting speech, expression, or assembly may, on or before the fifth business day after complying with the order, file an appeal to determine the propriety of the order limiting the speech, expression, or assembly. The question on appeal will be whether, under the circumstances as they reasonably appeared at the time of the order, the appellant's speech, expression, or assembly should have been permitted to continue. Such an appeal may be useful to clarify the meaning of a rule, or to resolve a factual dispute that may recur if the appellant desires to resume the speech, expression, or assembly that was limited by the order.

c. An appeal authorized by this Section will be heard under the procedures set out in Subchapter 10–400 of the *Institutional Rules*.

Updated August 2023 to reflect policy changes effective August 21, 2023.

**EXHIBIT B**

*Letter from UT Austin Office of the Dean of Students to PSC*



**OFFICE OF THE DEAN OF STUDENTS**

*100 West Dean Keeton Street A5800 • Austin, TX 78712 • (512) 471-5017 • FAX (512) 471-7833*
*deanofstudents.utexas.edu • deanofstudents@austin.utexas.edu*

Jenna Homsi
Palestine Solidarity Committee
homsijenna@gmail.com

April 15, 2024

Dear Jenna,

On April 2, 2024, the Office of the Dean of Students received information regarding a possible violation of the following Institutional Rule(s) by the Palestinian Solidarity Committee registered student organization:

- 11-402(a)(18)(a) – Disruptive Conduct: "Engages in conduct that interferes with or disrupts any teaching, research, administrative, disciplinary, public service, learning, or other authorized activity."
- 11-402(a)(19)(a) – Failure to Comply: "Failure to comply with the directions of any university official(s) acting in the performance of their duties."

After reviewing the documentation and conducting a preliminary investigation, our office has determined that the organization will not be found in violation of the Institutional Rules at this time.

This message should serve as a notice of the potential risk of failing to comply with directives of university officials, and disrupting authorized activities. It is important to be knowledgeable of the university's expectations, as detailed in Institutional Rules Section 6-404 (Prohibited Conduct of Student Organizations), and to understand the risks associated with engaging in prohibited conduct. The responsibility to uphold the Institutional Rules at The University of Texas at Austin, is yours.

The Office of the Dean of Students staff is available to assist your organization in planning future events or demonstrations and can provide support to ensure your event can take place successfully without causing a disruption to authorized activities.

In accordance with Sec. 9-301(a) of the Institutional Rules, and per the university's record retention policy, all documents pertaining to this matter will be maintained in the official university file for the organization and will be relied upon should additional allegations of misconduct arise.

If you have any questions, please feel free to contact our office at 512-471-5017 or deanofstudents@austin.utexas.edu.

Sincerely,

Dr. Aaron Voyles, Executive Director
Student Involvement
Office of the Dean of Students

Melissa Jones-Wommack, Acting Executive Director
Student Conduct and Academic Integrity
Office of the Dean of Students

**EXHIBIT C**

*Austin Chronicle Interview with PSC Leader Ammer Qaddumi*

8/19/24, 10:55 AM
Case 1:24-cv-00523-RP Document 31-4 Filed 08/19/24 Page 46 of 85
UT Students Celebrate Israel in Block Party, While Others Call for Ceasefire - The Austin Chronicle



https://www.austinchronicle.com/daily/news/2024-04-03/ut-students-celebrate-israel-in-block-party-while-others-call-for-ceasefire/

# UT Students Celebrate Israel in Block Party, While Others Call for Ceasefire

BY NAINA SRIVASTAVA, APRIL 3, 2024, 5:05PM, NEWSDESK

Hundreds of students filled UT's Gregory Gym Plaza Tuesday afternoon to celebrate Israeli culture and innovation in the largest pro-Israel event on a college campus in North America. Down the street, others wore keffiyehs, held handheld signs spelling "Ceasefire now!" and chanted in protest of the event.

Tuesday marked Texas Hillel's 24th annual Israel Block Party, an event that aims to educate students through celebration of Israeli culture, according to the organization's website. The event was a sort of pop-up, with booths serving food, as well as a display: dozens of chairs on Speedway held photos of Hamas' hostages still in Gaza. The Palestine Solidarity Committee, which advocates for Palestinian liberation, held a protest at the same time in opposition to the event. In a post calling students to join the protest, the PSC wrote: "nothing to celebrate about genocide."

Stephanie Max, rabbi and Hillel executive director, said the Texas Hillel's mission is to empower Jewish students to make an enduring commitment to Jewish life and learning. She said the Block Party is just a piece of this goal.

"The word that people pay least attention to is empowerment and to me that's actually the most crucial," Max said. "Not just with this event, but what Hillel is here to do overall, is to empower students to take part in Jewish community and to own their Jewish identity in whatever way is meaningful for them."

PSC member and student Ammer Qaddumi said the PSC organizes a protest each year in response to the Block Party. But the protest is more pertinent than ever this year because of the rising Palestinian death toll, he said.

"Our hope is that while we're here protesting, anyone who sees the Israel Block Party will also see us and understand that what's happening there cannot totally be sound because all these people out here saying otherwise," Qaddumi said.

The Block Party and protest come shortly after Gov. Greg Abbott's executive order, issued last week, which calls on public universities to review and update free speech policies, and punish those who violate them. Abbott said the order was prompted by a rise in antisemitism on college campuses following Hamas' Oct. 7 attack and specifically named the PSC as a violator.

Max said she appreciates Abbott's efforts to draw attention to antisemitism. "I also have full confidence in the university to continue the excellent work it's done at combating antisemitism," Max said.

UT student Hansa Saif, who has attended the Israel Block Party protest for multiple years now, said more people are aware and educated on the ongoing issues this year, and seeing people come out to show their support is helpful.

Qaddumi said the PSC has been more "diligent and vigilant" in following the university's policies following the executive order.

"[UT] understands that we want to demonstrate and, we're thankful that rather than serve as a hindrance, they actually have served to streamline that process," Qaddumi said.

To comply with university policies, protesters only chanted during passing periods and avoided holding signs with sticks. Many of the chants were directed at Abbott and UT President Jay Hartzell. Meanwhile, Hillel set up a tent in the plaza.

UT student Etai Geller, who helped organize the Block Party for the past few years, said he's glad both groups are able to voice their opinions and thankful for a separation because it gives other students both perspectives. The groups did not have any major confrontations.

"At the end of the day, we just don't want violence, especially at this event," Geller said. "Yes, there's violence in the Middle East but we don't want to correlate that to UT. We don't want anyone to get arrested."

*Copyright © 2024 Austin Chronicle Corporation. All rights reserved.*

**EXHIBIT D**

*PSC Disruption of December 6, 2023 Speaking Event Featuring Bari Weiss*

This exhibit constitutes a video recording, a copy of which has been delivered to the Court.

**EXHIBIT E**

*KXAN Story Quoting PSC Leader Ammer Qaddumi regarding Disruption of Speaking Event*

89°

SIGN UP    **LIVE**

**BREAKING NEWS**
Vice President Harris has chosen Minnesota Gov. Tim Walz to be her running mate

Ad removed. Details



AUSTIN

## UT Austin says pro-Palestinian protesters 'crossed the line,' launches investigation

by: Iala Washington
Posted: Dec 13, 2023 / 11:12 AM CST
Updated: Dec 14, 2023 / 11:03 AM CST

SHARE    ✉

AUSTIN (KXAN) — There's an active investigation at The University of Texas at Austin looking into protesters who "crossed the line," according to a statement UT posted on X Wednesday morning.

> *Protesters crossed the line of acceptable behavior and violated University rules multiple times last week. We will not tolerate disruptions to the teaching and research activities of our students, faculty, and staff; our campus; or events. We are investigating and will punish those found to violate our rules, policies, or the law. Actions taken toward a University leader on Friday stem from intentionally false narratives and a coordinated disinformation campaign. We will protect speech, but we will not tolerate harassment, disruption, and dishonesty.*
>
> - **UNIVERSITY OF TEXAS AT AUSTIN**

### A staged walkout and protests

According to UT student organization Palestinian Solidarity Committee, on Wednesday, Dec. 6, a variety of students staged a walkout from an auditorium at the start of a speaker's presentation.

The students said they felt the university inviting the speaker to campus was tone-deaf as the Israel-Hamas war intensified. They added they felt the speaker wasn't supportive of Palestinians.

Case 1:24-cv-00523-RP Document 31-4 Filed 08/19/24 Page 50 of 85



Pro-Palestinian students stage a walkout during speaker presentation.

"We stood up and started chanting and police escorted us out," Ammer Qaddumi with the Palestinian Solidarity Committee said. "We left without incident."

On Friday, Dec 8, a small group of students entered a private office on campus to speak to a university official about Palestinian students' concerns on campus, according to Qaddumi.

ADVERTISING



Later that day, there was a protest involving many organizations. The students spoke out about two UT teaching assistants who lost their positions after putting out mental health resources for Palestinian, Arab and Muslim students about Palestine toward the beginning of the Israel-Hamas war.

ADVERTISEMENT

**Two UT teaching assistants lose their positions after message about Palestine ›**

The teaching assistants who were let go from their positions provided a statement regarding the latest incidents. One of the former TAs said in part:

READ NEXT >

**Hays County Sheriff's Office investigating 'suspicious death' in Buda**

READ NEXT >



Next story in 5                                              Cancel

- PARHAM DAGHIGHI, FORMER TEACHING ASSISTANT



*Pro-Palestinian students protest removal of teaching assistants (Photo Courtesy: Illiana Figueroa)*

1 / 6

### UT policies and student code of conduct

UT said students coerced the attention of a crowd. An official described this as causing such a disruption the audience had no choice but to give its attention. UT told KXAN students also wore masks to conceal their identity, protested inside, entered a private office space and prevented an official from exiting that space.

"If a speaker tries to force someone to listen to them, against their will… that's a violation of The University of Texas' institutional rules of student conduct," Attorney Scott Hendler said.

UT has rules for Student Conduct and Academic Integrity and Speech, Expression, and Assembly detailed on its website, outlining what students must follow on campus.

ADVERTISEMENT

"Chapter 13, addresses certain speech that's permitted and not permitted," Hendler said. "And the university has decided to also recognize a listener's right to not hear speech… which is kind of a new twist on free speech. I haven't heard about this elsewhere [in the country]."

According to a spokesperson, the code of conduct was updated in 2019.

Hendler said there's a grey area when it comes to what is considered forcing someone to listen to what you're saying. He said he expects this situation with UT students could end up in court.

### Palestinian students feeling unsupported by UT Austin

Since the Israel-Hamas war started, UT has put out two statements about the impact on students on Oct. 13 and Oct. 17.

CONTENT CONTINUES BELOW SURVEY

**WHAT DO YOU THINK?**

Loading survey...

**READ NEXT >**

**Hays County Sheriff's Office investigating 'suspicious death' in Buda**



**READ NEXT >**

Next story in 5

"[They] just walked onto campus, threatened and harassed students and walked away completely scot-free," Adam with the Palestinian Solidarity Committee said. "Yet, they are very quick to condemn their own students. It's very worth taking note of that… not once has the university agreed to sit down and speak to Palestinian organizers to speak to Palestinian students to address the multiple instances of hate and violence that have occurred on their campus.

### Tensions remain high heading into next semester

"We strongly encourage the university to open like a public forum to this at the end of the day," Adam said.

Though the students did violate UT's policies, they said they wouldn't have done anything differently.

ADVERTISEMENT

"There's nothing that we did wrong by protesting the university and their actions," Adam said. "Had the university just spoken to us and addressed our concerns over the course of an entire semester… there would be no need to protest."

Copyright 2024 Nexstar Media Inc. All rights reserved. This material may not be published, broadcast, rewritten, or redistributed.

SPONSORED CONTENT

Privacy Policy

**#1 Rated Photo Books**
Mixbook

**Family Photo Albums**
Mixbook
Shop Now

**Johns Hopkins MPH Holders Save Lives Millions at a Time**
Johns Hopkins Bloomberg School of Public Health
Learn More

**Pet Photo Books**
Mixbook
Shop Now

**25% intraday margin rates on select Crude, Heating Oil, and Gasoline futures contracts**
TradeStation
Learn More

**Earn an MPH Online On Your Time**
Johns Hopkins Bloomberg School of Public Health
Learn More

**This Free Platform is Rated #1 for Futures Trading**
NinjaTrader
Learn More

**THIS 5 Min Quiz Tells You What Your Body Actually Needs To Lose Weight**
Noom
Learn More

**Transform Your Trading**
TradeStation
Learn More

This Free Platform is Built for Futures Trading

READ NEXT >

**Hays County Sheriff's Office investigating 'suspicious death' in Buda**

READ NEXT >

Next story in 5

8/6/24, 9:54 AM
Case 1:24-cv-00523-RP Document 31-4 Filed 08/19/24 Page 53 of 85
UT Austin says pro-Palestinian protesters 'crossed the line,' launches investigation | KXAN Austin

BEST**R**VIEWS



**When you see a yellow ribbon on a dog's collar, this …**

TRAINING / 11 Hours Ago

Just like humans, dogs have different personalities. Here's how to tell what a yellow ribbon communicates about a dog.



**How turmeric water fights inflammation**

SUPPLEMENTS / 3 Days Ago

Many people use turmeric for its anti-inflammatory properties. Here's how you can use it in water to achieve these effects.

READ NEXT >

**Hays County Sheriff's Office investigating 'suspicious death' in Buda**



READ NEXT >

Next story in 5



**Summer lawn maintenance to keep your grass healthy …**

TOOLS  /  4 Days Ago

Hot, dry weather can be tough on a lawn. Luckily, you can maintain a healthy, green lawn no matter how hot the weather gets.

View All BestReviews

**TOP STORIES**



HCSO investigating 'suspicious death' Monday in Buda

Texas Ranger reinstated after Uvalde shooting suspension

Thomas, Alfred UT runners going for gold

SpaceX warns Valley of 'sonic booms' ahead of next …

Council lists amendments as Austin nears budget vote

READ NEXT >

**Hays County Sheriff's Office investigating 'suspicious death' in Buda**



READ NEXT >

Next story in 5

8/6/24, 9:54 AM
Case 1:24-cv-00523-RP   Document 31-4   Filed 08/19/24   Page 55 of 85
UT Austin says pro-Palestinian protesters 'crossed the line,' launches investigation | KXAN Austin

**MORE STORIES**

 The Latest: Debby blamed for multiple deaths in Florida, …

Bangladeshi PM Sheikh Hasina resigns as widening …

Justice Clarence Thomas took undisclosed 2010 trip …

 The Latest: Harris, facing a crucial week, closes …

TikTok agrees to withdraw rewards feature after EU …

Venezuela's top prosecutor announces criminal probe …

Nobel Prize-winning physicist Tsung-Dao Lee dies …

 Families whose loved ones were left rotting in Colorado …

More Stories

**AUSTIN-TRAVIS COUNTY**



**Thomas, Alfred UT runners going for gold**

France 2024                                        3 hours ago

▶ **Council lists amendments as Austin nears budget vote**
Austin • 5 mins ago

● **TX athletes claim more Olympic medals than most countries**
Texas • 3 hours ago

▶ **Allman plans to 'go all out' on BBQ after gold**
France 2024 • 2 hours ago

▶ **MAP: What are the water restrictions in your city?**
Local • 5 hours ago

▶ **AFD: Why 'single stairway' code proposal won't work**
Austin • 2 hours ago

● **Ego's may close on South Congress**
Austin • 5 hours ago

▶ **When & where are TX tornadoes most common?**
Weather Blog • 5 hours ago

▶ **MAP: Safe mobility upgrades made to these campuses**
Austin • 2 hours ago

▶ **Horns Report: UT No. 4 in coaches poll**
Horns Report • 5 hours ago

▶ **TX tries to remove judge in foster care case**
Texas • 3 hours ago

▶ **Austin ISD CFO arrested on insurance fraud charge**

READ NEXT >

**Hays County Sheriff's Office investigating 'suspicious death' in Buda**



READ NEXT >

Next story in 5

- **Austin resident wins $29M Lotto Texas jackpot**
  Austin • 3 hours ago
- **How many times has Austin hit 100° in history?**
  Weather Blog • 12 hours ago
- **Temps, rain, storms: Explore 2024 weather data**
  Austin • 12 hours ago
- **Tropical Storm Debby a slow-moving flood threat**
  Weather Blog • 5 hours ago

KXAN Austin Video

| Buda suspicious death briefing by Hays Co.... | New Mexico governor launches campaign to... | Austin emergency personnel push back... | Safe mobility upgrades made to these Austin... | Concrete pump truck driver appears in court... | Appeals court to hear foster care case, as Te: |
| 23 mins ago | 3 hours ago | 3 hours ago | 3 hours ago | 3 hours ago | 31 |

More Videos

SUBSCRIBE NOW

# KXAN Daily Forecast Newsletter

| Enter Your Email |
| SIGN UP NOW > |

READ NEXT >

**Hays County Sheriff's Office investigating 'suspicious death' in Buda**

READ NEXT >

Next story in 5



SUBSCRIBE NOW

**More Than the Score Sports Newsletter**

Enter Your Email

SIGN UP NOW  ❯



Send your story tips to our news team

**AUSTIN WEATHER**

| | | |
|---|---|---|
| Current | Tonight | Tomorrow |
| **89°** | **76°** | **100°** |
| Clear | **Mostly Clear** Precip: 0% | **Mostly Sunny** Precip: 0% |

**TRENDING STORIES**

1  HCSO investigating 'suspicious death' Monday in Buda

2  Austin ISD CFO arrested on insurance fraud charge

3  Austin resident wins $29M Lotto Texas jackpot

READ NEXT >

Hays County Sheriff's Office investigating 'suspicious death' in Buda



READ NEXT >

Next story in 5

**Wayfair's Black Friday in July has the lowest prices …**
Holiday • 1 week ago

**Best deals on back-to-school essentials for K-12**
Holiday • 2 weeks ago

**Never too early: The Christmas tree decor trends …**
Holiday • 2 weeks ago

**Score huge tech deals during Best Buy's Great Summer …**
Holiday • 2 weeks ago

**Sam's Club's new giant skeleton rivals Home Depot's …**
Holiday • 2 weeks ago

> View All BestReviews Picks

**DON'T MISS**



When's the first day of class in local school districts?

| Sign up for KXAN's Olympics push alerts, newsletter

| Take our survey about AI and newsrooms

| Yes, vehicles need inspection for renewal until 2025

| How many times has Austin hit 100° in history?

Ad removed. Details

READ NEXT >

Hays County Sheriff's Office investigating 'suspicious death' in Buda

READ NEXT >

Next story in 5

8/6/24, 9:54 AM
Case 1:24-cv-00523-RP   Document 31-4   Filed 08/19/24   Page 59 of 85
UT Austin says pro-Palestinian protesters crossed the line, launches investigation | KXAN Austin



| News | Weather |
| --- | --- |
| Traffic | Investigations |
| Report It | Sports |
| Studio 512 | Contests |
| About Us | Contact Us |

| About Our Ads | KXAN: FCC Public File |
| KXAN: Children's TV Programming | KNVA: FCC Public File |
| KNVA: Children's TV Programming | KBVO: FCC Public File |
| KBVO: Children's TV Programming | EEO Report |

**Get News App**

**Get Weather App**

**Stay Connected**

| Privacy Policy  06/27/2024 | Terms Of Use |
| --- | --- |
| FCC Applications | Public File Assistance Contact |
| Subscribe To KXAN Push Notifications | The Hill |
| NewsNation | BestReviews |
| Content Licensing | Nexstar Digital |
| Journalistic Integrity | Do Not Sell or Share My Personal Information |

© 1998 - 2024 Nexstar Media Inc. | All Rights Reserved.

**READ NEXT >**

**Hays County Sheriff's Office investigating 'suspicious death' in Buda**



**READ NEXT >**

Next story in 5

**EXHIBIT F**

*NSJP Day of Resistance Toolkit*

# DAY OF RESISTANCE TOOLKIT

## INTRODUCTION

National Students for Justice in Palestine is calling for a **national day of resistance** on college campuses across occupied Turtle Island and internationally this **Thursday, October 12th, 2023**

On the 50th anniversary of the 1973 war, the resistance in Gaza launched a surprise operation against the Zionist enemy which disrupted the very foundation of Zionist settler society. On the morning of October 8th, the Palestinian resistance stormed the illegitimate border fence, gaining control of the Gaza checkpoint at Erez, and re-entering 1948 Palestine. Referred to as Operation *Towfan Al-Aqsa* (Al-Aqsa Flood), the resistance has taken occupation soldiers hostage, fired thousands of rockets, taken over Israeli military vehicles, and gained control over illegal Israeli settlements. In the West Bank, the Palestinian resistance has called for collective action by the Palestinian masses amidst attempts by the Zionist entity to lock-up the West Bank. The Palestinian resistance has called for mass protests in every Palestinian city, and Palestinian workers have called for a general strike. In Gaza, Israel has launched an onslaught of airstrikes. As of Sunday, Oct 8th at 12pm ET, Israel has murdered 320 Palestinians and left over 2200 others injured. Despite this, our people choose resistance over negotiated cages on our homeland. Fearlessly, our people struggle for complete liberation and return.

Today, we witness a historic win for the Palestinian resistance: across land, air, and sea, our people have broken down the artificial barriers of the Zionist entity, taking with it the facade of an impenetrable settler colony and reminding each of us that total return and liberation to Palestine is near. As the Palestinian student movement, we have an unshakable responsibility to join the call for mass mobilization.

National liberation is near— glory to our resistance, to our martyrs, and to our steadfast people.

***JOIN THE DAY OF RESISTANCE NATIONAL CALL-IN MEETING***
- On Monday, October 9th @ 5:00 PT/ 7:00 CT/ 8:00 ET, we will be hosting a national call-in meeting to meet with chapters, talk through the political significance of this moment, talk through how-to's for the protest day of action and troubleshoot any support needed. Please RSVP here: https://forms.gle/AbK7RmidTRPYVcAfA

***CALL TO ACTION: NATIONAL DAY OF RESISTANCE***
- On Thursday, October 12th, National Students for Justice in Palestine is calling for a national day of resistance from the student movement for Palestine liberation on college campuses across occupied Turtle Island (so-called US and Canada) and beyond. We must continue to resist directly through dismantling Zionism, and wielding the political power that our organizations hold on our campuses and in our communities. We are asking chapters to host demonstrations on campus/in their

community in support of our resistance in Palestine and the national liberation struggle — one which they play a critical role in actualizing.

- Please fill out this brief form to let us know what events you will be hosting! These will be posted and publicized on our social media – filling out this form will help us better coordinate and unify nationally as a student movement https://forms.gle/H7uqKuVL22AAtzUZA
- Please upload any pictures or videos that you are comfortable with us sharing here! https://drive.google.com/drive/folders/1r4_5Ugt9eocMgyqm2J7FXlxRGTy0vXBJ

**We will also be having a "how to organize a protest," including roles, security, media training, and more, on the National Call-in meeting on Monday, Oct 9th at 8pm ET. The presentation + resources shared will be added to the tool-kit following the presentation.**
If you need additional help organizing or planning your protest, please reach out to National Students for Justice in Palestine. (RSVP link above).

If a protest is not possible, engagement across the movement — whether it be a sit-in, disruption, or educational event — is highly encouraged!
Other ways to participate
1. Table/Flyer on campus
   a. Challenging Zionist hegemony and popularizing our resistance is a critical part of advancing our national movement! Print flyers to put up around your campus. We encourage you to use  any of the graphics linked in this toolkit, Here is a Tabling 101, and for examples of tabling materials, click here and here. For some tips on how to table and how to respond to common Zionist arguments, click here
2. Teach-ins
   a. Make sure people on your campus know what's happening in Palestine, and are armed with a framework which advances national liberation– host a teach-in on your campus! We will include a teach-in during the National Call-in meeting – please attend for inspiration. We will also be linking the presentation in the toolkit following the call-in meeting.
3. Sign onto statement from Bears for Palestine
   a. We welcome both individual and organizational endorsements onto this statement by Berkeley Bears for Palestine in unwavering support of the Palestinian resistance
   b. 📄 Towfan Al-Aqsa Statement  – Bears for Palestine
4. Write a local statement of solidarity
   a. Statements of support show a cohesive and united movement. Work with other organizations on your campus to put out a joint statement expressing your campus' support for Palestine.
5. Share within your network/region:
   a. If you're near other SJPs, let them know what you're planning! If you're in close geographic proximity to one another, you may be able to plan a joint action.
6. Help spread the word by sharing widely on your campuses and in your communities
   a. Contact student organizations across movements to share your action on social media. Engage your community, and let everyone know that the student movement on occupied Turtle Island stands firmly in support of Palestinian resistance.

## MESSAGING & FRAMING

For over 75 years, our Palestinian people, through steadfast resistance, have waged a prolonged war for liberation and return to our colonized homeland. What we are witnessing now is a heightened stage of the Palestinian struggle–through tearing down colonial infrastructure and liberating our colonized land from illegal settlements and military checkpoints, our people are actualizing revolution. Palestine will be liberated from the river to the sea, and our resistance, through their bravery and love for land, continue to bring dignity and honor to the Palestinian people. As the diaspora-based student movement for Palestine liberation, our responsibility is to not only support, but struggle alongside our people back home. The forces of Zionism engage in media campaigns which attack our people and resistance from all sides– it is our responsibility, therefore, to break through their hegemonic narratives of "war" and "unprovoked aggression," and instead ground our campuses and communities in a narrative which centers the legitimacy of resistance and the necessity of complete liberation. Please find below a breakdown of framework and important messaging which help contextualize, frame, and above all normalize and support our fearless resistance.

- **When people are occupied, resistance is justified — normalize the resistance.**
  - ◆ *The Palestinian people have the right to resist colonization and oppression.* The Palestinian people have the right to return to their homeland and free themselves from the complete land, air, and sea siege they've been subjected to; this requires resistance, and it is both morally just and politically necessary. These events are the natural and justified response to decades of oppression and dehumanization.
  - ◆ The fight for Palestinian liberation is a necessary struggle against an occupying and colonial state; not a "war" or "conflict." It is a **struggle for national liberation.**
  - ◆ In the eyes of the West, there is no "right" way for Palestinians to fight for their freedom. Every tactic is met with repression.
  - ◆ The occupation, the day to day and the existence of Israel is not peaceful; there is no 'maintaining the peace' with a violent settler state.
  - ◆ Settlers are not "civilians" in the sense of international law, because they are military assets used to ensure continued control over stolen Palestinian land.
  - ◆ Responsibility for every single death falls solely on the zionist entity. They do not care one bit for the Geneva Conventions but demand Palestinians follow them to the letter.
- **Gaza as the cradle of resistance**
  - ◆ *Gaza broke out of prison.* Resistance fighters captured one of the bulldozers used to destroy Palestinian homes, and used it to breach the illegitimate border fence back into '48 Palestine.
  - ◆ Gaza is being subject to collective punishment because the occupation knows liberation is inevitable.

- ◆ Zionists are telling Gazans to leave while also denying them freedom of movement—this is a call for genocide of Palestinians.
  - • "I say to the residents of Gaza: Leave now because we will operate forcefully everywhere."--Netanyahu
- ◆ This is not "unprovoked". Apartheid, ethnic cleansing, indiscriminate bombing, arbitrary detention, destruction of infrastructure, 75 years of settler colonialism are provocations.
- **Liberation is material**
  - ◆ *Liberation is not an abstract concept.* It is not a moment circumscribed to a revolutionary past as it is often characterized. Rather, liberating colonized land is a real process that requires confrontation by any means necessary. In essence, decolonization is a call to action, a commitment to the restoration of Indigenous sovereignty. It calls upon us to engage in meaningful actions that go beyond symbolism and rhetoric. Resistance comes in all forms— armed struggle, general strikes, and popular demonstrations. All of it is legitimate, and all of it is necessary.
  - ◆ "You don't get freedom peacefully. Freedom is never safeguarded peacefully. Anyone who is depriving you of freedom isn't deserving of a peaceful approach by the ones who are deprived of their freedom."-Malcolm X
- **israel is fragile**
  - ◆ This action of resistance shatters the illusion of Israel as an impenetrable, indestructible entity. The zionist entity is fragile, and Palestinian resistance is alive. The iOF are still in disarray and the resistance fighters are still launching new attacks into 48.
  - ◆ The zionist entity built a massive technological barrier to imprison Gaza that the resistance neutralized in hours. They massively underestimated the ingenuity of the resistance, and will continue to do so.
  - ◆ Settlers are already fleeing the land, their 'dedication' to the settler colony is easily broken. The dedication of Palestinians for their national liberation is unshakable.
  - ◆ *From Rhodesia to South Africa to Algeria, no settler colony can hold out forever.*
- **Unity Intifada**
  - ◆ The revolution is being waged across historic Palestine— not just cross-factional, but unifying our people in the name of resistance
  - ◆ All Palestinian factions in Gaza appear to be participating under unified command.
  - ◆ *This is the first time since **1949** that a large-scale battle has been fought within '48 Palestine.*
- **We as Palestinian students in exile are PART of this movement, not in solidarity with this movement.**
  - ◆ *This is a moment of mobilization for all Palestinians.* We must act as part of this movement. All of our efforts continue the work and resistance of Palestinians on the ground.

# HASHTAGS

- #studentdayofresistance
- #operationalaqsaflood
- #nationalliberationisnear
- #dayofresistance

## TEMPLATE GRAPHICS

*__CANVA GRAPHIC TEMPLATE LINK FOR PROTESTS__ [LINK WITH BELOW GRAPHICS]*

*TABLING MATERIALS AND OTHER GRAPHICS COMING SOON*





**EXHIBIT G**

*NSJP Announces the Popular University for Gaza*



About

Get Involved

Contact Us

Media

# NATIONAL SJP ANNOUNCES THE POPULAR UNIVERSITY FOR GAZA

Students for Justice in Palestine (SJP) chapters across North America have risen in defense of the Palestinian people, establishing autonomous zones on several university campuses to assert their strength and demands in the face of severe university repression. Today, April 20th, 2024, National Students for Justice in Palestine announces the Popular University for Gaza, a coordinated pressure campaign against university administrations and trustees to immediately divest from the israeli state. After hundreds of student government resolutions, meetings with administrators, and protests on campus, and following months of increased targeting, harassment, and arrests, the students are ramping up the pressure. We will not back down; we will reclaim our universities until administrators comply with our demands.

Columbia University President Shafik's cowardly testimony to Congress heralds an unfortunate shift: university administrators will surrender to the pro-israel lobby and allied right-wing, selling out the Student Movement to maintain their legitimacy in the eyes of the state and the public at large. Recent escalations have forced administrators into a fragile position: catering to the corporate model while maintaining the educational institution's legitimacy and public image is unsustainable in the face of mass student action. The Popular University for Gaza will make the administration's position completely untenable.

We understand that universities no longer operate as places of learning but instead as for-profit entities, managing billions of dollars of endowment funds to increase the university's wealth. These vast corporations are controlled by boards of trustees who not only disregard the lives of the Palestinian people and the will of their students but actively threaten them. We assert our willingness and *undeniable ability* to dismantle the system itself, forming a mass of students, faculty, and staff who choose their dedication to Palestinian liberation over their image, reputation, and future careers.

Palestine has made the battle lines on campus clearer than ever. In the footsteps of our comrades at Rutgers-New Brunswick SJP, Tufts SJP, Columbia SJP, Yalies4Palestine, and many more, SJP chapters across the nation will seize the university and force the administration to divest *for the people of Gaza!* We will not stop until our universities **disclose** all information related to their investment portfolios, **divest** from genocide and colonial complicity, and **defend** Gaza, Palestine, and all students, staff, and faculty who stand up to Zionist ideology at all levels of the university.

***Disclose, Divest, Defend Gaza! All power to the Student Movement!***

Steering Committee, National Students for Justice in Palestine

Copyright © 2011–2024 National Students for Justice in Palestine. All rights reserved.

**EXHIBIT H**

*April 23, 2024 Cancellation Letter to PSC*



**OFFICE OF THE DEAN OF STUDENTS**

*100 West Dean Keeton Street A5800 • Austin, TX 78712 • (512) 471-5017 • FAX (512) 471-7833*
*deanofstudents.utexas.edu • deanofstudents@austin.utexas.edu*

April 23, 2024

Jenna Homsi
Palestine Solidarity Committee
homsijenna@gmail.com

Re: Notice Cancelling Planned Event

Dear Jenna,

The University of Texas at Austin must first and foremost act to protect our educational mission, allowing the activities and operations that support our mission to proceed. At the same time, we are steadfast in our support of free speech. Our policies and rules help define the lines between these objectives and shape our response to planned protests.

The Palestine Solidarity Committee student organization's event "Popular University for Gaza," which is planned for tomorrow, has declared intent to violate our policies and rules, and disrupt our campus operations.[1] Such disruptions are never allowed and are especially damaging while our students prepare for the end of the semester and final exams. For these reasons, this event may not proceed as planned.

Simply put, The University of Texas at Austin will not allow this campus to be "taken" and protesters to derail our mission in ways that groups affiliated with your national organization have accomplished elsewhere.

**Please be advised that you are not permitted to hold your event on the University campus. Any attempt to do so will subject your organization and its attending members to discipline including suspension under the Institutional Rules. Individuals not affiliated with the University and attempting to attend this event will be directed to leave campus. Refusal to comply may result in arrest.**

---

[1] UT Austin registered student organization Palestine Solidarity Committee ("PSC") Instagram post of April 21, 2024 (emphasis added).

> WE ARE ALL SJP! Our universities have chosen profit and reputation over the lives of the people of Palestine and our will as students. The supposed power of our administrators is nothing compared to the strength of the united students, staff, and faculty committed to realizing justice and upholding Palestinian liberation on campus. *In the footsteps of our comrades at Rutgers-New Brunswick SJP, Tufts SJP, and Columbia SJP, we will take back our university* and force our administration to divest, for the people of Gaza!

UT Austin registered student organization PSC Instagram post of April 23, 2024 (encouraging people to wear face masks in violation of Chapter 13-105(a)(i) of the Institutional Rules).

> Reclaim our space on WED APR 24TH CLASS IS CANCELLED MEET AT GREG PLAZA MARCH TO OCCUPY THE LAWN BRING BLANKETS, FOOD, FACE MASKS, AND ENERGY

Our campus has a long history of peaceful student protests and free speech and expression. If you are interested in organizing an event that adheres to our University policies and rules, we are happy to connect you to a staff member that can answer your specific questions and assist you in understanding what conduct is and is not permitted on our campus. However, whether you reach out for such assistance or not, you are responsible for understanding the University's expectations for students and their organizations.  Failing to comply with this notice will subject you to student discipline. You, your organization, and its members will not receive an additional warning.

In accordance with Sec. 9-301(a) of the Institutional Rules, and per the University's record retention policy, all documents pertaining to this matter will be maintained in the official University file for the organization and will be relied upon should future allegations of misconduct arise.

If you have any questions, please feel free to contact our office at 512-471-5017 or deanofstudents@austin.utexas.edu.

Sincerely,

Dr. Aaron Voyles
Executive Director Student Involvement
Office of the Dean of Students

Melissa Jones-Wommack
Acting Executive Director
Student Conduct and Academic Integrity
Office of the Dean of Students

**EXHIBIT I**

*Cancellation Notice with Retrieval Information*



**OFFICE OF THE DEAN OF STUDENTS**

*100 West Dean Keeton Street A5800 • Austin, TX 78712 • (512) 471-5017 • FAX (512) 471-7833*
*deanofstudents.utexas.edu • deanofstudents@austin.utexas.edu*

April 24, 2024

Palestine Solidarity Committee (PSC)

Re: Notice Cancelling Planned Event

Dear PSC Authorized Representative,

The University of Texas at Austin must first and foremost act to protect our educational mission, allowing the activities and operations that support our mission to proceed. At the same time, we are steadfast in our support of free speech. Our policies and rules help define the lines between these objectives and shape our response to planned protests.

The Palestine Solidarity Committee student organization's event "Popular University for Gaza," which is planned for tomorrow, has declared intent to violate our policies and rules, and disrupt our campus operations.[1] Such disruptions are never allowed and are especially damaging while our students prepare for the end of the semester and final exams. For these reasons, this event may not proceed as planned.

Simply put, The University of Texas at Austin will not allow this campus to be "taken" and protesters to derail our mission in ways that groups affiliated with your national organization have accomplished elsewhere.

**Please be advised that you are not permitted to hold your event on the University campus. Any attempt to do so will subject your organization and its attending members to discipline including suspension under the Institutional Rules. Individuals not affiliated with the University and attempting to attend this event will be directed to leave campus. Refusal to comply may result in arrest.**

Our campus has a long history of peaceful student protests and free speech and expression. If

---

[1] UT Austin registered student organization Palestine Solidarity Committee ("PSC") Instagram post of April 21, 2024 (emphasis added).

WE ARE ALL SJP! Our universities have chosen profit and reputation over the lives of the people of Palestine and our will as students. The supposed power of our administrators is nothing compared to the strength of the united students, staff, and faculty committed to realizing justice and upholding Palestinian liberation on campus. *In the footsteps of our comrades at Rutgers-New Brunswick SJP, Tufts SJP, and Columbia SJP, we will take back our university* and force our administration to divest, for the people of Gaza!

UT Austin registered student organization PSC Instagram post of April 23, 2024 (encouraging people to wear face masks in violation of Chapter 13-105(a)(i) of the Institutional Rules).

Reclaim our space on WED APR 24TH CLASS IS CANCELLED MEET AT GREG PLAZA MARCH TO OCCUPY THE LAWN BRING BLANKETS, FOOD, FACE MASKS, AND ENERGY

you are interested in organizing an event that adheres to our University policies and rules, we are happy to connect you to a staff member that can answer your specific questions and assist you in understanding what conduct is and is not permitted on our campus. However, whether you reach out for such assistance or not, you are responsible for understanding the University's expectations for students and their organizations.  Failing to comply with this notice will subject you to student discipline. You, your organization, and its members will not receive an additional warning.

In accordance with Sec. 9-301(a) of the Institutional Rules, and per the University's record retention policy, all documents pertaining to this matter will be maintained in the official University file for the organization and will be relied upon should future allegations of misconduct arise.

If you have any questions, please feel free to contact our office at 512-471-5017 or deanofstudents@austin.utexas.edu.

Sincerely,


Dr. Aaron Voyles
Executive Director Student Involvement
Office of the Dean of Students

Melissa Jones-Wommack
Acting Executive Director
Student Conduct and Academic Integrity
Office of the Dean of Students

 SCGeneralEmailToStudent(Email)    ⌂ + 📱 Retrieved April 24, 2024 9:56 am from 75.31.16.231    Options    368.09kb    April 24, 2024 9:56 am



**OFFICE OF THE DEAN OF STUDENTS**

*100 West Dean Keeton Street A5800 • Austin, TX 78712 • (512) 471-5017 • FAX (512) 471-7833*
*deanofstudents.utexas.edu • deanofstudents@austin.utexas.edu*

April 24, 2024

Haya Saidi
Sent electronically to hayatexas@gmail.com

<b>PERSONAL AND CONFIDENTIAL</b>

Regarding Case Number: 2024124802

Dear Haya Saidi,

You are receiving this message in your role as an Authorized Representative of the Registered Student Organization Palestine Solidarity Committee. Please **review the attached memorandum** containing time sensitive information about the cancellation of the event planned by your organization.

**"Please be advised that you are not permitted to hold your event on the University campus. Any attempt to do so will subject your organization and its attending members to discipline including suspension under the Institutional Rules. Individuals not affiliated with the University and attempting to attend this event will be directed to leave campus. Refusal to comply may result in arrest."**

Sincerely,

Office of the Dean of Students



**OFFICE OF THE DEAN OF STUDENTS**

*100 West Dean Keeton Street A5800 • Austin, TX 78712 • (512) 471-5017 • FAX (512) 471-7833*
*deanofstudents.utexas.edu • deanofstudents@austin.utexas.edu*

April 24, 2024

Palestine Solidarity Committee (PSC)

Re: Notice Cancelling Planned Event

Dear PSC Authorized Representative,

The University of Texas at Austin must first and foremost act to protect our educational mission, allowing the activities and operations that support our mission to proceed. At the same time, we are steadfast in our support of free speech. Our policies and rules help define the lines between these objectives and shape our response to planned protests.

The Palestine Solidarity Committee student organization's event "Popular University for Gaza," which is planned for tomorrow, has declared intent to violate our policies and rules, and disrupt our campus operations.[1] Such disruptions are never allowed and are especially damaging while our students prepare for the end of the semester and final exams. For these reasons, this event may not proceed as planned.

Simply put, The University of Texas at Austin will not allow this campus to be "taken" and protesters to derail our mission in ways that groups affiliated with your national organization have accomplished elsewhere.

**Please be advised that you are not permitted to hold your event on the University campus. Any attempt to do so will subject your organization and its attending members to discipline including suspension under the Institutional Rules. Individuals not affiliated with the University and attempting to attend this event will be directed to leave campus. Refusal to comply may result in arrest.**

Our campus has a long history of peaceful student protests and free speech and expression. If

---

[1] UT Austin registered student organization Palestine Solidarity Committee ("PSC") Instagram post of April 21, 2024 (emphasis added).

WE ARE ALL SJP! Our universities have chosen profit and reputation over the lives of the people of Palestine and our will as students. The supposed power of our administrators is nothing compared to the strength of the united students, staff, and faculty committed to realizing justice and upholding Palestinian liberation on campus. *In the footsteps of our comrades at Rutgers-New Brunswick SJP, Tufts SJP, and Columbia SJP, we will take back our university* and force our administration to divest, for the people of Gaza!

UT Austin registered student organization PSC Instagram post of April 23, 2024 (encouraging people to wear face masks in violation of Chapter 13-105(a)(i) of the Institutional Rules).

Reclaim our space on WED APR 24TH CLASS IS CANCELLED MEET AT GREG PLAZA MARCH TO OCCUPY THE LAWN BRING BLANKETS, FOOD, FACE MASKS, AND ENERGY

you are interested in organizing an event that adheres to our University policies and rules, we are happy to connect you to a staff member that can answer your specific questions and assist you in understanding what conduct is and is not permitted on our campus. However, whether you reach out for such assistance or not, you are responsible for understanding the University's expectations for students and their organizations.  Failing to comply with this notice will subject you to student discipline. You, your organization, and its members will not receive an additional warning.

In accordance with Sec. 9-301(a) of the Institutional Rules, and per the University's record retention policy, all documents pertaining to this matter will be maintained in the official University file for the organization and will be relied upon should future allegations of misconduct arise.

If you have any questions, please feel free to contact our office at 512-471-5017 or deanofstudents@austin.utexas.edu.

Sincerely,

Dr. Aaron Voyles
Executive Director Student Involvement
Office of the Dean of Students

Melissa Jones-Wommack
Acting Executive Director
Student Conduct and Academic Integrity
Office of the Dean of Students



**OFFICE OF THE DEAN OF STUDENTS**

*100 West Dean Keeton Street A5800 • Austin, TX 78712 • (512) 471-5017 • FAX (512) 471-7833*
*deanofstudents.utexas.edu • deanofstudents@austin.utexas.edu*

April 24, 2024

Rawan Channaa
Sent electronically to rawan.channaa@utexas.edu

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2024124803

Dear Rawan Channaa,

You are receiving this message in your role as an Authorized Representative of the Registered Student Organization Palestine Solidarity Committee. Please **review the attached memorandum** containing time sensitive information about the cancellation of the event planned by your organization.

**"Please be advised that you are not permitted to hold your event on the University campus. Any attempt to do so will subject your organization and its attending members to discipline including suspension under the Institutional Rules. Individuals not affiliated with the University and attempting to attend this event will be directed to leave campus. Refusal to comply may result in arrest."**Sincerely,Office of the Dean of Students

Sincerely,

Office of the Dean of Students



**OFFICE OF THE DEAN OF STUDENTS**

*100 West Dean Keeton Street A5800 • Austin, TX 78712 • (512) 471-5017 • FAX (512) 471-7833*
*deanofstudents.utexas.edu • deanofstudents@austin.utexas.edu*

April 24, 2024

Palestine Solidarity Committee (PSC)

Re: Notice Cancelling Planned Event

Dear PSC Authorized Representative,

The University of Texas at Austin must first and foremost act to protect our educational mission, allowing the activities and operations that support our mission to proceed. At the same time, we are steadfast in our support of free speech. Our policies and rules help define the lines between these objectives and shape our response to planned protests.

The Palestine Solidarity Committee student organization's event "Popular University for Gaza," which is planned for tomorrow, has declared intent to violate our policies and rules, and disrupt our campus operations.[1] Such disruptions are never allowed and are especially damaging while our students prepare for the end of the semester and final exams. For these reasons, this event may not proceed as planned.

Simply put, The University of Texas at Austin will not allow this campus to be "taken" and protesters to derail our mission in ways that groups affiliated with your national organization have accomplished elsewhere.

**Please be advised that you are not permitted to hold your event on the University campus. Any attempt to do so will subject your organization and its attending members to discipline including suspension under the Institutional Rules. Individuals not affiliated with the University and attempting to attend this event will be directed to leave campus. Refusal to comply may result in arrest.**

Our campus has a long history of peaceful student protests and free speech and expression. If

---

[1] UT Austin registered student organization Palestine Solidarity Committee ("PSC") Instagram post of April 21, 2024 (emphasis added).

WE ARE ALL SJP! Our universities have chosen profit and reputation over the lives of the people of Palestine and our will as students. The supposed power of our administrators is nothing compared to the strength of the united students, staff, and faculty committed to realizing justice and upholding Palestinian liberation on campus. *In the footsteps of our comrades at Rutgers-New Brunswick SJP, Tufts SJP, and Columbia SJP, we will take back our university* and force our administration to divest, for the people of Gaza!

UT Austin registered student organization PSC Instagram post of April 23, 2024 (encouraging people to wear face masks in violation of Chapter 13-105(a)(i) of the Institutional Rules).

Reclaim our space on WED APR 24TH CLASS IS CANCELLED MEET AT GREG PLAZA MARCH TO OCCUPY THE LAWN BRING BLANKETS, FOOD, FACE MASKS, AND ENERGY

you are interested in organizing an event that adheres to our University policies and rules, we are happy to connect you to a staff member that can answer your specific questions and assist you in understanding what conduct is and is not permitted on our campus. However, whether you reach out for such assistance or not, you are responsible for understanding the University's expectations for students and their organizations.  Failing to comply with this notice will subject you to student discipline. You, your organization, and its members will not receive an additional warning.

In accordance with Sec. 9-301(a) of the Institutional Rules, and per the University's record retention policy, all documents pertaining to this matter will be maintained in the official University file for the organization and will be relied upon should future allegations of misconduct arise.

If you have any questions, please feel free to contact our office at 512-471-5017 or deanofstudents@austin.utexas.edu.

Sincerely,


Dr. Aaron Voyles
Executive Director Student Involvement
Office of the Dean of Students

Melissa Jones-Wommack
Acting Executive Director
Student Conduct and Academic Integrity
Office of the Dean of Students

SCGeneralEmailToStudent(Email)    ⌂ + 📱 Retrieved April 24, 2024 10:59 am from    Options    368.10kb    April 24, 2024 9:58
128.62.19.84    am



**OFFICE OF THE DEAN OF STUDENTS**

*100 West Dean Keeton Street A5800 • Austin, TX 78712 • (512) 471-5017 • FAX (512) 471-7833*
*deanofstudents.utexas.edu • deanofstudents@austin.utexas.edu*

April 24, 2024

Maher Naofal
Sent electronically to mahernaofal@gmail.com

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2024124804

Dear Maher Naofal,

You are receiving this message in your role as an Authorized Representative of the Registered Student Organization Palestine Solidarity Committee. Please **review the attached memorandum** containing time sensitive information about the cancellation of the event planned by your organization.

**"Please be advised that you are not permitted to hold your event on the University campus. Any attempt to do so will subject your organization and its attending members to discipline including suspension under the Institutional Rules. Individuals not affiliated with the University and attempting to attend this event will be directed to leave campus. Refusal to comply may result in arrest."**Sincerely,Office of the Dean of Students

Sincerely,

Office of the Dean of Students



**OFFICE OF THE DEAN OF STUDENTS**

*100 West Dean Keeton Street A5800 • Austin, TX 78712 • (512) 471-5017 • FAX (512) 471-7833*
*deanofstudents.utexas.edu • deanofstudents@austin.utexas.edu*

April 24, 2024

Palestine Solidarity Committee (PSC)

Re: Notice Cancelling Planned Event

Dear PSC Authorized Representative,

The University of Texas at Austin must first and foremost act to protect our educational mission, allowing the activities and operations that support our mission to proceed. At the same time, we are steadfast in our support of free speech. Our policies and rules help define the lines between these objectives and shape our response to planned protests.

The Palestine Solidarity Committee student organization's event "Popular University for Gaza," which is planned for tomorrow, has declared intent to violate our policies and rules, and disrupt our campus operations.[1] Such disruptions are never allowed and are especially damaging while our students prepare for the end of the semester and final exams. For these reasons, this event may not proceed as planned.

Simply put, The University of Texas at Austin will not allow this campus to be "taken" and protesters to derail our mission in ways that groups affiliated with your national organization have accomplished elsewhere.

**Please be advised that you are not permitted to hold your event on the University campus. Any attempt to do so will subject your organization and its attending members to discipline including suspension under the Institutional Rules. Individuals not affiliated with the University and attempting to attend this event will be directed to leave campus. Refusal to comply may result in arrest.**

Our campus has a long history of peaceful student protests and free speech and expression. If

---

[1] UT Austin registered student organization Palestine Solidarity Committee ("PSC") Instagram post of April 21, 2024 (emphasis added).

> WE ARE ALL SJP! Our universities have chosen profit and reputation over the lives of the people of Palestine and our will as students. The supposed power of our administrators is nothing compared to the strength of the united students, staff, and faculty committed to realizing justice and upholding Palestinian liberation on campus. *In the footsteps of our comrades at Rutgers-New Brunswick SJP, Tufts SJP, and Columbia SJP, we will take back our university* and force our administration to divest, for the people of Gaza!

UT Austin registered student organization PSC Instagram post of April 23, 2024 (encouraging people to wear face masks in violation of Chapter 13-105(a)(i) of the Institutional Rules).

> Reclaim our space on WED APR 24TH CLASS IS CANCELLED MEET AT GREG PLAZA MARCH TO OCCUPY THE LAWN BRING BLANKETS, FOOD, FACE MASKS, AND ENERGY

you are interested in organizing an event that adheres to our University policies and rules, we are happy to connect you to a staff member that can answer your specific questions and assist you in understanding what conduct is and is not permitted on our campus. However, whether you reach out for such assistance or not, you are responsible for understanding the University's expectations for students and their organizations.  Failing to comply with this notice will subject you to student discipline. You, your organization, and its members will not receive an additional warning.

In accordance with Sec. 9-301(a) of the Institutional Rules, and per the University's record retention policy, all documents pertaining to this matter will be maintained in the official University file for the organization and will be relied upon should future allegations of misconduct arise.

If you have any questions, please feel free to contact our office at 512-471-5017 or deanofstudents@austin.utexas.edu.

Sincerely,

Dr. Aaron Voyles
Executive Director Student Involvement
Office of the Dean of Students

Melissa Jones-Wommack
Acting Executive Director
Student Conduct and Academic Integrity
Office of the Dean of Students

SCGeneralEmailToStudent(Email)   ⌂ + 📱 Retrieved April 24, 2024 10:01 am from    Options   368.10kb   April 24, 2024 10:00 am
104.28.50.185



**OFFICE OF THE DEAN OF STUDENTS**

*100 West Dean Keeton Street A5800 • Austin, TX 78712 • (512) 471-5017 • FAX (512) 471-7833*
*deanofstudents.utexas.edu • deanofstudents@austin.utexas.edu*

April 24, 2024

Mohammed Zakzok
Sent electronically to zakzokmohammed1@gmail.com

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2024124805

Dear Mohammed Zakzok,

You are receiving this message in your role as an Authorized Representative of the Registered Student Organization Palestine Solidarity Committee. Please **review the attached memorandum** containing time sensitive information about the cancellation of the event planned by your organization.

**"Please be advised that you are not permitted to hold your event on the University campus. Any attempt to do so will subject your organization and its attending members to discipline including suspension under the Institutional Rules. Individuals not affiliated with the University and attempting to attend this event will be directed to leave campus. Refusal to comply may result in arrest."**Sincerely,Office of the Dean of Students

Sincerely,

Office of the Dean of Students



**OFFICE OF THE DEAN OF STUDENTS**

*100 West Dean Keeton Street A5800 • Austin, TX 78712 • (512) 471-5017 • FAX (512) 471-7833*
*deanofstudents.utexas.edu • deanofstudents@austin.utexas.edu*

April 24, 2024

Palestine Solidarity Committee (PSC)

Re: Notice Cancelling Planned Event

Dear PSC Authorized Representative,

The University of Texas at Austin must first and foremost act to protect our educational mission, allowing the activities and operations that support our mission to proceed. At the same time, we are steadfast in our support of free speech. Our policies and rules help define the lines between these objectives and shape our response to planned protests.

The Palestine Solidarity Committee student organization's event "Popular University for Gaza," which is planned for tomorrow, has declared intent to violate our policies and rules, and disrupt our campus operations.[1] Such disruptions are never allowed and are especially damaging while our students prepare for the end of the semester and final exams. For these reasons, this event may not proceed as planned.

Simply put, The University of Texas at Austin will not allow this campus to be "taken" and protesters to derail our mission in ways that groups affiliated with your national organization have accomplished elsewhere.

**Please be advised that you are not permitted to hold your event on the University campus. Any attempt to do so will subject your organization and its attending members to discipline including suspension under the Institutional Rules. Individuals not affiliated with the University and attempting to attend this event will be directed to leave campus. Refusal to comply may result in arrest.**

Our campus has a long history of peaceful student protests and free speech and expression. If

---

[1] UT Austin registered student organization Palestine Solidarity Committee ("PSC") Instagram post of April 21, 2024 (emphasis added).

> WE ARE ALL SJP! Our universities have chosen profit and reputation over the lives of the people of Palestine and our will as students. The supposed power of our administrators is nothing compared to the strength of the united students, staff, and faculty committed to realizing justice and upholding Palestinian liberation on campus. *In the footsteps of our comrades at Rutgers-New Brunswick SJP, Tufts SJP, and Columbia SJP, we will take back our university* and force our administration to divest, for the people of Gaza!

UT Austin registered student organization PSC Instagram post of April 23, 2024 (encouraging people to wear face masks in violation of Chapter 13-105(a)(i) of the Institutional Rules).

> Reclaim our space on WED APR 24TH CLASS IS CANCELLED MEET AT GREG PLAZA MARCH TO OCCUPY THE LAWN BRING BLANKETS, FOOD, FACE MASKS, AND ENERGY

you are interested in organizing an event that adheres to our University policies and rules, we are happy to connect you to a staff member that can answer your specific questions and assist you in understanding what conduct is and is not permitted on our campus. However, whether you reach out for such assistance or not, you are responsible for understanding the University's expectations for students and their organizations.  Failing to comply with this notice will subject you to student discipline. You, your organization, and its members will not receive an additional warning.

In accordance with Sec. 9-301(a) of the Institutional Rules, and per the University's record retention policy, all documents pertaining to this matter will be maintained in the official University file for the organization and will be relied upon should future allegations of misconduct arise.

If you have any questions, please feel free to contact our office at 512-471-5017 or deanofstudents@austin.utexas.edu.

Sincerely,

Dr. Aaron Voyles
Executive Director Student Involvement
Office of the Dean of Students

Melissa Jones-Wommack
Acting Executive Director
Student Conduct and Academic Integrity
Office of the Dean of Students