IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STUDENTS FOR JUSTICE IN PALESTINE AT THE UNIVERSITY OF HOUSTON, et al., | § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | No. 1:24-CV-523-RP |
| GREG ABBOTT, *in his official capacity only as the Governor of the State of Texas*, et al., | § § § § | |
| Defendants. | § | |

## DECLARATION OF ADAM PERRY

1. I, Adam Perry, have personal knowledge, or knowledge based on my review of business records of the University of Texas at Dallas ("UTD"), of all statements below. I hereby swear, affirm, and attest to the following pursuant to Federal Rule of Evidence 803(6), 901(b)(7), 902(11):

2. I am a Captain with the University of Texas at Dallas Police (UTDPD) and the Commander of the Special Operations Division, which manages the Criminal Investigations Division (CID) and Support Services Division. I joined the UTDPD in February 2020 after retiring from the City of Richardson Police Department after 25 years of service.

3. As part of my job, I am aware that state law (Texas Education Code, Section 51.9315) provides that individuals may engage in expressive activities in the common outdoor areas of a public institution of higher education, subject to the university's policies imposing reasonable restrictions on the time, place, and manner of expressive activities.

4. On May 1, 2024 I was acting on behalf of the UTD Police Chief Brent Tourangeau because he was out of state at a conference.

5. I was informed at approximately 5:40 a.m., on May 1, 2024, that the student group Students for Justice for Palestine (SJP) had constructed an encampment on an area of UTD's campus

1

referred to as the Chess Plaza. I learned that the Chief of Staff Dr. Rafael Martin and Dean of Students Dr. Amanda Smith were on campus and observing the encampment from the 2nd floor of the Student Services Building (SSB), which overlooks the Chess Plaza.

6. Upon learning of the encampment, I informed my CID Sergeant Rod Bishop and the Support Services Lieutenant (now Captain) K. Zuber of the situation and together we reported to the 2nd floor of the SSB to view the encampment and meet with Dr. Martin and Dean Smith to discuss the University's plans in response.

7. The Chess Plaza is approximately 60 feet by 80 feet according to Google Maps and is on a main thoroughfare that runs east-west across campus and is used by pedestrians and emergency vehicles. The encampment encompassed the Chess Plaza and extended past it approximately 35 feet on the west side. Plywood boards and tires had been erected as a barricade around the encampment, and the protestors posted a sign on the outside of the barricade referring to the encampment as the Gaza Liberation Plaza. They also posted a sign reading "Popular University for Gaza," and another stating: "no peace without justice, no justice without return." Inside the barricades were at approximately ten tents, tables, and several large tarps. Several Palestinian flags on poles were attached to the tent poles. Large bins of food, cases of bottled water and the presence of solar panels on tents indicated to me that the protestors intended to stay awhile. This is a photo accurately depicting part of the encampment:



8. One concern I had with the encampment was that it was blocking emergency vehicles and pedestrians from using the east-west thoroughfare through campus. The Student Health Center is in the SSB, which abuts this thoroughfare and is just west of the Chess Plaza, and emergency vehicles have used this thoroughfare in the past to access the Student Health Center. In addition to having concerns about the encampment blocking passageways used by pedestrians and emergency vehicles, university officials confirmed that the encampment had not been authorized and was not permitted under the University's Speech Expression and Assembly policy or any other University policy and would have to be removed.

9. The University policy on Speech Expression and Assembly-UTDSP5001 (the "Policy") outlines reasonable time, manner and place rules for expression and assemblies on campus. One restriction is the prohibition of weapons or items that can be used as weapons, such as sticks and poles, without permission from the Dean of Students. Several flagpoles were part of the encampment in violation of the Policy. The Policy also authorizes UTDPD to enforce the rules if a violation of the rules constitutes a breach of the peace or compromises public safety. See Section A, subsection 1 para. 5 ("The UTDPD may immediately enforce these rules if a violation of these rules constitutes a breach of the peace or compromises public safety").

10. To accomplish the goal of removing the encampment, university officials sought voluntary compliance first. Initially, Dr Martin met with the students early in the morning when it was first learned that there were tents and barricades being erected. He suggested that they move their assembly to another location, but the protestors refused. Dean Smith also issued a written Notice informing the protestors that the encampment was not permitted by University policy and had to be removed. A true and accurate copy of the notice is attached as **Exhibit A**. The Notice informed the protestors that failure to comply with the directive to dismantle the encampment may result in removal from campus and charges of Criminal Trespass or other violations of state law and violations of the University's code of conduct.

11. I, along with Captain Zuber and Sergeant Bishop, proceeded to develop the law enforcement strategy to dismantle and remove the encampment in the event the protestors refused to voluntary comply with the directive from the University. Because UTDPD did not have sufficient resources to accomplish this task on its own, UTD requested mutual aid from the following law enforcement agencies: the Texas Department of Public Safety, Collin County Sheriff's Office, Richardson PD, and UT Southwestern.

12. Sgt. Bishop and Jan Voci (University Emergency Management Coordinator) were tasked with the logistics of coordinating a crowd control and removal team. All three law enforcement agencies agreed to assist with personnel and equipment. Richardson PD also provided their drone team and SWAT team, and Collin County Sheriff's Office provided vehicles to transport any individuals who were arrested to the Collin County Jail. UT Southwestern Police Department also provided 3 officers to assist.

13. In an effort to stay informed of national trends occurring on higher education campuses across the country, I had been following the many news stories of protests and encampments on university campuses since the conflict in Gaza began and was aware of the escalating activism regarding this issue. I was particularly concerned that the assemblies and rallies would follow the national trends and escalate on UTD's campus. Through my law enforcement colleagues, I was made aware of reports that a firearm was recovered from an encampment just days prior on the campus of UT Austin. Accordingly, we had two goals on the day of the encampment on Chess Plaza: (1) remove the encampment without violence, if possible; and (2) allow the protestors to exercise their speech and assembly rights under the First Amendment and University policies.

14. When all members of law enforcement were present, a briefing was conducted at a staging area west of the Chess Plaza where I instructed them of the university's objective to only remove the encampment but allow the protesters to leave the encampment and continue to protest. Those who remained inside the encampment when law enforcement moved through would be subject to arrest for criminal trespass violations on behalf of the university.

15. At 3:40 pm on May 1, 2024, Dr. Martin and Dean Smith delivered fifty (50) copies of the Notice instructing the protestors to dismantle the encampment immediately to one of the leaders of the organization for dissemination. The Notice informed them that failure to comply with the instruction to remove all tents and structures may result in removal for Criminal Trespass or other state law violations.. While I am unsure if all of the letters were disseminated among the many protestors, I observed and heard one of the leaders read the letter to the protesters using a loud speaker. I heard the speaker implore those who had small children within the encampment or who were infirmed to consider leaving the encampment. At that point, those with children and some members within the encampment did leave, but

4

many others still remained – and the barricades and tents remained in place. In my observation, no effort was being made to comply with the university's directive to remove the encampment.

16. When law enforcement approached the area, a group of approximately 10 protestors formed a circle in the middle of the encampment, sat down and locked arms and refused to leave the encampment. Three other protestors stood in front of the crowd control line of officers that had assembled to the west of the encampment and locked arms as law enforcement marched toward the encampment. They were allowed to back up as officers moved east into the encampment. The three protestors moved with the crowd control line to what had grown into 14 protesters sitting in the center of the encampment who were still locked arms. The crowd control team arrested the 14 protestors in the center but did not arrest the 3 aforementioned protestors.

17. Those who attempted to impede the procession or refused to vacate the encampment were arrested and transported to the Collin County Jail. In total, 21 individuals were arrested and charged with criminal trespass; 9 enrolled students; 3 faculty members and 9 individuals who were not affiliated with the University. No injuries were reported by any members of law enforcement or the protesters. Additionally, there was no property damage reported to the university.

18. Law enforcement officers proceeded to dismantle the barricades and tents. Once the passageway was unobstructed, personnel from the University's Facilities Maintenance department cleared the debris and the remaining protesters were permitted to continue their lawful protest on the Chess Plaza. No additional arrests were made.

19. After the encampment was cleared, law enforcement, with the exception of a few UTD PD officers, cleared the scene. The protestors continued their protest and then moved their rally approximately 625 feet north to a common outdoor area on campus known as the Plinth. They continued to chant and protest at this location for approximately 1.5 hours.

20. The University did not take any action to interrupt or stifle the assembly at the Plinth because it did not violate the Policy in the form of setting up an encampment. The protestors eventually ceased of their own accord and moved their rally site to the Collin County jail.

21. Drone footage was taken of the encampment by the Richardson Police Department and throughout the course of events on that day. I have reviewed the footage and attest that it is a true and accurate depiction of the encampment and the events as they occurred on May 1, 2024.

22. One of the individuals who was arrested and charged with Criminal Trespass on May 1, 2024 was Mousa Najjar. One of the terms of his bond, a copy of which is attached, was that he could only come on the UTD campus to "attend[] classes or class-related activities." See **Exhibit B**. On May 15, 2024, Mr. Najjar attended a graduation ceremony but refused to exit the stage after his name was called. He stopped in the middle of the stage for a protracted period, facing the crowd holding up a Palestinian flag with the message "Divest from Death" written on it. This caused a backup of the other graduating students receiving their diplomas. To prevent further disruption of the graduation ceremony, Dean Smith approached Mr. Najjar and asked him to continue to move across the stage. He asked her what she was going to do if he refused, and she informed him that if he did not exit the stage he would be escorted off the stage by police and arrested. As UTDPD approached the stage, Mr. Najjar complied and was escorted off campus by a member of UTDPD. Later, Dean Smith notified UTDPD that graduation ceremonies are voluntary for students and therefore not considered to be "class or class-related activities."

23. I requested an audit from our departmental payroll employee of the time and cost associated with the May 1, 2024 encampment and was informed that it cost the university $3,227.74 for an additional 54.25 hours overtime.

24. I requested an audit from our departmental payroll employee of the time and cost associated with the April 23, 2024 Sit-In and was informed that it cost the university $2,406.85 for an additional 39.25 hours overtime.

25. Attached hereto as **Exhibit A** is a true and accurate copy of the Notice issued by the Dean of Students to the SJP-UTD leaders on May 1, 2024.

26. Attached hereto as **Exhibit B** is a true and accurate copy of the Court Order for Conditions of Bond issued on May 2, 2024 by the Magistrate Court in Collin County, Texas in the matter of State of Texas v Mousa Mohammad Najjar.

27. Attached hereto as **Exhibit C** (file name DJI_20240501092849_0002_Z.MP4) and **Exhibit D** (file name DJI_20240501140022_0003_Z.MP4) are true and accurate copies of drone video footage of the encampment and protest at the encampment on May 1, 2024.

Further, Declarant sayeth naught.

**PURSUANT TO 28 U.S.C. § 1746, I VERIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF TEXAS AND THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on August 16, 2024.

_____
Adam Perry, Captain
University of Texas at Dallas Police Department

**EXHIBIT A**

*Notice issued by Dean of Students to SJP-UTD Leaders on May 1, 2024*



Associate Vice President for Student Affairs
Dean of Students

THE UNIVERSITY OF TEXAS AT DALLAS
800 WEST CAMPBELL RD.  SSB46  RICHARDSON, TEXAS 75080
972-883-6391        FAX 972-883-6160

5/1/2024

**NOTICE**

The setting up of an encampment – including tents, barricades, and other structures – is not permitted under the University's Policy for Speech, Expression, and Assembly, nor is it permitted under any other University of Texas at Dallas or UT System Policy or Rule.

Individuals may peacefully assemble in the common outdoor areas of campus and exercise their right to freedom of speech, but individuals may not erect or maintain an encampment. Individuals are not permitted to block or obstruct passageways to facilities, including outdoor passageways.

This is written notice that all tents and structures must be removed immediately. Failure to comply with this instruction may result in removal for Criminal Trespass or other violations of state law and/or sanctions under the Student Code of Conduct, as appropriate.

**EXHIBIT B**

*Court Order for Conditions of Bond issued May 2, 2024 by Magistrate Court in Collin County, Texas*

| | | |
|---|---|---|
| THE STATE OF TEXAS | § § | IN THE MAGISTRATE COURT |
| VS. | § § | |
| Najjar, Mousa Mohammad | § | COLLIN COUNTY, TEXAS |

## COURT ORDER FOR CONDITIONS OF BOND

The following standard conditions of bond are hereby ordered and shall apply to the bond posted by the defendant in the defendant's case(s).

The defendant shall:

1. Not use any "controlled substances" or "controlled substance analogue" as defined by section 481.002, Texas Health and Safety Code unless prescribed by your physician;
2. Submit to periodic, non-diluted testing for the presence of a controlled substance and pay for such testing,
3. Not be alleged to have committed any new offense against this state or any other state or federal jurisdiction.
4. Show up for court every single time you are required to appear, on-time,
5. Notify the clerk of the court if your address changes while the case is pending
6. Other  May not go on the UT Dallas campus except for the purposes of attending classes or class related activities

**If you do not follow these conditions until the case is fully resolved, you may face significant consequences.**

A warrant may be issued for you to be re-arrested and brought before the magistrate or court for a hearing. You may be ordered to post additional bail or follow additional conditions, or your bail may be revoked, meaning you will be detained in jail until your trial, which could take several months. Your bail may be forfeited, meaning you will have to pay the full amount of your bail as a penalty for not following the conditions of your release. If you have a bail bond company, they may sue you to recover this amount, and your assets could be seized and sold to satisfy that debt.

Signed:   5/2/2024

LISA BRONCHETTI

JUDGE L BRONCHETTI, MAGISTRATE PRESIDING

**EXHIBIT C**

*Drone video footage of May 1, 2024 SJP encampment at UTD, file name DJI_20240501092849_0002_Z.MP4*

This exhibit constitutes a video recording, a copy of which has been delivered to the Court.

**EXHIBIT D**

*Drone video footage of May 1, 2024 SJP encampment at UTD, file name DJI_20240501140022_0003_Z.MP4*

This exhibit constitutes a video recording, a copy of which has been delivered to the Court.