## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **Students for Justice in Palestine, at the University of Houston**, et al, | Case No. 1:24-cv-00523-RP |
| Plaintiffs, | Hon. Judge Robert Pitman |
| v. | |
| **Greg Abbott**, in his official capacity only as the Governor of the State of Texas, et al. | |
| Defendants. | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................II

TABLE OF AUTHORITIES ........................................................................................III

INTRODUCTION .........................................................................................................1

ARGUMENT.................................................................................................................2

    I.    All Defendants are proper Defendants. .........................................................2

    II.   All Plaintiffs have Standing for a Pre-Enforcement Challenge and both DSA and UT-PSC have Standing to Challenge the Actual Enforcement of GA-44....................................4

        a.    Plaintiffs have Standing for a Pre-Enforcement Challenge because GA-44 Arguably and Even Explicitly Proscribes Plaintiffs' Conduct and Speech. .....................................4

        b.    DSA has Standing to Pursue its Standalone Claim Against Defendant Eighmy and its Pre-Enforcement Claim Against all Defendants. .........................................................5

        c.    PSC-UT Has Organizational Standing. .................................................................8

    III.   Plaintiffs' Injuries Can be Redressed through a Remedy that Forbids or Limits Implementation of the Directives in GA-44......................................................................9

        a.    An Order Enjoining the Application of the Unconstitutional Provisions of GA-44 Would Remedy Plaintiffs' As-Applied Injuries. ...............................................................9

        b.    An Order Enjoining the Application of GA-44 Would Prevent Plaintiffs' Future Injuries Through Their Facial Challenge to the Order..................................................11

    IV.   Plaintiffs Sufficiently Pled Facts that Amount to Content and Viewpoint Discrimination. ...................................................................................................................12

        a.    Defendants Improperly Request the Court to Decide their Motion to Dismiss on Facts not Alleged in the Complaint......................................................................................12

        b.    *Tinker* Would Not Permit Defendants' Viewpoint and Content Discrimination. ......14

        c.    The Canons of Statutory Interpretation Require a Reading of GA-44 that Unconstitutionally Prohibits Speech. ...............................................................................15

    V.    Qualified Immunity Does Not Bar Plaintiffs' Individual Capacity Claims.................16

CONCLUSION.............................................................................................................18

CERTIFICATE OF SERVICE .................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*A & R Engineering and Testing, Inc. v. City of Houston*, 582 F.Supp.3d 415 (S.D. Tex. 2022)......... 15, 16

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ................................................................................6

*Ass'n of Amer. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547 (5th Cir. 2010)...................7

*Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138 (2nd Cir. 2006) ............7

*Canal Ins. Co. v. Montello, Inc.*, 2015 WL 13924151 (10th Cir. 2015) .................................................13

*Clark v. Martinez*, 543 U.S. 371 (2005) ...............................................................................................15

*Ctr. For Individual Freedom v. Carmouche*, 449 F.3d 655 (5th Cir. 2006)..........................................11

*DePree v. Saunders*, 588 F.3d 282 (5th Cir. 2009) ...............................................................................17

*Doe v. Covington County Sch. Dist.*, 675 F.3d 849 (5th Cir. 2012) ................................................12, 13

*FBI v. Fikre*, 601 U.S. 234 (2024) .......................................................................................................6

*Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306 (5th Cir. 2021)........................................3, 4

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167 (2000)..........................6

*Glass v. Paxton*, 900 F.3d 233 (2018)..............................................................................................4, 5

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ...........................................................................7

*In re Fieldwood Energy LLC*, Case No. 20-33948 2023 WL 3484646 ...................................................13

*Jackson v. Wright*, 82 F.4th 362 (5th Cir. 2023)...............................................................................2, 3

*Laird v. Tatum*, 408 U.S. 1 (1972) ..................................................................................................4, 5

*Latshaw v. Johnston,* 167 F.3d 208 (5th Cir. 1999)...............................................................................9

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010) ...........................13

*Mahanoy Area School District v. B.L.*, 141 S. Ct. 2038 (2021) ..........................................................14

*McCauley v. Univ of the Virgin Islands*, 618 F.3 232 (3d Cir. 2010)...................................................14

*McNeal v. LeBlanc*, 90 F.4th 425, (5th Cir. 2024) ...............................................................................18

*Mi Familia Vota v. Ogg*, 105 F. 4th 313, 330 (5th Cir. 2015)..........................................................5, 6

*Morgan v. Swanson*, 610 F.3d 877 (5th Cir. 2010) ..............................................................16, 17, 18

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958)...........................................................7, 8

*Nat'l Fed'n of Indep. Bus.v. Sebelius*, 567 U.S. 519 (2012) ...............................................................15

*Parikh v. Brown*, 762 F.3d 461, (5th Cir. 2014) .................................................................................16

*Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819 (1995) .........................................14

*Serafine v. Branaman*, 810 F.3d 354 (5th Cir. 2016)...........................................................................15

*Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022)..........................................................15

*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020) ...................................................4, 6, 11, 15

*Stripling v. Jordan Prod. Co.*, 234 F.3d 863 (5th Cir. 2000) ............................................................5, 9

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ...........................................................................8

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) ............................................................4

*Tinker v. Des Moines Indep. Cnty. Sch. Dist.*, 393 U.S. 503 (1969) ...................................2, 11, 13, 14

*United States v. Abbott*, 85 F.4th 328 (5th Cir. 2023) .........................................................................3

*W. Va. State Bd. of Educ. V. Barnette*, 319 U.S. 624 (1943) ...............................................................17

*Young Conservatives of Texas Found. V. Univ. of N. Texas*, 597 F. Supp. 3d 1062 (E.D. Tex. 2022) ........3

**Statutes**

Senate Bill 18, 86th Leg., Reg. Sess. (Tex 2019) ...............................................................................14

## INTRODUCTION

Israel has spent the last eleven months razing Gaza to the ground with American weapons and support. It has decimated Gaza's infrastructure and killed tens of thousands of civilians in the process. The catastrophe has, unsurprisingly, generated historic levels of civil engagement—among students, especially.

Plaintiffs, moved by their conscience, all separately began speaking out against Israel's genocidal assault and America's complicity on their respective campuses from day one. They did so for months without being shutdown, punished, or censored by university officials. Then, Governor Abbott signed GA-44, naming Plaintiffs and turning their political speech into punishable, against-campus-rules harrassment.

GA-44 directed universities to punish Plaintiffs, and the universities complied. One University Defendant prohibited students from chanting a specific phrase. A different University Defendant cancelled a Plaintiff's protest. Another created special rules applicable only to Plaintiffs' criticisms of Israel and no other country. University officials have done exactly what Governor Abbott directed them to do.

To get around these well-pled allegations, Defendants compile a twenty page record in their motion, composed largely of facts outside of the complaint, then make legal arguments relying on these facts. They, for example, discuss National Students for Justice in Palestine (NSJP) at length and assume its association with Plaintiffs, though NSJP is neither a party to the complaint nor legally affiliated with any Plaintiffs. This Court must credit Plaintiffs' well-pled allegations and, in resolving the motion to dismiss issues, can set aside the various declarations Defendants have provided.

Defendants would have the Court believe that no one can be held liable for enforcing GA-44's unconstitutional provisions. Each Defendant, they say, is entirely immune from suit despite the actual and inevitable restriction they impose on Plaintiffs' speech. If Defendants had their way, no government actor could ever be held liable for an unconstitutional law, and no court could protect a plaintiff's constitutional rights. Thankfully, the law is not on their side. Plaintiffs have plausibly alleged First Amendment violations by each Defendant, and to survive the Government's motion to dismiss, that is enough.

## ARGUMENT

## I.    All Defendants are proper Defendants.

Each Defendant named in the complaint is a proper defendant. Plaintiffs fully address Defendants' immunity defenses in their Preliminary Injunction Reply, Dkt. 38 at 3-10, but the arguments are summarized below.

To defeat Defendants' immunity argument, "[a]ll that is required is a mere scintilla of enforcement by the relevant state official with respect to the challenged law." *Jackson v. Wright*, 82 F.4th 362, 367 (5th Cir. 2023) (cleaned up). Each defendant plays a role in the enforcement of GA-44.

Greg Abbott is a proper *Ex Parte Young* Defendant because Plaintiffs plausibly allege that Abbott has taken steps to enforce GA-44, in particular by ordering the police to violently disperse a protest before the protest started.[1] Am. Compl. at ¶ 79; *see United States v. Abbott,* 85 F.4th 328, 338 (5th Cir. 2023).

---

[1] Since making this allegation in the Complaint, the Texas Department of Safety has confirmed that they acted "at the direction of Governor Abbott," Dkt 38 at 5 n.4, a neutral investigative committee has concluded that the facts "strongly imply" the police presence and university actions were a result of GA-44, Dkt. 38, Ex. A, and Travis County Attorney Delia stated that the shutdown of protests was a result of Abbott's "efforts to suppress

The Boards of Regents are proper *Ex Parte Young* defendants because they "have direct governing authority over the [] officials that are alleged continuing" the challenged conduct and each, in accordance with GA-44, has adopted the IHRA definition of antisemitism that makes Plaintiffs' criticisms of Israel a violation of campus speech policies. *Jackson,* 82 F.4th at 368.

Defendants Khator, Hartzell and Eighmy are proper *Ex Parte Young* defendants because they have enforcement authority to administer GA-44's speech code and have, in fact, enforced it. Compl. at ¶¶ 33 b, 59, 77. *See Young Conservatives of Texas Found. V. Univ. of N. Texas*, 597 F. Supp. 3d 1062, 1077 (E.D. Tex. 2022) (university President was proper *Ex Parte Young* defendants to challenge university tuition policies) (citing *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 312 (5th Cir. 2021). Defendant Eighmy, for example, imposed a phrase-specific censorship rule that forbade students from chanting *from the river to the sea, Palestine will be free* while Hartzell called in police to shutdown PSC-UT's protests on at least two occasions. And now Khator presides over University of Houston's special rules about criticizing Israel, memorialized in the definition of antisemitism that GA-44 compelled Khator to adopt.

Each Defendant had a role in enforcing GA-44 to suppress their speech and viewpoint. Thus, all Defendants are proper.

---

nonviolent and peaceful demonstrations" while announcing that charges had been dropped against protestors. Dkt. 38 at 5, n.4.

II.   **All Plaintiffs have Standing for a Pre-Enforcement Challenge and both DSA and UT-PSC have Standing to Challenge the Actual Enforcement of GA-44.**

a.   **Plaintiffs have Standing for a Pre-Enforcement Challenge because GA-44 Arguably and Even Explicitly Proscribes Plaintiffs' Conduct and Speech.**

Defendants claim that Plaintiffs do not have standing to bring a pre-enforcement challenge. To support this claim, Defendants only argue that Plaintiffs have failed to allege that GA-44 arguably proscribes Plaintiffs' conduct. MTD at 35 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). Plaintiffs brief the three *Driehaus* factors in detail in their Motion for a Preliminary Injunction.[2] Dkt. 21 at 9-11. Because Defendants only contest that GA-44 arguably proscribes Plaintiffs' speech, Plaintiffs briefly restate only that argument as follows.

GA-44 arguably and explicitly proscribes Plaintiffs' speech by defining the use of "from the river to the sea" as antisemitic and mandating universities to punish students for antisemitism. *See Speech First, Inc. v. Fenves,* 979 F.3d 319, 332 (5th Cir. 2020) (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972) ("a direct prohibition against the exercise of First Amendment rights" most clearly satisfies the "arguably proscribed" prong).

GA-44 arguably and explicitly proscribes Plaintiffs' speech by mandating universities to incorporate a definition of antisemitism that includes normal criticisms of Israel such as claiming that "Israel is a racist endeavor" of "drawing comparisons of contemporary Israeli policy to that of the Nazis," and mandating universities to punish students for antisemitism. *See Id.*

---

[2] Plaintiffs refer to the same *Driehaus* factors as "*Speech First*" factors in their Motion for a Preliminary Injunction. With *Speech First* being the more recent case, Plaintiffs believe that *Speech First* is what controls this case, not *Driehaus,* though there is significant overlap between the two.

GA-44 arguably proscribes Plaintiffs' speech by explicitly naming Plaintiffs as "radical organizations", establishing that any chill on Plaintiffs' speech is more than "speculative apprehensiveness." *See Glass v. Paxton*, 900 F.3d 233, 238-39 (2018). GA-44 also arguably proscribes Plaintiffs speech by describing Plaintiffs past "protests and walkouts" as the impetus for GA-44, which similarly makes this chill on Plaintiffs' speech more than "speculative apprehensiveness." *See Id*.

Taking each of these provisions together, Plaintiffs' belief that their future speech is proscribed by GA-44 is more than "'subjective' in nature." *See Glass*, 900 F.3d at 239 (quoting *Laird*, 408 U.S. at 11). Plaintiffs are explicitly named in GA-44 and their past and future speech is defined as antisemitic in several ways. Plaintiffs have adequately pled a "threat of specific future harm" necessary to establish pre-enforcement standing. *Id.*

**b. DSA has Standing to Pursue its Standalone Claim Against Defendant Eighmy and its Pre-Enforcement Claim Against all Defendants.**

1. UTSA Applied GA-44 by Promulgating and Enforcing a Rule According to GA-44's Terms.

Defendants repeat the fabrication that UTSA merely "asked" Plaintiffs not to chant "from the river to the sea" as an "interim" measure. Again, the sworn declarations of Defendants cannot substitute the plausible allegations in a complaint. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000). The complaint alleges, and Plaintiffs later substantiate this allegation—though not necessary here—, that a UTSA official ordered students to refrain from chanting "from the river to the sea" and that a failure to comply would result in "defer[ral] to law enforcement." Am. Compl. at ¶ 59-60. In addition to misrepresenting these facts as stated in the Complaint, Defendants argue that DSA does not have standing to pursue its claim against Defendant Eighmy because (1) Eighmy now, for the

first time, claims no willingness to enforce the rule against chanting "from the river to the sea" and (2) UTSA's recent revisions to its antidiscrimination policies moot DSA's claim. Neither argument is compelling.

Defendants rely on *Mi Familia Vota v. Ogg* for the proposition that the absence of a "demonstrated willingness" to enforce an unconstitutional provision defeats standing. 105 F. 4th 313, 330 (5th Cir. 2015). *Ogg* certainly stands for that proposition, but that proposition has no place with the present facts. The Defendants in *Ogg* had taken "no action with respect to [the challenged statute]" and had "never enforced the challenged provisions." *Id.* This renders Defendants' argument meaningless in the present case because Defendant Eighmy acted in direct compliance with GA-44 when he threatened students with punishment if they uttered "from the river the sea." Plaintiffs have alleged that UTSA had a rule against students from using the most popular slogan associated with their viewpoint. That allegation was well-pled and specific, and thus it is up Defendants to carry the "formidable burden" of proving mootness and fail to even cite a case supporting their mootness proposition. S*ee FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 190 (2000)).

Defendants suggest that UTSA's apparent decision to no longer enforce the "from the river to the sea" provision of GA-44 moots DSA's claim. But that is not how mootness works. "A defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Defendants must do more.

And here, *Speech First* again is controlling precedent that rejects the argument Defendants make. The Fifth Circuit has already rejected a similar argument by a public university that "had a sudden change of heart, during litigation, about the overbreadth and

vagueness of its speech code, and then advocated mootness under a relaxed standard." *Speech First*, 979 F.3d at 328. The Fifth Circuit held in *Speech First* that campus officials who altered their interpretation of a speech code post-litigation had not done enough to moot a student group's claims. Here, Defendants have done even less.

Plaintiff DSA's members continue to operate with the understanding that UTSA still prohibits utterance of the phrase "from the river to the sea." *See* Dkt. 38-2. The Defendants' claim that they will no longer prohibit the phrase, which is presented here for the first time, is not enough to render DSA's as-applied claim moot.

    2.    DSA has Associational Standing because Advocating for Palestine is Germane to DSA's Purpose.

Defendants assert that DSA does not have associational standing because "'advocacy for Palestine'" is not "'germane to DSA's mission to establish socialism in American communities." Plaintiffs address this argument fully in their Preliminary Injunction Reply, Dkt. 38 at 19-21, but summarize their argument as follows.

The "germaneness requirement is 'undemanding,'" requiring only "mere pertinence between the litigation at issue and the organization's purpose." *Ass'n of Amer. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 n.2 (5th Cir. 2010) (quoting *Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 148 (2nd Cir. 2006)). Plaintiff DSA easily clears that undemanding burden because organizing for Palestine is central to its purpose and Defendants' actions in furtherance of GA-44 create a "concrete and demonstrable injury to the organization's activity" necessary to establish standing. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

Defendants' efforts to argue that DSA asserts only an "abstract social interest" in organizing for Palestine only make sense if one takes their claims about DSA's mission on

their face. Defs.' MTD at 21 (citing *Havens Realty Corp.*, 455 U.S. at 379). Defendants ignore both the allegations in the Complaint, Am. Compl. at ¶¶ 49-58, and the overwhelming external evidence of the centrality of Palestine advocacy to DSA's purpose. Dkt. 38 at 19-21. For these reasons, Defendants' attempt to narrow DSA's purpose to save its standing argument fail.

### c. PSC-UT Has Organizational Standing.

PSC-UT has organizational standing because all of its members are affected by the challenged activity. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958). The very case Defendants cite to support the proposition that individual, affected members must be named to establish organizational standing affirms an exception when all members are affected. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009). ("This requirement of naming the affected members has never been dispensed … but only where *all* the members of the organization are affected by the challenged activity.") (emphasis original) (citing *NAACP*, 357 U.S. at 459).

Plaintiffs appropriately only allege harm against Plaintiff PSC-UT as a whole rather than on behalf of some members to demonstrate that all PSC-UT members are affected. *See, e.g.* Compl at ¶¶ 107-114. Defendants suggest that Jenna Homsi's declaration substitutes as a declaration of specific harm against her, and that because she's no longer a student, she cannot form the basis for standing. Dkt 31 at 37-38. But Defendants misrepresent Ms. Homsi's affidavit. It does not matter that Ms. Homsi will no longer be a student going forward because Plaintiffs did not submit her affidavit to establish standing. Plaintiffs submitted her affidavit to recount how UT-Austin restricted Plaintiffs' speech, by preventing PSC-UT events from even happening, while she was a student at the university. Dkt. 21-3. That Homsi is no longer

a student is entirely irrelevant to the standing analysis because the purpose of her affidavit was not to allege specific harm against her but on behalf of the entire organization. *Id.* Defendants fail to even suggest that PSC-UT does not allege harm on behalf of all its members. Because PSC-UT does allege harm on behalf of all its members, it has associational standing to sue.

### III. Plaintiffs' Injuries Can be Redressed through a Remedy that Forbids or Limits Implementation of the Directives in GA-44.

Defendants assert that Plaintiffs' lawsuit is jurisdictionally flawed because their injuries cannot be redressed through a lawsuit to GA-44 alone This is wrong. First, Plaintiffs plausibly allege that their past harms are a result of GA-44 and the actions University Defendants took to comply with GA-44, not because of any preexisting antidiscrimination policies. Second, Plaintiffs brought a pre-enforcement challenge against any future harms that will inevitably result from the enforcement of the provisions in GA-44.

In their Motion to Dismiss, Defendants confuse Plaintiffs' as-applied and facial challenges. See Defs.' MTD at 26 (misstating Plaintiffs' pre-enforcement challenge as an "as-applied" challenge). The only as-applied challenges to GA-44 are on behalf of DSA and PSC-UT for Defendants' application of GA-44 to promulgate a rule against chanting "from the river to the sea" and to preemptively cancel PSC-UT's protests respectively. The facial challenge, on the other hand, is a pre-enforcement challenge on behalf of all Plaintiffs to protect students from the future application of GA-44's unconstitutional directives, in particular the Israel-specific speech code embedded in Defendants' definition of antisemitism. Plaintiffs explain the importance of this distinction below

#### a. An Order Enjoining the Application of the Unconstitutional Provisions of GA-44 Would Remedy Plaintiffs' As-Applied Injuries.

Plaintiffs plausibly allege that Defendants Khator, Hartzell, and Eighmy have enforced GA-44 by restricting and chilling Plaintiffs' speech. The sworn oaths of Defendants at most create a factual dispute that is not appropriate for resolving at this point in litigation. *See Stripling*, 234 F.3d at 869. This Court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Id.* (quoting *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999) (internal quotations omitted). Accepting Plaintiffs' allegations as true, Defendant Eighmy relied on GA-44 to promulgate UTSA's rule against chanting "from the river to the sea." Am. Compl. at ¶ 59. Defendant Hartzell also relied on GA-44 when he preemptively cancelled PSC-UT's protests. *Id.* at ¶ 79-80. Finally, Defendant Khator relied on GA-44 when he incorporated Section 448.01's definition of antisemitism. *Id.* at ¶ 33(b).

GA-44 directly instructs Texas universities how to define antisemitism and "direct[s]" schools to "establish appropriate punishments, including expulsion," for students who engage in GA-44's definition of antisemitism. GA-44. A remedy that declares "Executive Order GA-44 is illegal viewpoint and content discrimination" and orders Defendants "not take any action in furtherance of the order or in accordance with GA-44" while enjoining the actions already taken. Am. Compl. at p. 26, would resolve issues for Plaintiffs who have suffered harm from GA-44's past implementation.

Furthermore, Defendants misstate the allegations related to UTSA. Nowhere does the complaint suggest that UTSA "asked students to refrain" from chanting "from the river to the sea" as an "interim measure." Defs.' MTD at 26. UTSA told students they could not chant "from the river to the sea" and that the consequence would be "defer[ral] to law enforcement."

Am. Compl. at ¶ 59-60.[3] UTSA did this specifically to comport with GA-44. *Id.* at ¶ 59. Defendants' reimagination of the alleged facts does not prohibit the Court from providing a remedy that halts or limits the application of GA-44.

In sum, Plaintiffs' as-applied challenge to GA-44 is appropriate because the University Defendants who have restricted Plaintiffs' speech have done so via concrete action in compliance with GA-44's directives. A remedy that enjoins Defendants' GA-44-directed conduct would appropriately address these Plaintiffs' injuries.

### b. An Order Enjoining GA-44 and Conduct Taken in Furtherance of it Would Prevent Plaintiffs' Future Injuries Through Their Facial Challenge.

Further, Plaintiffs alleging future harm from the inevitable implementation of GA-44's directives would have their injuries redressed by a remedy against GA-44 and the conduct undertaken in furtherance of it. Plaintiffs brought a pre-enforcement challenge by plausibly alleging that (1) they intend to engage in protected conduct; (2) GA-44 arguably proscribes plaintiffs' conduct; and (3) Plaintiffs face a substantial threat of future enforcement of the order. Compl. at ¶¶ 92-94; *see Speech First, Inc. v. Fenves*, 979 F.3d 319, 330-31 (5th Cir. 2020).

Defendants correctly assert "a plaintiff generally 'cannot challenge a [rule] as-applied unless [it] has been applied to him." Defs.' MTD at 26 (citing *Ctr. For Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006) (emphasis added). But Defendants misunderstand pre-enforcement challenges as as-applied rather than facial challenges. The Fifth Circuit addresses this directly in *Speech First*. "Whereas '[t]here must be some evidence that [a] rule would be applied to the plaintiff in order for that plaintiff to bring an as-applied challenge," that is not the case for facial challenges." *Speech First*, 979 F.3d at 334-35 "[W]hen

---

[3] This is beyond plausibly alleged. In their preliminary injunction reply, Plaintiffs entered a transcript into the record which substantiates this allegation. *See* Dkt. 38-5

dealing with pre-enforcement challenges to recently enacted [] statutes that *facially restrict expressive activity*, … courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Id* at 35. Plaintiffs' pre-enforcement challenge is a facial challenge—to GA-44 and to the Israel-specific speech code adopted by UH and UT-Austin, —and Plaintiffs allege facts sufficient to raise a pre-enforcement challenge against GA-44.

## IV. Plaintiffs Sufficiently Pled Facts that Prove Content and Viewpoint Discrimination.

Defendants' merits arguments also fail. First, Defendants arguments rest almost entirely on new facts they introduce in their motion. But the introduction of new facts in a motion to dismiss is improper, so relying on these facts means Defendants' arguments necessarily fail. Second, no matter the test applied—be it *Tinker* or anything else— Defendants' viewpoint and content discrimination is still illegal.

### a. Defendants Improperly Request the Court to Decide their Motion to Dismiss on Facts not Alleged in the Complaint.

To start, without citing any case in support, Defendants demand that the Court accepts "two key indisputable public facts" related to Plaintiffs' speech not alleged in the complaint. MTD at 39. First, Defendants ask this court to accept that all Plaintiffs organized their protests as "part of a larger nationwide movement … intent on maximally disrupting campuses." *Id.* Plaintiffs deny this, it is not part of their complaint, and thus, the Court should set it aside.

Second, Defendants ask this Court to accept that "pro-Palestinian protestors across the country" have helped cause a "dramatic[] spike" in antisemitism. *Id.* Plaintiffs deny this too. Even assuming the Court could accept the latter as fact, it does more harm to Defendants than help. Defendants rely on an Anti-Defamation League report of "antisemitic" incidents in the wake of October 7th. While there certainly has been an uptick in antisemitic incidents,

"[t]he ADL admits in its own press release that *it includes pro-Palestine rallies in its list of antisemitic incidents*, even if these featured *no overt hostility toward Jewish people.*"[4] (emphasis added). Defendants ask this Court to do what GA-44 mandates universities do: conflate pro-Palestinian activism with antisemitism. And, just like GA-44, the First Amendment does not somehow provide Defendants with the authority to label pro-Palestinian, anti-Israel speech as antisemitic and then suppress it.

A Defendant cannot introduce new facts to support its arguments in a 12(b)(6) motion. *See Doe v. Covington County Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) ("Our task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible . . . '") (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)); see e.g., *In re Fieldwood Energy LLC*, Case No. 20-33948 2023 WL 3484646 at *1 (Bankr. S.D. Tex. 2023) (denying a Motion to dismiss where the defendant "spends much of its motion to dismiss (i) alleging facts not referenced in the complaint and (ii) arguing legal theories based upon those new facts."). Nonetheless, almost all of Defendants 12(b)(6) arguments rely on the introduction of new facts. Any of these arguments are thus invalid.

Defendants rely on new facts for their *Tinker* analysis. They say, "Plaintiffs offer no allegations suggesting that pro-Palestinian protests did not substantially disrupt the University Defendants' educational functions or, at the least, that the University Defendants were wrong to believe that Plaintiffs' protests would lead to such disruption." Here, Defendants employ a logical fallacy to insert new facts into the pleading. *See also Canal Ins. Co. v. Montello, Inc.*, 2015 WL 13924151 at *3 (10th Cir. 2015) (argumentum ex silentio is "weak and generally

---

[4] Adrienne Mahsa Varkiani, *ADL Officially Admits It Counts Pro-Palestine Activism as Antisemitic*, The New Republic, January 10, 2024, https://newrepublic.com/post/177993/adl-abandons-pretense-tracking-antisemitism-honestly-palestine-rallies

unpersuasive"). Plaintiffs never allege anything that suggests their protests were substantially disruptive or intended to be substantially disruptive. Plaintiffs even allege the opposite. *See* Compl. at ¶ 7 ("Despite clear communication that no rules would be violated . . ."). Defendants even urge the court to accept that Plaintiffs contributed to a "severe and pervasive" environment of discrimination. MTD at 55. Defendants must urge this because their attempted *Tinker* analysis requires it. *Id.* at 53. This, too, improperly reaches beyond the pleadings. *See Covington County*, 675 F.3d at 854. The reliance on alleged facts outside of the pleadings makes any argument relying on those facts invalid.

    **b.** ***Tinker* Would Not Permit Defendants' Viewpoint and Content Discrimination.**

        Defendants reassert the same merits arguments they do in their opposition to Plaintiffs' motion for a preliminary injunction. Plaintiffs address these arguments in their preliminary injunction reply. In short, while *Tinker* does not apply, Defendants' viewpoint discrimination is illegal no matter the standard the Court uses.

        *Tinker* has never been applied to the university setting in the Fifth Circuit and does not apply because speech restrictions in the university setting "raise very different questions" from those in the grade school context, *see Mahanoy Area School District v. B.L.*, 141 S. Ct. 2038, 2049 n.2 (2021) (Alito, J., concurring); *McCauley v. Univ of the Virgin Islands*, 618 F.3 232, 243 (3d Cir. 2010). But regardless, *Tinker* cannot be used—as it is here—to justify viewpoint discrimination, *see Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 835 (1995);

        The cases Defendants rely on for applying *Tinker* to the present facts are insufficient because none of the cases support Defendants' contention that speech restriction is permitted so long as "*some* people view" the prohibited speech as discriminatory, MTD at 50 (emphasis

original). Plaintiffs' members, leaders, supporters, and their critics are all adults, and so mere offense is no basis to suppress Plaintiffs' speech.

And *Tinker* is even less likely to apply at Texas universities than other campuses, because Texas law treats "common outdoor areas" on public campuses as traditional public forums, Senate Bill 18, 86th Leg., Reg. Sess. (Tex 2019). This makes it impossible for the Government to get the lower standard they seek from *Tinker*.

Defendants' *Tinker* defense to their speech restriction fail in a preliminary injunction context and are even less viable here where the motion is decided on the pleadings.

### c. The Canons of Statutory Interpretation Require a Reading of GA-44 that Unconstitutionally Prohibits Speech.

Defendants further suggest that the Court can simply interpret away all of GA-44's constitutional shortcomings. MTD at 40. Defendants' "constitutional avoidance" argument asks the Court to eschew the canons of statutory interpretation to arrive at their favored meaning of GA-44, one that survives constitutional scrutiny. *Id.* But Defendants make no effort to address the unambiguous directives of GA-44 and instead default to constitutional avoidance.

Constitutional avoidance, however, only "comes into play when, after the application of the ordinary textual analysis, the statute, is found to be susceptible of more than one construction," *Clark v. Martinez,* 543 U.S. 371, 385 (2005). It must be "plain text" which "limits the sweep" of laws which might impinge on First Amendment rights, *Serafine v. Branaman*, 810 F.3d 354, 369 (5th Cir. 2016);

Here, the plain text makes it clear that GA-44 targets political speech Governor Abbott does not like. GA-44 unambiguously defines "from the river to the sea" as antisemitic and unambiguously directs schools to include a definition of antisemitism that includes common

and typical criticisms of Israel—that it's a racist country, that it's led by war criminals, and that Israel's leaders are in some ways comparable to World War II era war criminals.

Despite Defendants' attempts to do so, "the Court 'cannot rewrite the statute to be what it is not." *A & R Engineering and Testing, Inc. v. City of Houston*, 582 F.Supp.3d 415, 433 (S.D. Tex. 2022) (quoting *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 662 (2012) (Scalia, J., dissenting). It is not the Court's duty to "pervert[] the purpose of the statute" to "save it from constitutional attack." *Id.* Constitutional avoidance has no place where, as here, the statute is unambiguous.

But even if this Court finds some ambiguity in the text, it is enough for a rule to "objectively chill[] protected expression" for it to be unconstitutional, *Speech First, Inc. v. Cartwright*, 32 F.4ᵗʰ 1110, 1121 (11th Cir. 2022) (citing *Speech First*, 979 F.3 at 330-35), and GA-44 has objectively chilled the expression of Plaintiffs.

**V.    Qualified Immunity Does Not Bar Plaintiffs' Individual Capacity Claims.**

Once a plaintiff alleges that a constitutional right has been violated, a defendant may assert a defense of qualified immunity when the constitutional right was not "clearly established" at the time of the conduct. *Parikh v. Brown*, 762 F.3d 461, 465 (5th Cir. 2014). Defendants assert that "[a]ll of Plaintiffs' individual-capacity claims are barred by qualified immunity" but then only raise the defense for Defendant Hartzell's pretextual cancellation of PSC-UT's protests. MTD at 59-60. Defendant Hartzell's qualified immunity defense fails because it relies on facts not alleged in the complaint, and the alleged facts give rise to the violation of a clearly established first amendment right.

The Court may not decide qualified immunity on alleged facts raised by Defendants. Instead, the Court must consider whether qualified immunity bars the claims as pleaded. *See*

*Morgan v. Swanson*, 610 F.3d 877, 884 (5th Cir. 2010) ("Because Appellants asserted qualified immunity in a motion to dismiss, this court must accept as true Appellees' allegation that their actions did not cause substantial and material disruption of school operations.") (internal citations omitted). Plaintiffs do not allege that Defendant Hartzell cancelled PSC-UT's protest because he believed PSC-UT would violate rules. Instead, Plaintiffs allege that Defendant Hartzell cancelled the protests using ostensible rule violations as a pretext, that PSC-UT assured Defendant Hartzell that no rules would be violated, but that Defendant Hartzell then ignored PSC-UT and acted to cancel the protest anyway because of PSC-UT's viewpoints and the content of their protests. Am. Compl. at ¶¶ 79, 110. So the question for the Court is only: is the cancellation of a protest because of the protest's anticipated conduct and the viewpoint of the speakers a clearly established violation of the First Amendment? It is.

Restricting speech because of its content or the viewpoint of the speaker is a clearly established violation of the First Amendment. *See Morgan*, 610 F.3d at 884 ("'If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion . . . .'" (quoting *W. Va. State Bd. of Educ. V. Barnette*, 319 U.S. 624, 642 (1943)). Defendants point to no case that would suggest this type of viewpoint and content discrimination may be lawful. Defendants, instead, assert that it is not clearly established whether a university restricting "substantially disrupt[ive]" speech violates the First Amendment. But, again, this defense improperly urges the Court to accept a version of the facts not pleaded. *See Morgan*, 610 F.3d at 884. President Hartzell's viewpoint motivated cancellation of PSC-UT's protest violated clearly established First Amendment law.

Though Defendants make no effort to support their assertion that DSA's claim against Defendant Eighmy should be barred by qualified immunity, Plaintiffs briefly address it here. Plaintiff Eighmy prohibits students from uttering the phrase "from the river to the sea, Palestine will be free." Am. Compl. at ¶ 59. A UTSA official confirmed that the prohibition will be enforced by referring students who did use the phrase to law enforcement. *Id.* at ¶ 60. Qualified immunity only protects government officials from suit when the constitutional right they violate is not "clearly established." *See DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009). As stated above, restricting speech—particularly one specific phrase associated with one specific viewpoint—for its content clearly violates the First Amendment. *See Morgan*, 610 F.3d at 884; *Barnette*, 319 U.S. at 642).

At both UT and UTSA, officials had "fair warning" that restricting student speech for its content and the speaker's viewpoint violated the first amendment because restricting that speech clearly violates the First Amendment. *See McNeal v. LeBlanc*, 90 F.4th 425, 433 (5th Cir. 2024); *Morgan*, 610 F.3d at 884. Because that right is so clearly established, Plaintiffs PSC-UT and DSA's claims against Defendants Hartzell and Eighmy are not barred by qualified immunity.

## CONCLUSION

For the reasons stated above, the Court should dismiss Defendants' Motion to Dismiss in its entirety.

18

Dated: September 4, 2024

Respectfully Submitted,

/s/ Lena Masri
Lena Masri
Gadeir Abbas
Justin Sadowsky
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave, SE
Washington, D.C. 20003
Tel: 202-488-8787
ldf@cair.com

*Licensed in VA; not in D.C., practice limited to federal matters

John T. Floyd Law Firm
By: /s/ John T. Floyd
Texas Bar No. 00790700


/s/ Chris Choate
Texas Bar No. 24045655

River Oaks Tower
3730 Kirby Dr., Suite 750
Houston, TX 77098
Tel: 713-244-0101
Fax: 713-2371511

## CERTIFICATE OF SERVICE

I, Lena Masri, hereby certify that a true copy of this motion in opposition to defendants' motion to dismiss was served on all defendants' counsel of record through the Court's electronic filing system.

/s/ Lena Masri

Lena Masri