**FILED**

September 06, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ pg

DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STUDENTS FOR JUSTICE IN PALESTINE AT THE UNIVERSITY OF HOUSTON, et al., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | No. 1:24-CV-523-RP |
| GREG ABBOTT, *in his official capacity only as the Governor of the State of Texas*, et al., | § § § § | |
| Defendants. | § § | |

## DEFENDANTS' SURREPLY TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs say many things in their reply, but they neglect to support most of their assertions with evidence or legal authority. Plaintiffs have instead chosen to substitute their subjective say-so for a record that might add color to their claims, but those allegations do not get truer when repeated. The Court may accordingly disregard much of Plaintiffs' reply.[1] At the same time, Plaintiffs improperly unload a large volume of new "evidence" and raise new issues not briefed in their motion and not directly responsive to any argument in Defendants' brief. By filing a threadbare motion and then waiting until their reply to address most of the key issues implicated by their request for injunctive relief, Plaintiffs waived these new points.[2]

---

[1] *See Revocable Living Trust of Judith A. Dunn v. Quicken Loans, Inc.*, No. 1:18-cv-371-RP, 2019 WL 1131423, at *2 (W.D. Tex. Mar. 12, 2019) (Pitman, J.) (explaining that because the plaintiff had failed to provide legal authority in support of their argument, and because they ignored a key document, they failed to carry their burden of supporting their request for dispositive relief) (citing W.D. Tex. Loc. R. CV-7(d)(1) ("Legal authorities supporting any motion must be cited in the motion.")).

[2] *See Parson v. Sager*, No. 1:18-cv-1014-RP, 2019 WL 5243190, at *2 n.1 (W.D. Tex. Apr. 30, 2019) (Pitman, J.) (citing *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived.")). The Court should strike Plaintiffs' new points from the record.

I.      **Plaintiffs' Reply Introduces Unsigned and Undated "Affidavits."**

Plaintiffs introduce a new affidavit by Jenna Homsi as supposed support for several arguments in their reply, but Ms. Homsi's affidavit is unsigned and undated.[3] The Court should ignore it.

Ms. Homsi's unsigned affidavit also raises two other issues. First, it does nothing to show that Ms. Homsi was a student at the time of the April protests, and so PSC-UT has failed to identify any single member who could bring a claim in their own right to support PSC-UT's associational standing.[4] Second, Ms. Homsi's unsigned affidavit claims that PSC-UT is not genuinely connected to NSJP,[5] but this is not a serious point. Last December 8, Mr. Qaddumi—then a member of the steering committee for PSC-UT but now its figurehead—reportedly "said that organization is UT Austin's arm of the national Students for Justice in Palestine group and it has organized multiple pro-Palestine demonstrations on and off campus in Austin."[6] Mr. Qaddumi reaffirmed the connection to NSJP in an article published on September 3, 2024.[7] PSC-UT also reposted NSJP's Popular University for Gaza post on April 20, 2024, declaring unequivocally: "WE ARE ALL SJP!"[8]

Next, Plaintiffs also introduce a new statement by Kira Sutter that is not properly signed, undated, and instead reflects an electronic mark that neither Defendants nor the Court can be sure was made by Ms. Sutter. While federal law permits litigants to rely on declarations in lieu of affidavits, 28 U.S.C. § 1746 requires that a declarant subscribe to the writing themselves under penalty of perjury

---

[3] ECF 38-3, p. 4.

[4] *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

[5] ECF 38-3, ¶ 19.

[6] Ryan Quinn, *2 TAs Provided Students Mental Health Resources on Gaza. They're not TAs Anymore*, INSIDE HIGHER ED (Dec. 20, 2023), https://tinyurl.com/4sbw4bs7.

[7] Lily Kepner, *Criminal trespassing charges dropped against 79 arrested in UT pro-Palestinian protest*, AUSTIN AMERICAN-STATESMAN (Jun. 26, 2024, 5:37 PM), https://tinyurl.com/bpdkn9z4 ("However, while the committee, which is both a chapter of Students for Justice in Palestine and a community organization, will focus its efforts off-campus, Qaddumi believes other organizations will come forward to advocate for Palestine at UT."). A PDF version of this article is provided as a courtesy to the Court as **Exhibit C**.

[8] ECF 43-1, p. 13

before it may have the same force and effect as an affidavit. Plaintiffs also label the exhibit as an affidavit, not a declaration,[9] but it does not reflect that Ms. Sutter swore to the instrument "before an officer authorized to administer oaths, such as a notary public."[10] The Court should disregard it.

## II.     Plaintiffs Attempt to Introduce Expert Testimony without a Proper Foundation.

Plaintiffs introduce a new declaration[11] by Elliott Colla purporting to offer expert opinion testimony, but Plaintiffs do not lay an adequate foundation for that opinion under Fed. R. Evid. 702. The declaration does not disclose the factual bases for Professor Colla's opinions, does not identify any generally accepted methods he relied on in reaching his opinions (though he does list several questions *he thinks* are important to ask), does not appreciably apply any generally accepted methods, does not reflect a reliable application of those methods, and does not even disclose how his proposed opinion would help the Court to understand the evidence or determine any material fact in issue. The Court may disregard Professor Colla's proffered "expert" opinion.

## III.     Plaintiffs Attempt to Manufacture a Sham Dispute about UTSA's Campus Rules.

Plaintiffs contend that because DSA believes the "rule" (as Plaintiffs improperly call it) prohibiting students from chanting "from the river to the sea, Palestine will be free" on campus remains in effect,[12] the Court must accept that subjective belief as true. Plaintiffs attach a significant volume of new material as supposed support for their argument,[13] but the Court can see for itself that Plaintiffs' new material does nothing to contradict LaTonya ("L.T.") Robinson's declaration.[14] L.T. Robinson, as Dean of Students at UTSA, can speak to the fact that UTSA's request was a temporary

---

[9] ECF 38-2, p. 2.

[10] *Black's Law Dictionary* 62 (8th ed. 2004).

[11] *See generally* ECF 38-4.

[12] ECF 38, p. 23.

[13] ECF 38-5.

[14] Should the Court consider Plaintiffs' new evidence, it supports Dean Robinson's declaration that the request was made as a temporary measure during a fraught time while awaiting additional information, that no final decisions had been made regarding the Governor's order, and that law enforcement would not enforce the request. *See* ECF 38-5 at 22-24, 30, 33-36, 44.

measure to encourage and maintain civil discourse on campus during a fraught time while awaiting additional guidance, UTSA has no demonstrated willingness to repeat this request to students going forward, UTSA never enforced the request, and that the "rule" was not incorporated into UTSA's June 7 revision to its Peaceful Public Assembly Policy.[15] DSA cannot manufacture a factual dispute by burying its head in the sand and ignoring the reality on the ground: UTSA has no such rule, has no intention of enforcing such a rule to the extent it did, and Plaintiffs cannot create jurisdiction on their official- or individual-capacity claims through *ipse dixit* to the contrary.[16]

## IV. Plaintiffs Introduce a Report by a Faculty Committee at UT Austin that Does Not Speak for the Faculty and Missed Numerous Key Details.

Plaintiffs introduce a UT Austin Committee of Counsel on Academic Freedom and Responsibility (CCAFR) report that they claim reflects the opinion of UT Austin on PSC-UT's campus disruptions.[17] As Plaintiffs may already know, UT Austin President Hartzell responded to CCAFR's report on August 9 to highlight several important issues that CCAFR neglected to review and consider before circulating its report: the national experience surrounding protests last spring, the role of university rules and policies, and the process that UT Austin is using for student discipline.[18] And to "set the record straight" on the matters raised in CCAFR's report, UT Austin's Vice President for Legal Affairs (VPLA) also responded on August 20 to provide a fuller account of the matters at hand.[19] As those responses show, CCAFR's report (1) speaks beyond the committee's limited purview, and (2) UT Austin does not agree with the conclusions that CCAFR reached.

CCAFR "provides advice on, and investigates allegations of violations of, policies and procedures concerning tenure, promotion, annual, post-tenure, and mid-probationary faculty

---

[15] *UTSA HOP*, § 9.37(III.A); *see also* ECF 31-5, ¶¶ 8–16.
[16] *Infra* p. 9.
[17] ECF 38, p. 5.
[18] *See generally* UT Austin President Jay Hartzell's August 9, 2024 Response to CCAFR Report, attached as **Exhibit A**.
[19] *See generally* UT VPLA August 20, 2024 Response to CCAFR Report, attached as **Exhibit B**.

evaluations as well as the exercise of academic freedom in teaching, scholarship and expression."[20] As the VPLA's letter explains, "[t]he incidents in question involve free speech and expression generally and are not academic freedom issues," so "borrowing the stature and credibility of the committee for a report that is decidedly not about" those areas within its purview was "undisciplined at best."[21]

Additionally, Faculty Council leadership reached a different conclusion than CCAFR's—namely, that Dean of Students staff followed the existing policy and rules.[22] CCAFR is one of many committees within Faculty Council. They do not speak for the entire council nor do they comprise the body's leadership. As the VPLA explained in its letter to CCAFR: while faculty members, including those on CCAFR, are entitled to express their opinions, they do not bind UT Austin or dictate its position as an institution. As a result, the Court should set aside CCAFR's opinion testimony.[23]

## V.   Plaintiffs' Reliance on the Travis County Attorney's Decision to Dismiss Criminal Trespass Charges is Misplaced.

Plaintiffs (and CCAFR) lean on the fact that Travis County Attorney Delia Garza dismissed criminal trespass charges against the UT Austin campus agitators to insinuate that those arrests were baseless.[24] In saying so, they make the basic mistake of confusing a prosecutor's discretion not to pursue criminal charges[25] with the independent issue of a prosecutor's judgment that a given criminal charge is fatally flawed due to an underlying Fourth Amendment deficiency.[26] Here, the County Attorney made clear she was dismissing the 79 criminal trespass cases based on her prosecutorial

---

[20]    *A1 Committee of Counsel on Academic Freedom and Responsibility*, available at https://facultycouncil.utexas.edu/a1-committee-counsel-academic-freedom-and-responsibility.
[21] Ex. B, p. 1.
[22] *Id.*, p. 6; Ex. A, p. 1
[23] *See* Fed. R. Evid. 701 & 702.
[24] ECF 38, pp. 1, 5; ECF 38-1, pp. 10, 15.
[25] *See, e.g.*, *Richardson v. Blevins*, No. A-21-cv-794-RP, 2021 WL 9494503, at *2 (W.D. Tex. Sep. 18, 2021) (Pitman, J.) ("[W]hether to prosecute criminal statutes and bring charges are decisions left to the discretion of a prosecutor.") (citing *United States v. Batchelder*, 442 U.S. 114, 124 (1979)).
[26] *See, e.g.*, *United States v. Williams*, No. 1:22-cr-253-RP-2, 2024 WL 1543219, at *4 (W.D. Tex. Apr. 9, 2024) (Pitman, J.) (explaining probable cause requirement for a warrantless arrest).

discretion: she publicly stated that she believed she could not prove them beyond a reasonable doubt.[27] It does not follow from that discretionary decision that the arrests were baseless. Any number of considerations can inform a prosecutor's determination about how to exercise the office's discretion. And it is clear from the sampling of evidence that Defendants have provided the Court that a basis exists for the arrests on which another county attorney could easily and reasonably decide to proceed with the cases.[28]

### VI.   Plaintiffs Cite to a Document Stricken from the Record to Attack a Witness.

Plaintiffs inaccurately say that Assistant Chief Shane Streepy "falsely" claimed he found stacks of copies of Hamas propaganda in PSC-UT's encampment.[29] Plaintiffs offer no support of their own for this attack, and instead cite to a document stricken from the record. Defendants already clarified that they had inadvertently filed the wrong attachment as Exhibit BB to Dkt. 32-11,[30] the Court granted that motion, struck and sealed the original Exhibit BB, and replaced it with a corrected Exhibit BB. The Court should ignore Plaintiffs' attempt to discredit uncontroverted testimony on this inappropriate basis.

### VII.   Plaintiffs Falsely Claim that UT Austin Did Not Observe any Institutional Rules Violations when PSC-UT Protested Israel Block Party.

Plaintiffs newly contend that the "UT administration specifically found that UT-PSD [*sic*] did not violate rules at its counter protest to the 'Israel block party.'"[31] That is not true. PSC-UT *was* initially violating UT Austin's Institutional Rules, but because their members were willing to work with staff to change the form of their protest to comply with the Institutional Rules, the Dean of Students

---

[27] Ex. C.
[28] *See* Fed. R. Evid. 702.
[29] ECF 38, pp. 16–17.
[30] ECF 36.
[31] ECF 38, p. 17.

elected not to charge those students with any violations. [32] To this end, the Dean of Students sent a letter to Ms. Homsi outlining a constructive path forward while admonishing PSC-UT: "[t]his message should serve as a notice of the potential risk of failing to comply with directives of university officials, and disrupting authorized activities."[33] That interaction only illustrates university officials' willingness to cooperate with PSC-UT, so long as the student organization is likewise willing to cooperate with staff to come into compliance with the University's time, place, and manner rules.

## VIII.   Plaintiffs' Reply Introduces Seven Erroneous New Legal Contentions.

*First*, Plaintiffs do not challenge the University Defendants' policies through any claim in their Amended Complaint, but they now say (for the first time) in their reply that they are pursuing a pre-enforcement challenge to those policies—arguing that "[t]he challenged policies are unconstitutional viewpoint discrimination."[34] This contradiction highlights the tortured connection Plaintiffs are attempting to draw between GA-44 and the actions that were (and arguably could be expected to) be taken against them on the basis of the University Defendants' time, place, and manner rules. Moreover, while Plaintiffs argue that Defendants have waived their arguments against the pre-enforcement challenge,[35] that cannot be so because the pre-enforcement analysis is a jurisdictional inquiry that goes to the "injury in fact" prong of the standing inquiry,[36] and arguments challenging the Court's subject-

---

[32] *See* ECF 43-1, ¶¶ 13–15 (explaining that PSC members initially marched at the event in what appeared to be an effort to disrupt it intentionally, but after Dean of Students staff informed them that this was unacceptable conduct and helped them find a way to hold their protest in a way that respected the rights of others, PSC's members complied with those instructions).

[33] *See id.*, p. 44.

[34] ECF 38, p. 11.

[35] *Id.*

[36] *See Speech First, Inc. v. Fenves*, 979 F.3d 319, 329-30 (5th Cir. 2020) (evaluating standing in pre-enforcement context).

matter jurisdiction cannot be waived.[37] Regardless, this point does not matter because Plaintiffs cannot

seek relief based on a claim that is not in their operative pleading.[38]

      **Second**, Plaintiffs argue for the first time and without support that it is irrelevant "[w]hether

the Court treats these claims as facial or as-applied"; in either event, Plaintiffs say, "the full scope of

relief Plaintiffs[] propose remains available."[39] This new argument—and Plaintiffs apparent

contention that they need not offer support in favor of either path to demonstrate a likelihood of

success on the merits—is contradicted by caselaw that carefully evaluates the standards for succeeding

on an as-applied versus a facial challenge—a distinction and a clarity which is all the more needed

when a pre-enforcement challenge is involved. Plaintiffs say (at page 34) they are not challenging that

the University Defendants applied content-neutral time, place, and manner restrictions to end

Plaintiffs' disruptive protests, that those policies are lawful under the First Amendment to the United

States Constitution, or even that Defendants were within their rights to apply them because Plaintiffs'

protests would be disruptive.[40] Instead, Plaintiffs appear to suggest that the University Defendants

would apply *different* policies to stop Plaintiffs' protests again in the future and that the future

application of those yet-unidentified policies would be unlawful.[41]

      While it is true that, since the protests in the spring, the University Defendants have revised

their discrimination policies to reflect GA-44, those revisions did nothing to touch the time, place,

and manner rules that were actually enforced in the spring—and would be enforced again if Plaintiffs

again attempt to establish encampments or cause major disruption to campus functioning. An as-

applied pre-enforcement challenge is something of an anomaly, given the general rule that "a party

---

[37] *See United States v. Lopez-Urgel*, 351 F.Supp.3d 978, 989 n.7 (W.D. Tex. 2018) (Pitman, J.) ("Subject-matter jurisdiction properly comprehended . . . refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived.") (citations and internal quotation marks omitted).
[38] *See generally* ECF 38, p. 34.
[39] ECF 36 at n. 23.
[40] *See generally* ECF 38.
[41] *Id.*, pp. 34–36.

cannot challenge a statute as-applied unless the statute has been applied to him."[42] Typically, such a pre-enforcement claim would proceed as a facial challenge—a standard which Plaintiffs have done nothing to meet in either their motion or reply—even when Plaintiffs are arguing that the rule would be applied to "a class to which the plaintiff belongs."[43] There is no reason to think Plaintiffs are likely to succeed on the rare as-applied pre-enforcement claim here, where they have given no reason to believe any campus rules other than the unchallenged time, place, and manner rules would be applied to them. Plaintiffs' contrived as-applied claim, as they now express it, is speculative and premature and should be rejected.[44]

And because Plaintiffs also did nothing to show their likelihood of succeeding on a facial challenge under *Moody v. NetChoice, LLC.*, they have abandoned their facial challenge as a basis for supporting their request for injunctive relief[45]

***Third***, Plaintiffs say on page 35 of their reply that Defendants omit a forum analysis.[46] Plaintiffs did not themselves engage in a forum analysis[47] in their motion,[48] abandoning the issue. Nor does this lawsuit implicate a forum analysis because *Tinker* controls:

> [C]onduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech.[49]

---

[42] *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006); *see also Justice v. Hosemann*, 771 F.3d 285, 292–95 (5th Cir. 2014); *Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1386 (7th Cir. 1992).

[43] *Speech First*, 979 F.3d at 334-35.

[44] *See Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002).

[45] 144 S.Ct. 2383 (2024).

[46] ECF 38, p. 31.

[47] *See, e.g., Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 344–47 (5th Cir. 2001) (outlining the distinct forum categories and the varying level of scrutiny applied to each).

[48] *See generally* ECF 21.

[49] *Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503, 512–13 (1969) (citation omitted).

Plaintiffs suggest that *Tinker* does not apply to viewpoint discrimination or in the university setting,[50] but Plaintiffs offer no controlling authority showing otherwise. By contrast, Defendants provided ample support in their response showing that *Tinker* applies to viewpoint discrimination[51] and in the university setting.[52] The Court may thus ignore Plaintiffs' unsupported argument.

**Fourth**, the reply brief includes new mootness arguments regarding the relief sought against UTSA President Taylor Eighmy.[53] In those arguments, Plaintiffs confuse the standing and sovereign immunity analyses, and so they fail to address both. Specifically, Plaintiffs spend all their time suggesting that the Court should disregard sworn statements by UTSA officials and so they do nothing to respond to the lack of demonstrated willingness to enforce the prior "rule."[54] This difference is salient as DSA must show that UTSA officials have a demonstrated willingness to enforce this "rule" to overcome UTSA President Eighmy's sovereign immunity on an official-capacity claim.[55] The Fifth Circuit found a more circumscribed statement than L.T. Robinson's indicating an official had no willingness to enforce a rule defeated jurisdiction on an official-capacity claim.[56]

And even as to mootness, Plaintiffs ignored that courts may treat voluntary governmental cessation of possibly wrongful conduct with solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity.[57] Indeed, "[w]ithout evidence to the contrary," which Plaintiffs do not provide, "[Courts] assume that formally announced changes to official governmental policies are not mere litigation posturing."[58] Thus, even if the Court finds that UTSA

---

[50] ECF 38, pp. 25–29.
[51] ECF 32, p. 37, n. 246.
[52] *Id.*, p. 37.
[53] ECF 38, pp. 21–23.
[54] *Id.*
[55] *See, e.g., Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (citation omitted)
[56] *See Mi Familia Vota v. Ogg*, 105 F.4th 313, 330–31 (5th Cir. 2024).
[57] *See, e.g., Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) (citations omitted).
[58] *Id.*

adopted a "rule" prohibiting students on campus from using their favored slogan, Dean Robinson's declaration that UTSA has no such rule and will not enforce one going forward[59] moots this claim.[60]

**Fifth**, Plaintiffs make a new overbreadth argument on page 16 of their reply.[61] An overbreadth claim arises when a plaintiff alleges that a statute *did not* violate their First Amendment rights, but would violate the rights of others if applied to them.[62] Plaintiffs did not bring an overbreadth claim[63] and so they cannot pursue this argument. Plaintiffs also suggest that the Court can ignore the canon of constitutional avoidance in the overbreadth context,[64] but the Supreme Court's "cases offer no support for that proposition. In this context, as in others, ordinary principles of interpretation apply."[65]

**Sixth**, Plaintiffs bring in new facts in arguing that Governor Abbott is a proper defendant.[66] As ostensible support, Plaintiffs point to news media, a reported political rebuke by Travis County Attorney Garza, and a reported statement by DPS that it had deployed officers at the direction of Governor Abbott.[67] But Plaintiffs offer no factual support *of any kind* showing that Governor Abbott was enforcing GA-44, and do not create any factual dispute with the University Defendants' declarations showing that they had requested mutual aid to respond to materially disruptive protests that flouted content-neutral time, place, and manner regulations.[68] Plaintiffs also ignore the more basic point that *Ex parte Young* only applies if an official has the "particular duty"—beyond mere

---

[59] ECF 31-5, ¶¶ 8–16.
[60] *See, e.g., Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990) ("The mootness doctrine requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process.").
[61] ECF 38, p. 16.
[62] *See United States v. Hansen*, 599 U.S. 762, 769 (2023); *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 633–34 (1980); *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 41–42 (2d Cir. 2015).
[63] *See generally* ECF 20.
[64] ECF 38, p. 12.
[65] *United States v. Hansen*, 599 U.S. 762, 781 n.3 (2023).
[66] ECF 38, pp. 4–6.
[67] *Id.*
[68] *See, e.g.*, ECF 32, p. 14.

discretionary authority—"to enforce the statute in question."[69] GA-44 does not create any identifiable duty in Governor Abbott to enforce its provisions, and Plaintiffs' argument is meritless.

**Seventh**, Plaintiffs claim that the Board of Regents Defendants are proper parties.[70] The Board of Regents Defendants had no directive to adopt the definition that Plaintiffs challenge, and Plaintiffs cannot point to any specific enforcement connection—only general duties unrelated to GA-44.[71] Plaintiffs' argument for jurisdiction over the Board of Regents Defendants fails.

Dated:  September 4, 2024
Austin, Texas

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

RYAN WALTERS
Chief, Special Litigation Division

/s/ Cole P. Wilson
COLE P. WILSON
Assistant Attorney General
Attorney-in-charge
Texas State Bar No. 24122856
Cole.Wilson@oag.texas.gov

TODD DICKERSON
Assistant Attorney General
Texas State Bar No. 24118368
Todd.Dickerson@oag.texas.gov

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1309 | Fax: (512) 320-0667

JACOB E. PRZADA
Special Counsel
Texas State Bar No. 24125371
Jacob.Przada@oag.texas.gov

Office of the Attorney General
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

*Counsel for Defendants*

---

[69] *Tex. All. for Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022); *Ogg*, 105 F.4th at 327.
[70] ECF 38, pp. 6–8.
[71] *See City of Austin v. Paxton*, 943 F.3d 993, 999–1000 (5th Cir. 2019) (citation omitted).

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on all counsel of record on September 4, 2024, using the Federal Court CM/ECF system.

/s/ Cole P. Wilson