**FILED**

September 12, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ pg _____

DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

STUDENTS FOR JUSTICE IN §
PALESTINE AT THE UNIVERSITY OF §
HOUSTON, et al., §
§
§
Plaintiffs, §
§
v. §            No. 1:24-CV-523-RP
§
GREG ABBOTT, *in his official capacity only as* §
*the Governor of the State of Texas*, et al., §
§
Defendants. §

---

## REPLY IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

---

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

RYAN WALTERS
Chief, Special Litigation Division

COLE P. WILSON
Assistant Attorney General
Attorney-in-charge
Texas State Bar No. 24122856
Cole.Wilson@oag.texas.gov

TODD DICKERSON
Assistant Attorney General
Tex. State Bar No. 24118368
Todd.Dickerson@oag.texas.gov

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1309 | Fax: (512) 320-0667

JACOB E. PRZADA
Special Counsel
Texas State Bar No. 24125371
Jacob.Przada@oag.texas.gov

Office of the Attorney General
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

**COUNSEL FOR DEFENDANTS**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................................iii

INTRODUCTION ................................................................................................................................1

    I.    Plaintiffs Abandon Numerous Issues and Claims. ...................................................2

    II.    *Tinker* applies to Student Speech on the University Defendants' Campuses.........................2

    III.    Plaintiffs Introduce No Facts to Survive Defendants' Factual Jurisdictional Challenge. .....3

    IV.    Plaintiffs Limit the First Claim in their Amended Complaint to a Facial Pre-Enforcement
        Challenge, but They Do Not Defend that Claim under *Moody*.................................................4

    V.    Plaintiffs Attempt an End Run around Article III's Redressability Requirement. ...............5

    VI.    DSA Conflates UTSA President Eighmy's Justiciability Arguments, and thus Fails to
        Make Full Contact with Each of Them..............................................................................6

    VII.    Defendants Provided Facts Competent for the Court's Consideration on a Rule 12(b)(6)
        Challenge, but Plaintiffs Misrepresent or Otherwise Ignore Those Facts. ...........................7

    VIII.    Plaintiffs Fail to Plead Facts that Overcome Defendants' Qualified Immunity. ..................9

    IX.    Plaintiffs Do Not Show an Enforcement Connection for their Official-Capacity Claims.11

    X.    Plaintiffs' Associational and Organizational Standing Arguments Ignore Key Issues........12

    XI.    Plaintiffs also Ignore the Canon of Constitutional Avoidance...............................................13

CONCLUSION ..................................................................................................................................13

CERTIFICATE OF SERVICE ............................................................................................................15

TABLE OF AUTHORITIES

**Federal Decisions**

*Ashcroft v. Iqbal*,
   556 U.S. 662.................................................................................................................................1

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) ...................................................................................................................10

*Ass'n of Amer. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
   627 F.3d 547 (5th Cir. 2010) .....................................................................................................12

*Babinski v. Sosnowsky*,
   79 F.4th 515 (5th Cir. 2023) ......................................................................................................10

*Bell v. Itawamba Cnty. Sch. Bd.*,
   799 F.3d 379 (5th Cir. 2015) .....................................................................................................10

*Black v. Panola Sch. Dist.*,
   461 F.3d 584 (5th Cir. 2006) .......................................................................................................2

*Calif. v. Tex.*,
   593 U.S. 659 (2021) .....................................................................................................................5

*Cell Sci. Sys. Corp. v. La. Health Serv.*,
   804 F. App'x 260 (5th Cir. 2020)................................................................................................4

*Clark v. Martinez*,
   543 U.S. 371 (2005) ...................................................................................................................13

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) .......................................................................................................8

*DeJohn v. Temple Univ.*,
   537 F.3d 301 (3d Cir. 2008).........................................................................................................3

*Dorsey v. Portfolio Equities, Inc.*,
   540 F.3d 333 (5th Cir. 2008) .......................................................................................................8

*Dudley v. Angel*,
   209 F.3d 460 (5th Cir. 2000) .......................................................................................................9

*Evans v. Tubbe*,
   657 F.2d 661 (5th Cir. 1981) .......................................................................................................4

*Hartman v. Walker*,
   685 F. App'x 366 (5th Cir. 2017)................................................................................................8

*Haverkamp v. Linthicum*,
   6 F.4th 662 (5th Cir. 2021) ........................................................................................................12

*Heidi Grp., Inc. v. Tex. Health & Hum. Servs. Comm'n*,
   No. A-22-CV-294-RP, 2022 WL 22844392 (W.D. Tex. July 5, 2022).....................................8

*Hosp. Internists of Austin, P.A. v. Quantum Plus, LLC*,
   No. 1:18-CV-466-RP, 2019 WL 1922051 (W.D. Tex. Jan. 23, 2019) .......................................2

*Inclusive Cmtys. Project, Inc. v. Dep't of Treas.*,
   946 F.3d 649 (5th Cir. 2019) .......................................................................................................6

*Kitty Hawk Aircargo, Inc. v. Chao*,
   418 F.3d 453 (5th Cir. 2005) .......................................................................................................8

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ...................................................................................................... 4, 13

*McClendon v. City of Columbia*,
   305 F.3d 314 (5th Cir. 2002) ...................................................................................... 9

*Menchaca v. Chrysler Credit Corp.*,
   613 F.2d 507 (5th Cir. 1980) ...................................................................................... 1

*Mi Familia Vota v. Abbott*,
   977 F.3d 461 (5th Cir. 2020) ...................................................................................... 12

*Mi Familia Vota v. Ogg*,
   105 F.4th 313 (5th Cir. 2024) .................................................................................. 6, 7

*Minn. RFL Repub. Farmer Lab. Caucus v. Freeman*,
   33 F.4th 985 (8th Cir. 2022) ...................................................................................... 7

*Moody v. NetChoice, LLC.*,
   144 S. Ct. 2383 (2024) ................................................................................................ 4

*Morgan v. Swanson*,
   610 F.3d 877 (5th Cir. 2010) ...................................................................................... 9

*Morgan v. Swanson*,
   659 F.3d 359 (5th Cir. 2011) .................................................................................. 9, 11

*Paterson v. Weinberger*,
   644 F.2d 521 (5th Cir. 1981) ...................................................................................... 4

*Reule v. Jackson*,
   No. 23-40478, 2024 WL 3858127 (5th Cir. Aug. 19, 2024) .................................... 5

*Rhines v. Salinas Const. Techs., Ltd.*,
   No. CIV.A. C-11-262, 2011 WL 4688706 (S.D. Tex. Oct. 3, 2011) ........................ 8

*Richardson v. Flores*,
   28 F.4th 649 (5th Cir. 2022) ...................................................................................... 12

*Rosenberger v. Rector & Visitors of University of Virginia*,
   515 U.S. 819 (1995) .................................................................................................... 3

*Salas v. Carpenter*,
   980 F.2d 299 (5th Cir. 1992) ...................................................................................... 9

*Skelly Oil Co. v. Phillips Petroleum Co.*,
   339 U.S. 667 (1950) .................................................................................................... 5

*Sossamon v. Lone Star State of Tex.*,
   560 F.3d 316 (5th Cir. 2009) ...................................................................................... 6

*Speech First, Inc. v. Fenves*,
   979 F.3d 319 (5th Cir. 2020) ...................................................................................... 6

*Spokeo, Inc. v. Robbins*,
   578 U.S. 330 (2016) .................................................................................................... 13

*Stratta v. Roe*,
   No. 6:18-CV-00114-ADA, 2021 WL 1199634 (W.D. Tex. Mar. 30, 2021) ............ 2

*Vega v. City of El Paso*,
   No. EP-21-CV-001 16-DCG, 2022 WL 789334 (W.D. Tex. Mar. 15, 2022) .......... 8

*Zinter v. Salvaggio*,
   610 F. Supp. 3d 919 (W.D. Tex. 2022) .................................................................... 8

**Constitutional Provisions, Rules, and Statutes**

Fed. R. Civ. P. 12(b)(6)..............................................................................................8

Fed. R. Evid. 201 .......................................................................................................8

Tex. Gov. Code § 448.001(2) ...................................................................................12

U.S. Const. amend I..........................................................................................*passim*

**INTRODUCTION**

Week by week, Plaintiffs have reconstructed their claims to avoid the brunt of Defendants' arguments.[1] Now, for the first time, Plaintiffs say "the only as-applied challenges to GA-44 are on behalf of DSA and PSC-UT for Defendants' application of GA-44 to promulgate a rule against chanting 'from the river to the sea' and to preemptively cancel PSC-UT's protests respectively."[2] Plaintiffs' "facial challenge, on the other hand, is a pre-enforcement challenge on behalf of all Plaintiffs to protect students from the future application of GA-44's unconstitutional directives, in particular the Israel-specific speech code embedded in Defendants' definition of antisemitism."[3] Plaintiffs' claims have not become any more plausible through iteration.

While Plaintiffs contend that the Defendants have or will *apply* GA-44 rather than the campus policies they administer, the Court is not bound to accept Plaintiffs' implausible theory.[4] GA-44 calls on Texas public universities to "review and update" campus speech policies and then ensure that *those policies* are being enforced,[5] so it is too attenuated to suggest that any Defendant, at any point, has or ever could apply this order to Plaintiffs. The success of Plaintiffs' lawsuit thus depends on the Court accepting Plaintiffs' implausible factual allegations as true while ignoring the reality of what GA-44 says, how the University Defendants revised their policies, and what was happening on college campuses this past Spring. Plaintiffs avoid confronting that reality,[6] but the Court should not.[7]

---

[1] *Compare* ECF 20, *with* ECF 38, pp. 7–11 (Plaintiffs' preliminary injunction reply) and ECF 50, pp. 9, 12 (Plaintiffs' response to Defendants' motion to dismiss).

[2] ECF 50, p. 9.

[3] *Id.*; *see also id.*, p. 12.

[4] *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (explaining that judges should use their "experience and common sense" when analyzing whether claims are plausible).

[5] ECF 21-1, p. 3.

[6] *Infra*, pp. 3–4.

[7] "[A] factual attack under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citation and internal quotation marks omitted).

## I.     Plaintiffs Abandon Numerous Issues and Claims.

Plaintiffs may have voluntarily dismissed their individual-capacity claims against the UT and UH System Boards of Regents members and UH President and Chancellor Renu Khator,[8] but these are not the only claims that Plaintiffs abandon. Defendants pointed out in their motion to dismiss that Plaintiffs could not establish jurisdiction over the UT and UH System Boards of Regents or UH as state government *entities*[9] and that none of these Defendants were "persons" under 42 U.S.C. § 1983,[10] but Plaintiffs did not respond to these points.[11] SJP-UTD also made no specific arguments in defense of its pre-enforcement claim.[12] Nor did Plaintiffs respond to Defendants' argument that they cannot seek damages as organizations or on behalf of their members on their individual-capacity claims against President Eighmy and President Hartzell.[13] By failing to respond to Defendants' motion on these points, Plaintiffs abandoned these claims.[14]

## II.     *Tinker* applies to Student Speech on the University Defendants' Campuses.

Plaintiffs make four separate contentions regarding the applicability of *Tinker v. Des Moines Independent Community School District*[15] to this case, but each of them is meritless. **First**, Plaintiffs say that "*Tinker* has never been applied to the university setting in the Fifth Circuit,"[16] but Defendants previously cited Fifth Circuit decisions applying *Tinker* in this setting.[17]

---

[8] ECF 48.
[9] ECF 31, p. 28.
[10] *Id.*, p. 43.
[11] *See generally* ECF 50.
[12] *Id.*; *see also infra*, pp. 4–5.
[13] ECF 31, p. 36.
[14] *See Stratta v. Roe*, No. 6:18-CV-00114-ADA, 2021 WL 1199634, at *6 (W.D. Tex. Mar. 30, 2021) (Albright, J.) ("A party's failure to respond to arguments raised in a Rule 12 motion constitutes waiver or abandonment of those issues.") (citing *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *accord Hosp. Internists of Austin, P.A. v. Quantum Plus, LLC*, No. 1:18-CV-466-RP, 2019 WL 1922051, at *6 (W.D. Tex. Jan. 23, 2019) (Pitman, J.).
[15] 393 U.S. 503 (1969).
[16] ECF 50, p. 14.
[17] ECF 31, p. 46 note 313.

**Second**, Plaintiffs claim that "*Tinker* cannot be used . . . to justify viewpoint discrimination,"[18] referring the Court to *Rosenberger v. Rector & Visitors of University of Virginia*,[19] but that case does not stand for the broad proposition for which Plaintiffs offer it.[20] Plaintiffs also overlook contrary precedent cited by Defendants.[21]

**Third**, Plaintiffs insist that *Tinker* does not apply "because speech restrictions in the university setting raise very different questions from those in the grade school context."[22] While it is true that courts give a greater level of deference to grade school administrators,[23] the two cases Plaintiffs cite as support do not support Plaintiffs' suggestion that *Tinker* does not apply because of those different questions or concerns. Again, Plaintiffs do not confront the decisions in Defendants' motion showing *Tinker*'s applicability.[24]

**Finally**, Plaintiffs say that *Tinker* is less likely to apply at Texas public universities because Texas law treats "common outdoor areas" on public campuses as traditional public forums.[25] Plaintiffs offer no support for this limitation; nor does *Tinker* support it,[26] as Defendants pointed out in their surreply to Plaintiffs' motion for a preliminary injunction.[27]

## III. Plaintiffs Introduce No Facts to Survive Defendants' Factual Jurisdictional Challenge.

In their motion, Defendants "challenge[d] the Court's jurisdiction both facially and factually."[28] To support their factual challenge, Defendants relied on declarations from numerous

---

[18] ECF 50, p. 14.
[19] 515 U.S. 819 (1995).
[20] *Id.* at 834–35 (discussing requirement of viewpoint neutrality in the government's provision of financial benefits)
[21] ECF 31, p. 46 note 312.
[22] ECF 50, p. 14 (internal quotation marks and citations omitted).
[23] *See, e.g.*, *DeJohn v. Temple Univ.*, 537 F.3d 301, 316 (3d Cir. 2008) ("[I]n determining whether Temple University's policy passes constitutional muster under our reasoning in *Saxe* [*v. State Coll. Area Sch. Dist.*], we keep in mind that Temple's administrators are granted *less leeway* in regulating student speech than are public elementary or high school administrators.") (emphasis in original).
[24] ECF 31, p. 46 notes 312–313.
[25] ECF 50, p. 15.
[26] *Tinker*, 393 U.S. at 512–13.
[27] ECF 51, p. 9.
[28] ECF 31, p. 24.

witnesses, among other things. Rather than respond to Defendants' factual attack, Plaintiffs lean on the presumption given to the allegations in their complaint on a *facial* jurisdictional challenge.[29] But no such presumption applies on a factual jurisdictional attack.[30]

Unlike a facial challenge to jurisdiction, which focuses on a plaintiff's allegations, "[a] factual attack . . . challenges the existence of subject matter jurisdiction in fact, *irrespective of the pleadings*[.]"[31] On a factual attack, "matters outside the pleadings, such as testimony and affidavits, are considered." Thus, to overcome Defendants' factual attack, Plaintiffs needed "to submit facts through some evidentiary method" to carry their "burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction."[32] Plaintiffs attached no evidence to their opposition, and so they failed to establish the Court's subject-matter jurisdiction on all claims and Defendants.[33]

## IV.   Plaintiffs Limit the First Claim in their Amended Complaint to a Facial Pre-Enforcement Challenge, but They Do Not Defend that Claim under *Moody*.

Plaintiffs did nothing to establish the requirements for stating a facial First Amendment challenge as recently expressed by the Supreme Court in *Moody v. NetChoice, LLC*.[34] Under *Moody*, this Court must first assess "[w]hat activities, by what actors, [does GA-44] prohibit or otherwise regulate?"[35] This requires analyzing who GA-44 regulates, and how.[36] Second, this Court must "decide which of [GA-44's] applications violate the First Amendment, and to measure them against the rest."[37] This Court must inspect "*every* covered [entity]" and GA-44's "*full* range of application[s]" to assess

---

[29] ECF 50, p. 8.

[30] *See Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981) ("Unlike in a facial attack where jurisdiction is determined upon the basis of the allegations of the complaint, accepted as true when a factual attack is made upon federal jurisdiction, no presumptive truthfulness attaches to the plaintiffs' jurisdictional allegations.").

[31] *Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 263 (5th Cir. 2020).

[32] *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

[33] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted). Among the many jurisdictional facts Plaintiffs fail to establish or controvert, UT Austin officials explained that they did not consider GA-44 when deciding how to respond to PSC-UT's April protests. *Declaration of Katie McGee*, ECF 31-4, p. 24 ¶ 47.

[34] 144 S. Ct. 2383 (2024).

[35] *Id.* at 2398.

[36] *Id.*

[37] *Id.*

the extent of the burden on Plaintiffs' members' First Amendment rights.[38] Defendants identified

several constitutional applications of GA-44 in their motion,[39] but Plaintiffs ignored this inquiry.

## V.     Plaintiffs Attempt an End Run around Article III's Redressability Requirement.

Plaintiffs make three redressability arguments—all of them meritless. *First*, Plaintiffs say their

"as-applied challenge to GA-44" is redressable by enjoining "Defendants' GA-44-directed conduct,"[40]

but this formulation of Plaintiffs' claims ignores that GA-44 has not been applied to them. Plaintiffs

bring two as-applied claims: one against President Hartzell and one against President Eighmy.[41] As to

PSC-UT's as-applied claim against President Hartzell, their alleged injuries would not be redressed by

an injunction against GA-44 because UT Austin officials did not apply GA-44.[42] In fact, they had yet

to revise their policies in response to GA-44 at the time of Plaintiffs' Spring protests and applied pre-

existing content-neutral time, place, and manner regulations that PSC-UT avoids confronting.[43] And

as to DSA's claim against President Eighmy, they allege that UTSA officials applied a campus "rule"

barring use of their favored slogan,[44] so DSA's request for an injunction against GA-44 would do

nothing to redress their alleged injury. Plaintiffs also ignore that UTSA has no such campus "rule."[45]

*Second*, Plaintiffs say that an order declaring GA-44 unlawful would redress their alleged

injuries as to all their claims.[46] Plaintiffs provide the Court no support for this proposition, and they

overlook contrary black letter law holding that "the type of remedy sought cannot relieve [a plaintiff]

of their obligation to establish that they have standing to seek any remedy at all."[47]

---

[38] *Id.*
[39] ECF 31, pp. 56–57.
[40] ECF 50, p. 14.
[41] *Id.*, pp. 9, 12
[42] ECF 31-4, p. 24 ¶ 47.
[43] *Id*; *see also id.*, p. 28 ¶ 60.
[44] ECF 50, pp. 5–7.
[45] *Declaration of LaTonya Robinson*, ECF. 31-5, ¶¶ 8–16.
[46] *Id.*, p. 10.
[47] *Reule v. Jackson*, No. 23-40478, 2024 WL 3858127, at *6 (5th Cir. Aug. 19, 2024) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)); *accord Calif. v. Tex.*, 593 U.S. 659, 672 (2021) (citations omitted).

***Third***, Plaintiffs say that an injunction barring "the inevitable implementation of GA-44's directives" would redress their prospective injuries.[48] But the University Defendants *already have* revised their campus policies in response to GA-44, so the Court does not need to guess at how they will implement GA-44.[49] Plaintiffs' argument also ignores the fact that any future (or current) speech restrictions would come from the University Defendants' policies, not GA-44, so Plaintiffs' challenge to GA-44 alone cannot redress their claimed injuries—a point[50] Plaintiffs fail to address.

## VI. DSA Conflates UTSA President Eighmy's Justiciability Arguments, and thus Fails to Make Full Contact with Each of Them.

As with Plaintiffs' reply in support of their motion for a preliminary injunction, DSA again conflates President Eighmy's mootness arguments with the separate issue of whether he has a demonstrated willingness to enforce a prior "rule" (as Plaintiffs improperly call it) pertaining to expression of their favored slogan.[51] As to mootness, Plaintiffs ignored that courts treat voluntary governmental cessation of possibly wrongful conduct with solicitude: "[w]ithout evidence to the contrary," which Plaintiffs do not provide, "[courts] assume that formally announced changes to official governmental policies are not mere litigation posturing."[52] Dean Robinson's declaration moots Plaintiffs' standalone claim against President Eighmy.[53]

And as to sovereign immunity, DSA strains to distinguish *Mi Familia Vota v. Ogg*,[54] insinuating that the Fifth Circuit found Ogg to have no demonstrated willingness to enforce a law only because

---

[48] ECF 50, p. 14.
[49] *See Inclusive Cmtys. Project, Inc. v. Dep't of Treas.*, 946 F.3d 649, 655 (5th Cir. 2019) ("To satisfy redressability, a plaintiff must show that it is *likely*, as opposed to merely *speculative*, that the injury will be redressed by a favorable decision.") (emphasis in original; citation and internal marks omitted).
[50] ECF 31, pp. 35–37.
[51] ECF 50, pp. 6–7.
[52] *See, e.g., Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009) (citations omitted).
[53] Plaintiffs refer the Court to *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020), as supposed support for their arguments against mootness. ECF 50, pp. 6–7. The *Fenves* Court focused (among other things) on the facts that the defendant university had not issued any controlling statement of future intention and had continued to defend the original policies. *Speech First*, 979 F.3d at 328–29. Those facts are not evident here: UTSA's policies do not contain the rule DSA complains of, Dean Robinson issued a controlling statement of UTSA's future intention, and President Eighmy's defense of the prior "rule" focuses on DSA's mischaracterization of whether it existed as they envision it. *See generally* ECF 31.
[54] 105 F.4th 313 (5th Cir. 2024).

she had taken no actions with respect to the challenged statute.[55] While it is true the Fifth Circuit noted the absence of enforcement contemporaneous with the passage of S.B. 1 into law,[56] the Court separately highlighted "*Ex parte Young*'s foundational requirement that a violation of federal law be *ongoing*."[57] The Court underscored that official attestations are important to this inquiry, and that other circuits have found such attestations sufficient to "negate[] the charge of a demonstrated willingness to enforce."[58] Additionally, unlike Ogg, who had no control over whether S.B. 1 continued in existence during or after that lawsuit, Dean Robinson has attested that UTSA revised its campus policies on June 7, that those policies do not contain the "rule" DSA complains of, and that no official at UTSA will adopt or apply any such "rule" in the future.[59] But as in *Ogg*, DSA's "refusal to agree" with or accept UTSA's official attestation changes absolutely nothing.[60]

## VII.   Defendants Provided Facts Competent for the Court's Consideration on a Rule 12(b)(6) Challenge, but Plaintiffs Misrepresent or Otherwise Ignore Those Facts.

Plaintiffs complain that Defendants have introduced external sources showing that Plaintiffs' allegations are not just implausible, but outright dishonest.[61] It is true that Defendants asked the Court to take judicial notice of two points in their motion (among others), but Plaintiffs cannot *genuinely* dispute them: (1) Plaintiffs were part of a nationwide movement intent on disrupting campuses, and (2) antisemitism is pervasive at many colleges and universities across the country and has spiked due to pro-Palestinian protestors.[62] Regarding the second point, Plaintiffs stipulate that "there certainly has been an uptick in antisemitic incidents," though they also attempt to distract the Court with an

---

[55] ECF 50, p. 6.

[56] 105 F.4th at 330.

[57] *Id.* at 331 (citation omitted; emphasis in original).

[58] *Id.* (citing *Minn. RFL Repub. Farmer Lab. Caucus v. Freeman*, 33 F.4th 985, 992 (8th Cir. 2022)). The Fifth Circuit did not find that an attestation alone can insulate an official from *Ex parte Young*'s exception to sovereign immunity, but it left that question open. *Id.*

[59] *Declaration of LaTonya Robinson*, ECF. 31-5, ¶¶ 8–16.

[60] *Id.* Plaintiffs insist that the Court must ignore the factual record before it and instead rely on the baseless allegations in their complaint. ECF 50, p. 11

[61] ECF 50, pp. 10–12.

[62] ECF 31, pp. 39–40.

article critical of how the ADL compiled its data—just one of Defendants' sources.[63] And regarding the first, Plaintiffs' lawyers deny that Plaintiffs acted as part of a larger movement,[64] but one of Plaintiffs' members admits that SJP set up encampments "*as part of a larger nationwide movement.*"[65]

Regardless, consideration of judicially noticed facts is proper on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),[66] and the Court "must take judicial notice if a party requests it and the court is supplied with necessary information."[67] To this end, "[g]overnment websites are presumptively reliable and subject to judicial notice,"[68] and Plaintiffs do not dispute that the Court may rely on the 2024 OCR Dear Colleague Letter, which "responds to recent increases in complaints . . . alleging discrimination."[69] Nor is it genuinely subject to dispute that pro-Palestinian protestors set up encampments and disrupted campuses across the country last Spring.[70]

Defendants also provided the Court with the actual campus policies referenced in Plaintiffs' Amended Complaint and central to their claims,[71] social media posts and video produced and published *by Plaintiffs,*[72] and statements by Defendants posted on government websites so the Court could decide this motion on reliable sources[73] rather than Plaintiffs' self-serving mischaracterizations.[74]

---

[63] ECF 50, pp. 12–13.

[64] *Id.*, p. 12.

[65] ECF 21-2, ¶ 8(c).

[66] *See, e.g., Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008); *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir. 2000).

[67] Fed. R. Evid. 201.

[68] *Rhines v. Salinas Const. Techs., Ltd.,* No. CIV.A. C-11-262, 2011 WL 4688706, at *2 n.2 (S.D. Tex. Oct. 3, 2011) (citing *Kitty Hawk Aircargo, Inc. v. Chao,* 418 F.3d 453, 457 (5th Cir. 2005)).

[69] *2024 OCR Dear Colleague Letter.*

[70] ECF 31, pp. 3–17.

[71] *Id.*, pp. 18–19 notes 120–125, 134–139.

[72] *Id.*, pp. 11–16 notes 70–106; *see also Zinter v. Salvaggio,* 610 F. Supp. 3d 919, 930 (W.D. Tex. 2022), *appeal dismissed,* No. 22-50700, 2022 WL 18587913 (5th Cir. Nov. 17, 2022) (noting that "Plaintiffs have also posted some videos of these encounters on YouTube instead of submitting them as exhibits. Because these videos reproduce events captured by the officers' body cams, the Court takes judicial notice of their contents and considers them among the evidence submitted.") (citing Fed. R. Evid. 201(b)).

[73] "[A] defendant may attach a copy of a public document on which plaintiff's allegations rely, and the court may take judicial notice of documents of public record." *Heidi Grp., Inc. v. Tex. Health & Hum. Servs. Comm'n,* No. A-22-CV-294-RP, 2022 WL 22844392, at *1 (W.D. Tex. July 5, 2022) (Pitman, J).

[74] Notably, "[o]ne caveat to considering videos on a Rule 12(b)(6) motion is that 'the court is not required to favor plaintiff's allegations over the video evidence.'" *Vega v. City of El Paso,* No. EP-21-CV-001 16-DCG, 2022 WL 789334, at *4 (W.D. Tex. Mar. 15, 2022) (quoting *Hartman v. Walker,* 685 F. App'x 366, 368 (5th Cir. 2017)).

**VIII.   Plaintiffs Fail to Plead Facts that Overcome Defendants' Qualified Immunity.**

Defendants invoked their qualified immunity for "[a]ll of Plaintiffs' individual-capacity claims,"[75] but Plaintiffs misconstrue Defendants' motion to suggest that only President Hartzell raised qualified immunity, and only as to PSC-UT's "pre-textual cancellation" claim.[76] Plaintiffs rely on this misreading to their own detriment, neglecting to carry their burden of overcoming the defense as to the individual-capacity claims against both President Eighmy and President Hartzell.[77] Plaintiffs' response exposes three sets of deficiencies in their pleading.

*First*, a government official is entitled to qualified immunity unless *all* reasonable officials would have realized that the challenged conduct was proscribed by law at the time the official acted and under the circumstances the official acted.[78] Plaintiffs point to the panel decision in *Morgan v. Swanson* as support for the qualified immunity arguments,[79] but Plaintiffs neglect to mention that the panel decision is not good law because the Fifth Circuit granted rehearing en banc and wrote a new decision that reached the opposite result. Where the panel decision had noted the plaintiffs' allegation that "their actions did not cause substantial and material disruption of school operations" as grounds for overcoming qualified immunity,[80] a fact that Plaintiffs here do not allege (nor could they),[81] the en banc Court's decision affirmed the defendants' qualified immunity, explaining that "existing precedent failed to place the constitutionality of [the school principals'] conduct 'beyond debate.'"[82]

---

[75] ECF 31, p. 59. Because Plaintiffs dismissed their individual-capacity claims against the Boards of Regents' members and UH President and Chancellor Khator (ECF 48), only Plaintiffs' claims against Presidents Eighmy and Hartzell are at issue.
[76] ECF 50, p. 16.
[77] *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) ("When a Defendant invokes qualified immunity, the burden is on the Plaintiff to demonstrate the inapplicability of the defense.").
[78] *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000).
[79] 610 F.3d 877 (5th Cir. 2010).
[80] *Id.* 884, 889–90.
[81] Plaintiffs highlight the allegation that they had told campus administrators they would not violate campus rules (ECF 50, p. 14), but they cite no authority showing that campus administrators must rely on student protestors' declared intentions—especially when those "intentions" were not born out and conflicting intentions were also publicly declared.
[82] *Morgan v. Swanson*, 659 F.3d 359, 389–90 (5th Cir. 2011); *but see id.* 371 (noting the case involved religious speech in schools, which requires administrators to balance "the Supreme Court's school-speech precedents, the general prohibition on viewpoint discrimination, and the murky waters of the Establishment Clause").

Ample judicially noticeable sources show that the University Defendants' responses to disruptive campus protests were hardly unique.[83] Still, Plaintiffs fail to show that *all* reasonable campus officials would have believed precedent barred them from regulating campus protests after forecasting that Plaintiffs' protests likely would violate University rules and materially disrupt school operations,[84] or, alternatively, from regulating campus protests they might reasonably believe had or would invade the rights of other students by exposing them to a severe, pervasive, and objectively offensive discriminatory environment.[85]

***Second***, Plaintiffs do not allege a constitutional violation with a sufficient level of specificity. To be clearly established, "there must be a 'high degree of specificity' between the alleged misconduct and the caselaw purporting to clearly establish the violation,"[86] but Plaintiffs improperly reframe this inquiry in the following general terms: "is the cancellation of a protest because of the protest's anticipated conduct and the viewpoint of the speakers a clearly established violation of the First Amendment?"[87] Sitting en banc, the Fifth Circuit confronted an identical attempt to elide "the complexities of applying *Tinker*" in *Morgan*, where "the plaintiffs urge[d] that the law is clearly established in light of the general First Amendment rule disfavoring viewpoint discrimination."[88] The en banc Court rejected this argument, noting that "this rule is far too general to clearly establish the law in this case . . . ."[89] Indeed, "[n]o matter how 'axiomatic' the generalized rule against viewpoint discrimination may be, we cannot neglect that this case arises in the public schools, a special First Amendment context, which admits of no categorical prohibition on viewpoint discrimination."[90]

---

[83] ECF 31, pp. 16–17.
[84] *Bell v. Itawamba Cnty. Sch. Bd.*, 799 F.3d 379, 397 (5th Cir. 2015).
[85] ECF 31, pp. 53–56.
[86] *Babinski v. Sosnowsky*, 79 F.4th 515, 524 (5th Cir. 2023).
[87] ECF 50, p. 17.
[88] 659 F.3d at 378.
[89] *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).
[90] *Id.* at 379 (citations omitted).

***Third***, Plaintiffs fail to plead plausible allegations showing that President Hartzell cancelled a PSC-UT demonstration and suspended the organization due to the content or viewpoint of the group's speech, and that reliance on UT Austin's content-neutral time, place, and manner regulations was mere pretext. Plaintiffs do nothing to confront the fact that UT Austin permitted "13 pro-Palestinian events [to] take place during the[] several months" preceding April 25.[91] Nor does PSC-UT plausibly show how President Hartzell could rely on GA-44 when cancelling their protest,[92] which gives no specific duty to university presidents or any specific direction in how to implement GA-44's provisions—aside from incorporating a definition of antisemitism into university policies.[93]

Rather than attempt to rebut these points, Plaintiffs gloss over these issues and point the Court back to their allegation that President Hartzell used ostensible rules violations as a pretext and acted to cancel the protest because of the viewpoint of the protestors.[94] But like many of Plaintiffs' allegations, these contentions are nothing more than "conclusory statements . . . devoid of further factual enhancement," which courts "do not presume true . . . ."[95]

## IX.   Plaintiffs Do Not Show an Enforcement Connection for their Official-Capacity Claims.

Setting aside the fact that Plaintiffs neglected to respond to Defendants' factual jurisdictional challenge, their arguments for overcoming sovereign immunity also fail on Defendants' facial challenge. ***First***, Plaintiffs tell the Court they can sue Governor Abbott because, so they say, they have "plausibly" alleged that the Governor has taken steps to enforce GA-44.[96] Plaintiffs ignore binding authority showing that Governor Abbott cannot be sued to challenge GA-44 because he has no duty

---

[91] ECF 31, p. 11 note 74.
[92] ECF 50, p. 10 (citing ECF 20, ¶¶ 79–80).
[93] ECF 21-1, p. 3.
[94] ECF 50, p. 17 (citing ECF 20, ¶¶ 79, 110).
[95] *Morgan*, 659 F.3d at 370 (quoting *Iqbal*, 556 U.S. at 678).
[96] ECF 50, p. 2. Plaintiffs cite to new "facts" in note 1 of their response that do not help them for the same reasons articulated in Defendants' surreply to Plaintiffs' motion for a preliminary injunction. *See* ECF 51, pp. 5–6, 11.

of any kind to enforce it.[97] ***Second***, Plaintiffs claim they can sue the University Presidents in their official capacities because those Defendants have enforcement authority to administer GA-44's speech code and have, in fact, enforced it.[98] Plaintiffs give the Court no basis for the proposition that the University Presidents' general authority at their respective institutions entails a specific duty to enforce any given rule, and the Fifth Circuit has held the opposite as to state agency leadership.[99] More to the point, Plaintiffs give the Court no plausible basis for finding that the University Presidents have or ever will *apply* GA-44, as opposed to the campus policies that Plaintiffs neglected to challenge. ***Third***, Plaintiffs claim the Board of Regents Defendants are proper official-capacity defendants because of their general oversight authority.[100] This is not enough.[101]

## X.    Plaintiffs' Associational and Organizational Standing Arguments Ignore Key Issues.

Two points here. ***First***, DSA suggests that the Court should not take their mission statement at face value—a mission statement that says nothing about advocacy for Palestine.[102] The fact that DSA has on occasion advocated for Palestinians does not show that such advocacy is central to its purpose; nor do the cases DSA cites show that the Court may find DSA satisfies the germaneness requirement.[103] Plaintiffs do not allege that advocacy for Palestine is central to DSA's mission, but only that some of DSA's members have played a leading role in such advocacy.[104] This is not enough.

***Second***, PSC-UT backs off from its pretensions to associational standing and defends its ability to bring this suit on organizational standing grounds alone.[105] This does not help them because

---

[97] ECF 31, pp. 28–29 (citing *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467–68 (5th Cir. 2020)).
[98] ECF 50, p. 3.
[99] *See Haverkamp v. Linthicum*, 6 F.4th 662, 665, 671 (5th Cir. 2021); *Richardson v. Flores*, 28 F.4th 649, 654 (5th Cir. 2022).
[100] ECF 50, p. 3. Plaintiffs also falsely say that the UT System Board of Regents adopted the definition of antisemitism expressed in Tex. Gov. Code § 448.001(2). This is untrue, and GA-44 did not require the Board of Regent Defendants to adopt or implement any specific policies—only Texas public universities.
[101] ECF 31, pp. 31–33.
[102] ECF 50, p. 7.
[103] Plaintiffs cite to *Ass'n of Amer. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 n.2 (5th Cir. 2010), to say that the germaneness requirement is undemanding, ECF 50, p. 7.
[104] ECF 20, p. 13, ¶ 51.
[105] ECF 50, p. 8. PSC-UT has thus abandoned associational standing. *Supra*, p. 2.

PSC-UT still must show that they or at least one of their members suffered a cognizable injury,[106] and Ms. Homsi, whom PSC-UT admits is not a student (and who did not even try to say she was a student during PSC-UT's Spring protests), cannot be a member of any student organization at UT Austin.[107] So Plaintiffs pivot, insisting PSC-UT can establish organizational standing where *all its members* are affected.[108] But PSC-UT gives the Court no basis at all for finding that all its members are cognizably injured by GA-44 or PSC-UT's suspension, so its standing argument fails.

## XI.     Plaintiffs also Ignore the Canon of Constitutional Avoidance.

Plaintiffs try to dodge application of the canon of constitutional avoidance by suggesting GA-44 is unambiguous.[109] Though it is true that constitutional avoidance "comes into play only when . . . the statute is found to be susceptible of more than one construction,"[110] Plaintiffs' suggestion that GA-44 has only one construction is not a serious one. After all, while Plaintiffs maintain that GA-44 applies to them (as opposed to Texas public universities), they remain unable to point to any language showing it does. Nor can they identify what GA-44 directs Texas public universities to do in response to GA-44 aside from adopting the same definition of antisemitism that federal law has required universities to consider since 2019.[111]

CONCLUSION

The Court should grant Defendants' motion and dismiss Plaintiffs' claims with prejudice.

Date:  September 11, 2024                            Respectfully submitted,
       Austin, Texas

**KEN PAXTON**                                      */s/ Cole P. Wilson*
Attorney General of Texas                           **COLE P. WILSON**

---

[106] *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).
[107] *UT System Rules*, § 40201. Plaintiffs also claim that Defendants "misrepresent Ms. Homsi's affidavit," but point to no specific alleged misrepresentations.
[108] ECF 50, p. 8.
[109] ECF 50, pp. 15–16.
[110] *Clark v. Martinez*, 543 U.S. 371, 385 (2005).
[111] *2024 OCR Dear Colleague Letter*, p. 17 note 34 (noting that Executive Order 13899 requires that federal agencies "shall consider" the "IHRA working definition of antisemitism and accompanying examples of antisemitism") (citation and internal quotation marks omitted).

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

**RYAN WALTERS**
Chief, Special Litigation Division

Attorney-in-charge
Texas State Bar No. 24122856
Cole.Wilson@oag.texas.gov

**TODD DICKERSON**
Texas State Bar No. 24118368
Todd.Dickerson@oag.texas.gov

Assistant Attorneys General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1309 | Fax: (512) 320-0667

**JACOB E. PRZADA**
Special Counsel
Texas State Bar No. 24125371
Jacob.Przada@oag.texas.gov

Office of the Attorney General
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I certify that a copy of the document above was served on all counsel of record who have entered an appearance on September 11, 2024, using the Federal Court CM/ECF system.

*/s/ Cole P. Wilson*