IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Democratic Socialists of America, <br><br> Plaintiffs, <br><br> v. <br><br> Tilman Fertitta, et al., <br><br> Defendants. | No. 1:24-CV-00523-RP |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

Plaintiff Democratic Socialists of America (DSA) is a 501(c)(4) non-profit, membership-based organization which has more than 2,000 members in Texas. *See* Dkt. 20, ¶ 11. DSA and its members have played a leading role in advocating for Palestine since long before October 7, 2023, as part of its advocacy against oppressive regimes. *See id.* at ¶ 51. In its Amended Complaint, DSA challenges Defendants' actions to censor its pro-Palestine and pro-BDS activism on University of Texas campuses. *Id.* at ¶¶ 49–62. Although DSA originally brought two claims in concert with three other pro-Palestine organizations active on University of Texas and University of Houston campuses, *see* Dkt. 20, following the most recent stipulation of dismissal on May 19, 2025, DSA is the sole remaining plaintiff. *See* Dkt. 86; *see* Dkt. 87. DSA's sole remaining claim, identified as Count I in the Amended Complaint, Dkt. 20 ¶¶ 81–97, is brought against Defendants in their official capacities for viewpoint and content discrimination. *See* Dkt. 87.

1

DSA brings its First Amendment claims under both organizational and associational standing. *See* Dkt. 20. Defendants lost their previous challenge to both of these standing claims in their motion to dismiss. *See* Dkt. 31, pp. 34.[1] Now Defendants attempt again to challenge DSA's ability to bring its claim based on organizational standing. *See* Dkt 89. DSA respectfully asks the Court, having already addressed this issue raised by Defendants, *see* Dkt. 62, pp. 11–14; *see* Dkt. 31, pp. 47, to deny Defendants' Second Motion for Judgment on the Pleadings. *See* Dkt. 89.

## STANDARD OF REVIEW

The standard for deciding a motion for judgment on the pleadings under Rule 12(c) is the same as that for a motion to dismiss. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The Court must accept all "well-pleaded facts as true, viewing them in light most favorable to the plaintiff." *Id.* (internal quotations omitted). The factual allegations plead need only be enough to "raise a right to relief above the speculative level." *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). "Detailed factual allegations" are not necessary. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Defendants also bring this motion under Federal Rule of Civil Procedure 12(b)(1) which governs motions to dismiss for lack of subject matter jurisdiction. *See* Dkt. 89, pp. 3. A motion under Rule 12(b)(1) should only be granted if the Court finds it "certain that the plaintiff cannot prove any set of facts in support of his claims that would entitle him to relief." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

---

[1] Although the Court found that Plaintiffs could not recover damages for their claims based on associational standing, it did not eliminate an associational claim entirely. *See* Dkt. 62, pp. 11 n. 9.

**ARGUMENT**

Article III standing is a jurisdictional requirement. *See Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996). Establishing standing requires a plaintiff to demonstrate that is has suffered (1) an injury-in-fact, (2) that is fairly traceable to the defendant, and (3) is redressable by the court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An organization may establish injury-in-fact through either "associational standing" or "organizational standing." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). At issue in the present motion, organizational standing requires an organization to meet "the same standing test applied to individuals." *Id.*

Defendants only challenge DSA's ability to show organizational injury. To satisfy organizational injury-in-fact, DSA need only establish that the challenged conduct "significantly and perceptively impaired the organization's activities" beyond a mere "setback to [it's] abstract social interest." *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 239 (5th Cir. 2010) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). To do so it must connect Defendants' actions to create policies enforcing GA-44 to an impairment to the organization's ability to carry out its mission. *See Louisiana Fair Housing Action Center, Inc., v. Azalea Garden Properties, L.L.C.*, 82 F.4th 345, 353 (5th Cir. 2023); *see ACORN v. Fowler*, 178 F.3d 350, 361 n.7 (5th Cir. 1999) (A defendant's conduct must do more than be in "direct conflict" with the organization's mission).

The injuries alleged by DSA show that the Defendants' conduct caused the organization to "put on hold or otherwise curtail" specific projects or activities connected to its mission. *See N.A.A.C.P.*, 626 F.3d at 239 (citing *Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1166 (11th Cir. 2008) (upholding standing where plaintiffs

3

"averred that their actual ability to conduct specific projects during a specific period of time will be frustrated by [the challenged ordinance's] enforcement")). A plaintiff organization may establish injury by identifying specific projects and plausibly alleging that those projects were curtailed in response to the defendant's challenged conduct. *See Louisiana Fair Housing Action Center, Inc.*, 82 F.4th at 353.

In its Amended Complaint DSA identifies both specific events related to its pro-Palestine advocacy and demonstrates how specific events have been put on hold or "perceptibly impaired" by Defendants' enforcement of GA-44. Dkt. 20, ¶¶ 54–62. DSA alleges that Defendants' implementation of policies aligned with GA-44 impaired its ability to organize and carry out the kinds of events it had been organizing for years. *See* Dkt. 20, ¶¶52–54. These policies prohibited DSA and its members from using common political slogans, protesting Defendants' capitalist agenda, and otherwise advocating in solidarity with the Palestinian people. *See id.* at  ¶¶ 55–62. Defendants' policies punish DSA by prohibiting its pro-Palestine advocacy under Defendants' adopted definition of antisemitism and threatening law enforcement action for using restricted phrases. *See id.* at ¶¶ 55–62, 87–92. These impeded activities are inexorably linked to both DSA's longstanding practice of advocating for Palestine and its mission and vision of "weakening the power of corporations" and enhancing "humane international social order." *See About Us*, DSA, https://www.dsausa.org/about-us/; *see also* Dkt. 20, ¶¶ 51, 58.

Defendants might not think DSA's mission for "an openly democratic socialist presence in American Communities and politics" includes advocacy for Palestine, but it does. *See* Dkt. 89, pp. 5. In formulating its vague interpretation of DSA's mission, Defendants omitted—presumably intentionally so—the other half of DSA's mission: to

4

"build[] progressive movements for social change. *See id.*; *see About Us*, DSA, https://www.dsausa.org/about-us/. Pro-Palestine advocacy undoubtedly falls within the mission of building movements for progressive social change. Moreover, DSA's more specific mission seeking economic reform by seeking to "decrease the influence of money in politics" directly aligns with DSA's pro-Palestine activism and participation in the BDS movement. *See About Us*, DSA, https://www.dsausa.org/about-us/; *see* Dkt. 20, ¶ 58. DSA identifies specific ways in which Defendants have and will continue to curtail these specific activities in furtherance of this mission beyond mere abstract social interests. *See* Dkt. 20, ¶¶ 52–62.

Defendants additionally hang their hats on the fact that DSA did not "plead[] the need to divert resources" in response to the challenged conduct. *See* Dkt. 89, pp. 5. This is not required of plaintiffs. *See Louisiana Fair Housing Action Center, Inc.*, 82 F.4th at 353. Demonstrating that the government's challenged conduct forced an organization to divert resources may establish organizational injury. *Id.* (citing *Havens*, 455 U.S. at 379). But the diversion of resources is not dispositive. *See Louisiana Fair Housing Action Center, Inc.*, 82 F.4th at 353 ("[T]he perceptible impairment to an organization's ability to carry out its mission, not the drain on [] resources is the concrete and demonstrable injury for organizational standing") (citations omitted).

So long as DSA has plausibly alleged that Defendants' conduct has significantly inhibited its ability to engage in specific conduct or activities related to its mission—which this court has already acknowledged that it has, Dkt. 62, pp. 14,—DSA has established sufficient injury to confer standing. *See Louisiana Fair Housing Action Center, Inc.*, 82 F.4th at 353. This Court should not dismiss DSA's remaining claims.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks this Court to deny Defendants' Second Motion for Judgment on the Pleadings.

Dated: June 17, 2025

Respectfully submitted,

Lena F. Masri (VA 93291)
lmasri@cair.com
Gadeir I. Abbas (VA 81161)*
gabbas@cair.com
CAIR Legal Defense Fund
453 New Jersey Ave. SE
Washington, D.C. 20003
202-742-6420

Attorneys for Plaintiffs

*Admitted in VA only; practice limited to federal matters*

## CERTIFICATE OF SERVICE

I certify that a copy of the document above was served on all counsel of record who have entered an appearance on June 17, 2025, using the Federal Court CM/ECF system.

/s/ *Lena F. Masri*