IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **DEMOCRATIC SOCIALISTS OF AMERICA**, *et al.*, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | No. 1:24-CV-523-RP |
| **KEVIN P. ELTIFE**, *et al.*, | § § § | |
| *Defendants*. | § § § | |

**DEFENDANTS' REPLY IN SUPPORT OF
SECOND MOTION FOR JUDGMENT ON THE PLEADINGS**

"Only in the rarest cases can organizations demonstrate standing by showing a defendant's action interferes with their activities."[1] This case is not among them, and recent Fifth Circuit precedent establishes this point beyond genuine dispute.

In *Deep South Center for Environmental Justice v. United States Environmental Protection Agency*, decided last month, the Fifth Circuit re-emphasized that "[i]n cases brought by organizational plaintiffs, it is of particular importance that 'standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy.'"[2] Rather, to meet Article III's injury-in-fact requirement, a defendant's actions must "directly affect[] and interfere[] with [its] *core business activities*."[3]

Defendants filed the opening motion in light of the Fifth Circuit's ruling last month to re-urge

---

[1] *Deep South Ctr. for Env. Justice v. U.S. Env. Protection Agency*, 138 F.4th 310, 318 (5th Cir. 2025).
[2] *Id.* at 317 (quoting *Valley Force Christian Coll. V. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982)).
[3] *Id.* at 319 (quoting *Food & Drug Admin. v. All for Hippocratic Med.*, 602 U.S. 367, 395 (2024)) (emphasis added).

the point—first raised in the motion to dismiss (Dkt 31, p. 34) but unaddressed by the Court in its ruling—that DSA lacks standing because it does not show how GA-44 or public university policies "perceptibly impair" its core mission of establishing socialism in American communities.

In fact, DSA did not bother to say in the Amended Complaint what its core organizational purpose is, providing no basis for either organizational or associational standing in this suit.[4] Instead, DSA only ever alleged that the organization and some of its members have advocated for Palestine:

> **DSA**
>
> 49. DSA has YDSA chapters at half a dozen Texas public university campuses, including at University of Texas at San Antonio, University of North Texas, University of Houston, Texas Tech University, Texas State University, and Texas A&M University.
> 50. DSA's YDSA chapters at Texas public universities are open to students and campus workers, under the age of 30, who are dues-paying DSA members.
> 51. There are more than 2,000 DSA members in Texas, and among them are students and campus workers who have played a leading role in campus advocacy for Palestine for years and will continue to fulfill that role in the future.

> 58. DSA also advocates for boycotts, divestment, and sanctions against Israel as part of the BDS movement, something Governor Abbott considers antisemitic. DSA announced in 2017 that it "declares itself in solidarity with Palestinian civil society's nonviolent struggle against apartheid, colonialism, military occupation" and "fully support[s] BDS." YDSA chapters have worked in coalition with other student groups to advocate for BDS on campuses throughout Texas.

---

[4] In addition to its claim of organizational standing, DSA contends it has associational standing by interpretating this Court's prior finding that DSA was barred from recovering damages based on associational standing to be an affirmative finding of associational standing for prospective relief. Dkt 62, p. 11 n. 9. Regardless, the same issue precludes standing on either organizational or associational grounds and Defendants urge this motion as to both. *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (explaining that an association has standing to sue on behalf of its members when, among other things, "the interests it seeks to protect are *germane to the organization's purpose*") (emphasis added); *cf. Blake v. Evans*, 196 F.3d 579, 584 (5th Cir. 1999) ("Federal courts must be assured of their subject matter jurisdiction at all times.").

Dkt. 20, p. 13, 15. But advocacy alone is not enough; nor is bare opposition to a defendant's actions or policies: "[A plaintiff]'s opposition to [a defendant]'s action, no matter how intense, amounts to 'a setback to [its] abstract social interests,' which has never sufficed to confer standing."[5]

As for DSA's claimed future organizational injuries, Plaintiff leans on *Havens* and its progeny to suggest that any interference with an organization's activities and projects—no matter the relation of those activities to the organization's core purpose—can support organizational standing. Dkt. 91, pp. 3–4. This is not the law, and *Deep South* is dispositive here as well.

For one, the *Deep South* panel explained that "the Supreme Court has limited *Havens* to its facts."[6] Additionally, the plaintiff had standing in *Havens* precisely because the defendant's "actions directly affected and interfered with its core business activities."[7] It is "the perceptible impairment . . . [and] not the drain on the organization's resources, [that] is the concrete and demonstrable injury for organizational standing."[8] "Article III requires 'direct interference,'"[9] and an organizational plaintiff "cannot manufacture its own standing" by voluntarily engaging in education and advocacy having nothing to do with its core purpose.[10]

Here, as in *Deep South*, "[n]o direct interference has occurred" because neither GA-44 nor any policy adopted by Defendants has created "obstacles to [the plaintiff's] core business activities."[11] Whereas in *Deep South* the plaintiff had at least submitted a declaration attesting to the organization's core business activities of "developing research and policies addressing efficient and renewable energy

---

[5] *Deep South*, 138 F.4th at 318 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).
[6] *Id.* at 319 (citing *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 396 (2024) ("*Havens* was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context.")).
[7] *Id.*
[8] *Id.* (quoting *La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., LLC*, 82 F.4th 345, 353 (5th Cir. 2023)).
[9] *Id.* (quoting *All. for Hippocratic Med.*, 602 U.S. at 395).
[10] *Id.* (quoting *All. for Hippocratic Med.*, 602 U.S. at 394).
[11] *Id.* (internal quotation marks omitted).

3

transition, clean air benefits, and equitable climate action,"[12] here DSA provides the Court with absolutely nothing within the four corners of its live pleading.

A final word on DSA's suggestion that advocacy for Palestine falls within the ambit of its mission to "build[] progressive movements for social change." Dkt. 91, p. 5. This point is meritless for at least two reasons.

*First*, this statement cannot paper over the omission in DSA's live pleading about the organization's purpose, let alone that its purpose has anything to do with advocacy for Palestine.

*Second*, DSA's pursuit of "progressive social change" is the quintessential example of an abstract social interest. Should DSA be permitted to proceed in a lawsuit merely by contending that the organization and some of its members advocate for "social change," then there is no limit preventing any organizational plaintiff with a sufficiently ambiguous mission statement to bootstrap its way into any lawsuit on any issue—no matter the relation of a dispute to the reason why an organization came to be. DSA's poorly-considered argument is contrary to black-letter law: "A plaintiff must show 'far more than simply a setback to the organization's abstract social interests.'"[13]

## CONCLUSION AND PRAYER

Defendants respectfully request that the Court dismiss DSA's remaining claim with prejudice because DSA has failed to establish either organizational or associational standing, and cannot replead to resolve this obstacle to pursuing a challenge to GA-44 or public university policies adopted in connection with that executive order.

Dated: June 23, 2025        Respectfully submitted,
       Austin, Texas

**KEN PAXTON**                **KIMBERLY GDULA**
Attorney General of Texas     Chief, General Litigation Division

---

[12] *Id.*
[13] *All. for Hippocratic Med.*, 602 U.S. at 394 (quoting *Havens*, 455 U.S. at 379).

| | |
|---|---|
| **BRENT WEBSTER**<br>First Assistant Attorney General | /s/ _Cole P. Wilson_<br>**COLE P. WILSON**<br>Attorney-in-charge |
| **RALPH MOLINA**<br>Deputy First Assistant Attorney General | Texas State Bar No. 24122856<br>Cole.Wilson@oag.texas.gov |
| **AUSTIN KINGHORN**<br>Deputy Attorney General for Civil Litigation | **TODD DICKERSON**<br>Texas State Bar No. 24118368<br>Todd.Dickerson@oag.texas.gov |
| | **MELISSA B. HOSTICK**<br>Texas State Bar No. 24128832<br>Melissa.Hostick@oag.texas.gov |

Assistant Attorneys General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1309 | Fax: (512) 320-0667

*Counsel for Defendants*

### CERTIFICATE OF SERVICE

I certify that a copy of the document above was served on all counsel of record who have entered an appearance on June 23, 2025, using the Federal Court CM/ECF system.

/s/ _Cole P. Wilson_