IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEMOCRATIC SOCIALISTS OF AMERICA, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | 1:24-CV-523-RP |
| KEVIN P. ELTIFE, *in his official capacity as a Member of the University of Texas System Board of Regents*, et al., | § § § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court is Defendants Taylor Eighmy, Kevin Eltife, Janeice Longoria, James C. Weaver, Christina Melton Crain, Jodie Lee Jiles, Kelcy L. Warren, Nolan Perz, Stuart W. Stedman, and Robert P. Gauntt's (together, "Defendants")[1] Second Motion for Judgment on the Pleadings as to Plaintiff Democratic Socialists of America's ("DSA") Amended Complaint, (Dkt. 20). (Dkt. 89). DSA filed a response, (Dkt. 91), and Defendants replied, (Dkt. 92). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the Motion for Judgment on the Pleadings should be denied.

**I. BACKGROUND**

This case was originally filed by four organizations—Students for Justice in Palestine at the University of Houston; Students for Justice in Palestine at the University of Texas at Dallas; DSA; and Palestine Solidary Committee at the University of Texas at Austin (together, "Original Plaintiffs")—against Greg Abbott, in his official capacity as Governor of the State of Texas, and a

---

[1] All Defendants sued in their official capacities; Taylor Eighmy in his official capacity as President of the University of Texas at San Antonio, and the remaining Defendants in their official capacities as members of the University of Texas System Board of Regents.

number of defendants connected to the University of Texas ("UT") system, the University of Houston ("UH"), and the University of Texas at San Antonio ("UTSA").[2] (Compl., Dkt. 1). As laid out in their Amended Complaint, the Original Plaintiffs brought three claims related to Executive Order GA-44 ("GA-44") and the policies implementing GA-44 at public universities in Texas. (Dkt. 20). GA-44 directed universities to update their free speech policies to address reported antisemitism, and the policies at issue implemented that directive, updating the Universities' free speech policies—and, DSA contends, chilling speech. A detailed discussion of GA-44; UT Austin, UT Dallas, and UTSA's revised policies; and the surrounding context and alleged results was included in the Court's order granting in part the Original Defendants' motion to dismiss and denying the Original Plaintiff's motion for a preliminary injunction, (Dkt. 62). Because the parties are familiar with the facts, that discussion is not reproduced here.

The Court dismissed the Original Plaintiffs' claims against Greg Abbott, UH, the UH Board of Regents, and the UT Austin Board of Regents; dismissed Count II of the Original Plaintiff's Amended Complaint; and dismissed all of Plaintiffs' claims for damages. (Dkt. 62, at 24). Subsequently, Students for Justice in Palestine at the University of Texas at Dallas and Students for Justice in Palestine at the University of Houston dismissed all claims against all Defendants, (Dkt. 73), Palestine Solidarity Committee at the University of Texas at Austin likewise dismissed all claims

---

[2] The full list of original defendants was Greg Abbott, in his official capacity as the Governor of the State of Texas, UH, the members of the UH System Board of Regents in their individual and official capacities (Tilman Feritta, Alonza Cantu, John A. McCall, Jr., Beth Madison, Ricky Raven, Jack B. Moore, Tammy D. Murphy, Gregory C. King), the UH System Board of Regents itself, the members of the UT System Board of Regents in their official capacities only (Kevin P. Eltife, Janiece Longoria, James C. Weaver, Christina Melton Craine, Jodie Lee Jiles, Kelcy L. Warren, Nolan Perez, Stuart W. Stedman, Robert P. Gauntt), the UT Austin Board of Regents itself, Rene Khator ("Khator"), in her individual and official capacity as the President of UH and the chancellor of the UH System, Taylor Eighmy ("Eighmy"), in his individual and official capacity as the President of UTSA, and Jay Hartzell ("Hartzell"), in his individual and official capacity as the President of UT Austin. Together, this collection of Defendants is referred to as the "Original Defendants."

against all Defendants, (Dkt. 86), and DSA dismissed any remaining claims against University of Houston Defendants, (*id.*).[3]

As a result, the only remaining claim in the lawsuit is Count I of the Amended Complaint, (Dkt. 20, at 20–23), as brought by DSA against Eighmy in his official capacity and the members of the UT System Board of Regents in their official capacities. (*See* Dkt. 86, at 1–2). Count I is a claim for viewpoint or content discrimination in violation of the First Amendment, brought through 28 U.S.C. § 1983. (Am. Compl., Dkt. 20, at 20–23). DSA alleges that GA-44 and Defendants' implementation of GA-44 chilled the speech of DSA and its members, unconstitutionally targeting their speech and forcing them to "alter[] plans and advocacy strategies." (*Id.* at 23).

Following the stipulations of dismissal that narrowed the case as described above, Defendants filed the Second Motion for Judgment on the Pleadings that is the subject of this Order. (Dkt. 89). DSA responded, (Dkt. 91), and Defendants replied, (Dkt. 92).

## II. LEGAL STANDARD

Defendants suggest this Second Motion for Judgment on the Pleadings was filed "pursuant to Federal Rule of Civil Procedure 12(b)(1) & (c) to challenge Democratic Socialists of America's ("DSA") standing to bring any claim." (Dkt. 89, at 1). The Court discusses the standards under both provisions of Rule 12 below.

### A.  Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is proper where there are no disputed issues of fact and only

---

[3] As clarified in that stipulation, "The 'University of Houston Defendants' includes Dr. Renu Khator in her official capacity as President of the University of Houston and Chancellor of the University of Houston System, and the members of the University of Houston System Board of Regents: Tilman Fertitta, Alonzo Cantu, John A. McCall Jr., Beth Madison, Ricky Raven, Jack B. Moore, Tammy D. Murphy, and Gregory C. King." (Dkt. 86, at 1 n.1).

questions of law remain. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir.2002) (internal quotation marks omitted).

"The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir.2004). Rule 12(b)(6) allows dismissal of a claim if a plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss for failure to state a claim, the court must accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Great Plains Trust Co.,* 313 F.3d at 312–13 (quoting *Doe v. Hillsboro Indep. Sch. Dist.,* 81 F.3d 1395, 1401 (5th Cir. 1996)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcraft v. Iqbal,* 556 U.S. 662, 678 (2009)). When ruling on a 12(c) motion, the court may properly consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and central to its claim. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498−99 (5th Cir. 2000). However, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and, as a result, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Courts, including courts in this District, have found that jurisdiction may properly be addressed through Rule 12(c). *See ROCA Res. Co. v. Devon Energy Prod. Co., L.P.,* No. 4:14-CV-085-DAE, 2015 WL 4479249, at *4 (W.D. Tex. July 22, 2015) (collecting cases ruling on standing through motions for judgment on the pleadings). Moreover, the Parties here seem to agree that,

regardless of the rule this motion is brought under, the 12(b)(1) standard applies to the Court's actual determination of whether DSA has made a sufficient showing to support standing at this stage. (*See* Mot. J. Pleadings, Dkt. 89, at 3 (identifying the 12(b)(1) standard); Resp., Dkt. 91, at 2 (same)). As a result, the Court will treat this motion as properly proceeding under Rule 12(c), i.e., confined to the pleadings, but will apply the Rule 12(b)(1) standard, discussed below, to its determination of whether DSA has sufficiently pled standing. This is consistent with the fact that the Court may consider subject-matter jurisdiction at any point in the case, per Rule 12(b)(1). *See Arbaugh v. Y&H Corp.,* 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction, *see* Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.").

### B.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.*

### 1.  Standing

Article III of the Constitution limits the jurisdiction of federal courts to "cases and controversies." U.S. Const. art. 3, § 2. "[T]he core component of standing is an essential and

unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To demonstrate standing, a plaintiff must show: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). "For purposes of ruling on a motion to dismiss for want of standing, both the . . . courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth*, 422 U.S. at 501. Put another way, "[a] motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998).

## III. DISCUSSION

Organizational plaintiffs may sue either on their own behalf, for injuries caused directly to the organization—called "organizational standing"—or on behalf of their members, for injuries caused to those members—called "associational standing." As the Fifth Circuit has explained:

> An association or organization can establish an injury-in-fact through either of two theories, appropriately called "associational standing" and "organizational standing." "Associational standing" is derivative of the standing of the association's members, requiring that they have standing and that the interests the association seeks to protect be germane to its purpose. By contrast, "organizational standing" does not depend on the standing of the organization's members. The organization can establish standing in its own name if it "meets the same standing test that applies to individuals."

*OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017) (citations omitted).

In their motion, Defendants assert that DSA cannot proceed under either theory of standing. Specifically, Defendants assert that, in its ruling on the Original Defendant's Motion to

Dismiss, (Dkt. 62), "the Court found that plaintiffs could not pursue claims based on associational standing," and further argue that DSA cannot support organizational standing because restrictions imposed by GA-44 are not sufficiently related to DSA's mission. (*Id.* at 1–2, 4–5). In their Reply, Defendants further suggest that, to the extent DSA's associational standing has not been foreclosed by the Court, DSA lacks associational standing because the interests sought to be protected in the suit are not germane to DSA's purposes. (Reply, Dkt. 92, at 2 n.4). The Court therefore discusses both theories of standing below.

### A.  Associational Standing

The Supreme Court has established a three-part test for associational standing, explaining that:

> an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). To support associational standing at the pleading stage, organizations do not need to specifically identify members who have been harmed, "the association's allegations of a concrete injury to its members are sufficient." *Young Conservatives of Texas Found. v. Univ. of N. Texas*, 569 F. Supp. 3d 484, 490 (E.D. Tex. 2021) (citing *Hancock Cnty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012) ("We are aware of no precedent holding that an association must set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on lack of associational standing.")). Additionally, the Fifth Circuit has noted that "the germaneness requirement is 'undemanding' and requires 'mere pertinence' between the litigation at issue and the organization's purpose." *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.,* 627 F.3d 547, 551 (5th Cir. 2010) (holding that an organization that, "[t]hrough its affidavits and acts" had "demonstrated its obvious

interest in representing its members against alleged governmental abuse" had "easily surpasse[d] the low threshold of *Hunt*'s germaneness prong."). And finally, "requests for declaratory or injunctive relief rarely require individual determinations." *Texas Ass'n for Rts. of Unemployed v. Serna*, 663 F. Supp. 3d 703, 711 (W.D. Tex. 2023).[4]

Here, when the Court dismissed "Plaintiffs' claims for compensatory and punitive damages," it included a footnote indicating that:

> Plaintiffs are also barred from recovering damages for any of their claims because of their associational standing. *Self-Ins. Inst. of Am., Inc. v. Korioth*, 53 F.3d 694, 695 (5th Cir. 1995)("Though an association may have standing to seek 'a declaration, injunction, or some other form of prospective relief' on behalf of its members, it does not enjoy standing to seek damages for monetary injuries peculiar to individual members where the fact and extent of injury will require individualized proof.") (citing *Warth v. Seldin*, 422 U.S. 490 (1975)).

(Dkt. 62, at 11 n.9). As is apparent from the Court's language, that dismissal pertained only to the Original Plaintiffs'—including DSA's—ability to pursue damages. The Court did not hold that DSA lacked associational standing. However, to satisfy its ongoing obligation to be assured that jurisdiction exists, Fed. R. Civ. P. 12(h)(3), the Court will address whether DSA meets each prong of the *Hunt* test for associational standing.[5]

The allegations in the Amended Complaint, taken as true, show that DSA has members who have repeatedly organized and protested about the issue of Palestine, in ways that were directly affected by GA-44 and the Universities' policies—including members who were told they could not use specific slogans, would be referred to law enforcement if they continued to use those slogans,

---

[4] As the Fifth Circuit has explained, Hunt's "third prong is solely prudential." *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (citing *United Foods & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996)). "The third prong focuses importantly on 'matters of administrative convenience and efficiency.' . . . Courts assess this prong by examining both the relief requested and the claims asserted." *Id.* While "[i]n general, 'an association's action for damages running solely to its members would be barred for want of the association's standing to sue,'" that is not true where, as in *Association of American Physicians*, Plaintiffs "seek[] declaratory and injunctive relief." *Id.*

[5] Defendants only challenge the second prong of the Hunt test. (Reply, Dkt. 92, at 2 n. 4).

8

and were required to put away specific signs at protests—and that they intend to continue organizing and supporting protests on the issue, again in ways that are affected by GA-44 and the Universities' policies. (*See* Am. Compl., Dkt. 20, at 13–16). This is enough, at this stage, to show that DSA has members whose speech was chilled and who therefore could claim injury. *See Hancock*, 487 F. App'x at 198 ("We are aware of no precedent holding that an association must set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion.").

Moreover, while Defendants assert that issues related to Palestine are not germane to DSA's purpose, the Court concludes that DSA's allegations that it has repeatedly organized protests and other activities related to Palestine, consistently had its campus groups engage with this issue, and publicly stated that it supports Palestine, (Am. Compl., Dkt. 20, at 13–16), are themselves indications that this issue is germane to DSA's purpose. As noted below in the Court's discussion of organizational standing, the Court finds this concrete evidence of past and planned activities to be more persuasive than abstract or theoretical discussions about the nature and scope of DSA's purpose as an organization. Certainly, at the pleadings stage, this is enough to meet the standard of "mere pertinence." *See Ass'n of Am. Physicians,* 627 F.3d at 551.

Finally, Defendants have not suggested that participation of DSA's individual members will be required. Moreover, because all claims for damages were dismissed in this case, (Dkt. 62, at 24), DSA is only seeking injunctive relief. As a result, the Court concludes that this case does not require the participation of DSA's individual members. Therefore, at this stage, DSA has done enough to support that it has associational standing to bring this suit on behalf of its members. Nevertheless, for the sake of thoroughly considering standing concerns, the Court addresses DSA's ability to proceed under organizational standing below.

### B.  Organizational Standing

"[O]rganizations may have standing 'to sue on their own behalf for injuries they have sustained.' . . . [i]n doing so, however, organizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, n. 19 (1982)). Organizations "cannot assert standing simply because they object to [a defendant's] actions," or, put another way, "an organization may not establish standing simply based on the 'intensity of the litigant's interest' or because of strong opposition to the government's conduct . . . 'no matter how longstanding the interest and no matter how qualified the organization.'" *All. For Hippocratic Med.*, 602 U.S. at 394. Instead, "[t]he claimed injury must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Deep S. Ctr. for Env't Just. v. United States Env't Prot. Agency*, 138 F.4th 310, 317 (5th Cir. 2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). As the Fifth Circuit has explained, the defendant's actions must "concretely and perceptibly impair an organization's activities." *Deep S. Ctr.*, 138 F.4th at 318 (quoting *Havens*, 455 U.S. at 379). As a result, "[a]n organizational plaintiff 'cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action.'" *Deep S. Ctr.*, 138 F.4th at 318. Likewise, "a setback to [an organization's] abstract social interests" cannot confer standing. *Id.* In fact, the Fifth Circuit has clarified that "[o]nly in the rarest cases can organizations demonstrate standing by showing a defendant's action interferes with their activities." *Id.* Such standing can only exist where the defendant's "actions directly affected and interfered with [the organization's] core business activities." *Id.* at 319. Put simple, "Article II requires 'direct interference.'" *Id.*

As a result, after *Alliance for Hippocratic Medicine*, the Fifth Circuit has denied standing where, for example, an environmental advocacy organization spent money oppose the Environmental

Protection Agency's ("EPA") decision to grant the state of Louisiana primary enforcement authority for a category of carbon sequestration wells, which the organization claimed would make it harder to accomplish its mission and require it to "divert resources to act as a watchdog," among other impacts. *Id.* at 318–20. As the Fifth Circuit explained, "the challenged EPA action neither prevents [the organization] from engaging in its advocacy, education, and training activities nor compels it to take any action." *Id.* at 319–20. Neither past voluntary expenditures nor anticipated future voluntary expenditures could create standing, "[s]o [the organization's] diversion-of-resources theory fail[ed]." *Id.* at 317, 320.

Here, Defendants argue that "DSA has not pleaded an organizational injury because it fails to show that the challenged executive order or campus policies impair its mission." (Mot. J. Pleadings, Dkt. 89, at 4). More particularly, Defendants contend that DSA's mission is either unrelated to advocacy for Palestine or too broad, and is therefore an abstract social interest. (*Id.* at 4–5; Reply, Dkt. 92, at 4).

The Court finds this argument unpersuasive, particularly at this stage. The Court is focused here on the allegations contained in the pleadings, not external evidence—like DSA's mission statement, which Defendants seek to present. *See* Fed. R. Civ. P. 12(d); (Mot. J. Pleadings, Dkt. 89, at 4–5). As noted in the Court's discussion of associational standing, above, the allegations in the complaint, if taken as true, show that DSA, with and through its members, has repeatedly organized and protested about issues related to Palestine, in ways that were directly affected by GA-44 and the Universities' policies; has publicly declared that it supports Palestine; and intends to continue organizing and supporting protests on the issue, again in ways that are affected by GA-44 and the Universities' policies. (*See* Am. Compl., Dkt. 20, at 13–16, 23). And again as suggested above in the discussion of associational standing, the Court takes DSA's repeated and consistent engagement in action related to this issue as an indication that the issue is part of DSA's mission. The Court finds

11

repeated, real-world actions taken by DSA to be persuasive indications of what is part of "the organization's activities," *see Havens*, 455 U.S. at 379, and declines to engage in abstract arguments about what is or could be meant by the organization's mission statement.

Moreover, the Court understands the core concern of the Fifth Circuit and Supreme Court's jurisprudence on organizational standing to be "direct interference," i.e., that the defendant's actions directly impacted the organization's activities in some way, not simply that the organization voluntarily took action in response to the defendant's actions. *See Deep S. Ctr.*, 138 F.4th at 318. Here, DSA is not alleging that it merely voluntarily allocated resources to respond to Defendants' actions; it is alleging that its activities—organizing protests and other events through its members and campus groups—are directly impacted by GA-44 and the resulting policies. *See* Am. Compl., Dkt. 20, at 15–16, 23 (alleging that DSA members were told they could not use slogans without being "deferred to law enforcement" and had were instructed to put away signs by campus officials, and alleging that "Plaintiffs have altered plans and advocacy strategies in light of the order in an effort to avoid discipline."). At this stage, the Court concludes that these allegations show sufficient direct interference to support organizational standing. Unlike in *Deep South Center for Environmental Justice*, "the challenged . . action[s]" *do*, DSA alleges, "prevent[] [DSA] from engaging in its advocacy, education, and training activities." *Deep S. Ctr.,* 138 F.4th at 319–20. As a result, the Court concludes that DSA has also sufficiently pled organizational standing to survive a motion for judgment on the pleadings or motion to dismiss pursuant to Rule 12(b)(1).

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Defendant's Second Motion for

Judgment on the Pleadings, (Dkt. 89), is **DENIED**.

**SIGNED** on March 25, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

13